# ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------------x
In re:                                  :   Chapter 11
                                        :
Premier International Holdings Inc., et al.,[1]   :   Case No. 09-12019 (CSS)
                                        :
                    Debtors.            :   Jointly Administered
                                        :   Re: Docket No. 22
                                        :
------------------------------------------------------------x
```

## SECOND INTERIM ORDER (I) AUTHORIZING THE USE OF LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the motion (the "Motion"), dated as of June 14, 2009, of the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), (a) seeking this Court's authorization, pursuant to Section 363(c) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), to use the Cash Collateral (as defined below) and, pursuant to Sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Lenders (as defined below) with respect to any diminution in the value

---

[1]    The Debtors are the following thirty-seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Astroworld GP LLC (0431), Astroworld LP (0445), Astroworld LP LLC (0460), Fiesta Texas Inc. (2900), Funtime, Inc. (7495), Funtime Parks, Inc. (0042), Great America LLC (7907), Great Escape Holding Inc. (2284), Great Escape Rides L.P. (9906), Great Escape Theme Park L.P. (3322), Hurricane Harbor GP LLC (0376), Hurricane Harbor LP (0408), Hurricane Harbor LP LLC (0417), KKI, LLC (2287), Magic Mountain LLC (8004), Park Management Corp. (1641), PP Data Services Inc. (8826), Premier International Holdings Inc. (6510), Premier Parks of Colorado Inc. (3464), Premier Parks Holdings Inc. (9961), Premier Waterworld Sacramento Inc. (8406), Riverside Park Enterprises, Inc. (7486), SF HWP Management LLC (5651), SFJ Management Inc. (4280), SFRCC Corp. (1638), Six Flags, Inc. (5059), Six Flags America LP (8165), Six Flags America Property Corporation (5464), Six Flags Great Adventure LLC (8235), Six Flags Great Escape L.P. (8306), Six Flags Operations Inc. (7714), Six Flags Services, Inc. (6089), Six Flags Services of Illinois, Inc. (2550), Six Flags St. Louis LLC (8376), Six Flags Theme Parks Inc. (4873), South Street Holdings LLC (7486), Stuart Amusement Company (2016). The mailing address of each of the Debtors solely for purposes of notices and communications is 1540 Broadway, 15th Floor, New York, NY 10036 (Attn: James Coughlin).

of the Lenders' interests in the Prepetition Collateral (as defined below), including for the use of the Cash Collateral, the use, sale, lease, depreciation, decline in market price or other diminution in value of the Prepetition Collateral other than the Cash Collateral, or the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code; (b) seeking an interim hearing (the "Interim Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001(b) (the "Interim Order") authorizing the Debtors to use the Lenders' Cash Collateral; and (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis the Debtors' use of the Cash Collateral; and due and sufficient notice of the Motion and the Interim Hearing under the circumstances having been given; and an initial hearing on the Motion having been held before this Court on June 14, 2009 (the "Bridge Hearing"); and a bridge order authorizing the Debtors' use of the Cash Collateral through entry of an interim order having been entered by the Court on June 15, 2009 [Docket No. 50]; and the Interim Hearing on the Motion having been held before this Court on June 23, 2009; and the Court having considered the objection to the Interim Order filed by Avenue Capital Management II L.P. ("Avenue") on June 15, 2009; and the Interim Order having been entered by the Court on July 2, 2009; and a second interim hearing (the "Second Interim Hearing") having been held before this Court on July 13, 2009 to consider entry of a second interim order (this "Second Interim Order") authorizing the Debtors' use of the Cash Collateral through entry of a Final Order; and upon the entire record made by the Debtors at the Bridge Hearing, the Interim Hearing and the Second Interim Hearing, and this Court having found good and sufficient cause appearing therefor,

**IT IS HEREBY STIPULATED AND AGREED BY AND AMONG THE DEBTORS, THE ADMINISTRATIVE AGENT AND THE LENDERS THAT:**

2

A.      On June 13, 2009 (the "Petition Date"), the Debtors each filed a voluntary

petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Delaware (these "Chapter 11 Cases").  The Debtors are continuing to

operate their businesses and manage their properties as debtors-in-possession pursuant to

Sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee or examiner.  An official committee of unsecured creditors (the

"Committee") was appointed in these Chapter 11 Cases on June 26, 2009.

B.      This Court has jurisdiction over these Chapter 11 Cases and the Motion

pursuant to 28 U.S.C. § 157(b) and 1334.  Consideration of this Motion constitutes a core

proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      Pursuant to the Second Amended and Restated Credit Agreement dated as

of May 25, 2007 (as amended, supplemented or otherwise modified, the "Credit Agreement"),

among Debtors Six Flag, Inc. ("SFI"), Six Flags Operations Inc. ("SFO") and Six Flags Theme

Parks Inc. ("SFTP") as the primary borrower therein, certain of SFTP's foreign subsidiaries party

thereto, the several lenders party thereto (including, in their capacity, as holders of the Swap

Obligations (as defined below), collectively, the "Lenders"), JPMorgan Chase Bank, N.A., as

administrative agent for the Lenders (in such capacity, the "Administrative Agent"), and Credit

Suisse Cayman Islands Branch and Lehman Commercial Paper Inc., as co-syndication agents,

the Lenders made in excess of $1.1 billion of loans and other financial accommodations to or for

the benefit of SFI, SFO, SFTP and the other Debtors.  In connection with the Credit Agreement,

SFO, SFTP and certain of the other Debtors (collectively, the "Debtor Loan Parties")[2] entered

---

[2]        "Debtor Loan Parties" include each of the Debtors other than SFI, Premier Waterworld Sacramento Inc.,
SF HWP and SFRCC Corp.

into certain collateral and ancillary documentation, including, without limitations, certain interest rate protection arrangements (together with the Credit Agreement, the "Loan Documents"). All such loans, financial accommodations and other amounts owing by the Debtor Loan Parties in connection with the Loan Documents, including the Debtor Loan Parties' obligations in respect of certain interest rate protection arrangements (the "Swap Obligations") are hereinafter referred to as the "Prepetition Obligations".

      D.     Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 15), the Debtors acknowledge and agree that, as of the Petition Date, the Debtor Loan Parties were liable to the Lenders under the Credit Agreement and the other Loan Documents (i) in the aggregate principal amount of approximately $1.1 billion plus additional amounts in respect of accrued but unpaid interest, fees and other charges, plus (ii) approximately $20 million in respect of the Swap Obligations, plus (iii) approximately $30 million on account of the Debtor Loan Parties' reimbursement obligations with respect to letters of credit issued pursuant to the Credit Agreement which remained outstanding as of the Petition Date.

      E.     Without prejudice to the rights of any other party (but subject to the limitations thereon described below in decretal paragraph 15), the Debtors acknowledge and agree that, pursuant to the Loan Documents, including without limitation, the Amended and Restated Guarantee and Collateral Agreement, dated as of May 25, 2007, made by SFO and SFTP and the other Debtor Loan Parties in favor of the Administrative Agent, for the ratable benefit of the Lenders, the Prepetition Obligations are secured by perfected, valid and enforceable first priority liens and security interests upon and in substantially all of the assets and property of SFO, SFTP and the other Debtor Loan Parties, including without limitation,

4

accounts, chattel paper, certain owned real property, deposit accounts, documents, equipment,

fixtures, general intangibles, instruments, intellectual property, inventory, investment property,

pledged capital stock and other pledged interests of certain subsidiaries, books and records

pertaining to the foregoing and the proceeds, supporting obligations and products thereof

(collectively the "Prepetition Collateral").  Without prejudice to the rights of any other party (but

subject to the limitations thereon described below in decretal paragraph 15), the Debtors

acknowledge and agree that (i) the Prepetition Obligations are not subject to defense,

counterclaim or offset of any kind, and (ii) the Administrative Agent's liens and security

interests have been properly filed or recorded, as applicable, so as to be perfected in accordance

with applicable law.  Without prejudice to the rights of any other party (but subject to the

limitations thereon described below in decretal paragraph 15), the Debtors acknowledge and

agree that certain cash of the Debtor Loan Parties, including cash on deposit in accounts

maintained with any Lender or Lender affiliate on the Petition Date, constitutes Prepetition

Collateral or the proceeds of the Prepetition Collateral and, therefore, is the cash collateral of the

Lenders within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral")[3].

The Administrative Agent does not consent to the use by the Debtors of the Prepetition

Collateral, including the Cash Collateral, except on the terms of this Second Interim Order (or

other order that may be entered by the Bankruptcy Court with the Administrative Agent's

---

[3] The Debtors, Administrative Agent, Committee and all other parties in interest expressly reserve all of their respective rights, claims and defenses as to whether the Cash Collateral includes any funds on deposit in accounts maintained at financial institutions other than any Lender or any Lender affiliates as of the Petition Date and except to the extent of the Replacement Lien granted to them hereunder as adequate protection for any diminution in value of the Prepetition Collateral during these Chapter 11 Cases, whether the Administrative Agent's or the Lenders' liens extend to cash which the Debtors may accumulate during these Chapter 11 Cases in excess of the amount on deposit in accounts maintained with the Lenders or Lender affiliates as of the Petition Date.

consent).  In addition, the Lenders are entitled, pursuant to Sections 361 and 363(e) of the

Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral to the

extent of the diminution in value, including for the use of the Cash Collateral, the use, sale, lease,

depreciation, decline in market price or other diminution in value of the Prepetition Collateral

other than the Cash Collateral, and the imposition of the automatic stay.

Based upon the foregoing stipulations, and upon the record made before this

Court at the Bridge Hearing, the Interim Hearing and the Second Interim Hearing, and good and

sufficient cause appearing therefor;

**THE COURT HEREBY FINDS** that:

F.    Good cause has been shown for the entry of this Second Interim Order.

The Debtors do not have sufficient available sources of working capital and financing to carry on

the operation of their businesses absent continued use of the Lenders' Cash Collateral.  Among

other things, entry of this Second Interim Order will minimize disruption of the Debtors'

businesses and operations and permit them to make payroll and other operating expenses,

maintain business relationships with their vendors and retain customer and vendor confidence by

demonstrating an ability to maintain normal operations.  The use of the Cash Collateral is

therefore of the utmost significance and importance to the preservation and maintenance of the

going concern value of the Debtors and their estates, and will enhance the prospects for a

successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code.

G.    The Administrative Agent and the Debtors have negotiated at arms' length

and in good faith regarding the Debtors' use of Cash Collateral to fund the administration of the

Debtors' estates and continued operation of their businesses.  The Administrative Agent and the

Lenders have agreed to permit the Debtors to use their Cash Collateral for the period through the

6

Termination Date (as defined below), all subject to the terms and conditions set forth herein,

including the protection afforded a party acting in "good faith" pursuant to Section 363(m) of the

Bankruptcy Code, but use of Cash Collateral shall only be in accordance with the Debtors'

budget attached hereto as Exhibit 1 (as such budget may be supplemented or modified in

accordance with the terms hereof, the "Budget"), subject to permitted variances.

H.    Notice of the Bridge Hearing, the Interim Hearing and the Second Interim

Hearing and the relief requested in the Motion has been provided by the Debtors to parties in

interest.  Under the circumstances, notice of the Bridge Hearing, the Interim Hearing and the

Second Interim Hearing and the relief requested in the Motion is due and sufficient notice and

complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), and

4001(d), and the Local Rules of the Bankruptcy Court for the District of Delaware.

I.    Based on the record presented to the Court at the Bridge Hearing, the

Interim Hearing and the Second Interim Hearing (i) the terms of the Debtors' use of the Lenders'

Cash Collateral appear to be fair and reasonable, and to reflect the Debtors' and their respective

directors' exercise of prudent business judgment consistent with their fiduciary duties; (ii)

pursuant to certain provisions of the Credit Agreement, the Lenders delegated their right to

consent to the use of the Prepetition Collateral, including the Cash Collateral, to the

Administrative Agent; and (iii) Avenue, solely in its capacity as a Lender, is entitled to payment

of attorneys' fees in accordance with section 12.5 of the Credit Agreement; provided that, no

such attorneys' fees shall be paid without further order of the Court.

Based upon the foregoing findings and conclusions, and upon the record made

before this Court at the Bridge Hearing, the Interim Hearing and the Second Interim Hearing and

good and sufficient cause appearing therefor;

7

**IT IS HEREBY ORDERED** that:

1.      The Motion is granted on an interim basis.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits or, to the extent applicable, deferred until the hearing on the Final Order.  This Second Interim Order shall become effective immediately upon its entry.

2.      The Debtors are hereby authorized to use the Cash Collateral during the period from the Petition Date through and including the Termination Date for general corporate purposes and costs and expenses related to these Chapter 11 Cases in accordance with the terms and conditions of this Second Interim Order and the Budget; provided that (a) all uses of cash by the Debtors for the costs and expenses of administering these Chapter 11 Cases shall be deemed to be first from cash that is not Cash Collateral and thereafter from Cash Collateral and (b) neither the Debtors nor any other party in interest shall be authorized to use the Cash Collateral to prosecute the Avoidance Actions (as defined below) or any other claims or causes of action against the Administrative Agent or any Lender); provided further, that the Committee may use Cash Collateral to conduct an investigation subject to the limitations set forth in paragraph 6 and the Committee may use cash in the Debtors' estates which does not constitute Cash Collateral to investigate or prosecute any Avoidance Action against the Administrative Agent or any Lender. The Budget may be modified by the Debtors in writing only with the prior written consent of the Administrative Agent, which consent shall not be unreasonably withheld; provided, however, that no such agreed modification to the Budget shall become effective unless it is filed with the Court and becomes effective in accordance with the negative notice procedures set forth in paragraph 4(b)(ii)(B)(2) below.

3.      At any time prior to the Termination Date (and subject to the terms of any subsequent order of this Court regarding use of Cash Collateral) the Debtors shall only use the Cash Collateral in accordance with the terms of this Second Interim Order and the Budget. The Debtors shall maintain their pre-Petition Date cash management system to the extent authorized by and subject to the terms of any order of this Court governing the Debtors' cash management system. This Second Interim Order does not address the disposition of any Prepetition Collateral outside the ordinary course of business or the Debtors' use of the Cash Collateral resulting therefrom.

4.      (a) As adequate protection for, and to the extent of, any diminution in the value of the Lenders' interest in the Prepetition Collateral resulting from (x) the use of the Cash Collateral pursuant to Section 363(c) of the Bankruptcy Code, (y) the use, sale, lease, depreciation, decline in market price or other diminution in value of the Prepetition Collateral (other than the Cash Collateral) pursuant to Section 363(c) of the Bankruptcy Code and (z) the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code (the amount of any such diminution being referred to hereinafter as the "Adequate Protection Obligations"):

> (i)      the Administrative Agent and the Lenders are hereby granted (effective as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or otherwise), valid and perfected, replacement security interests in, and liens (the "Replacement Liens") on all of the right, title and interest of the Debtors in, to and under all present and after-acquired property of the Debtors of any nature whatsoever including, without limitation, all cash contained in any account of the Debtors, and the proceeds of all causes of action, other than (a) (1) causes of action (and proceeds thereof) arising under Chapter 5 of the Bankruptcy Code against any person or entity or (2) any cause of action against the Administrative Agent or the Lenders (in their respective capacities as such) whether arising under Chapter 5 of the Bankruptcy Code or otherwise, (collectively, the "Avoidance Actions"), (b) 35% of the outstanding shares of foreign subsidiaries and (c) Permitted Liens (as defined below) (collectively, with the proceeds and products of any and all of the foregoing, the "Postpetition Collateral"). Subject to the Carveout and Permitted Liens, said Replacement

9

Liens shall be (x) a first priority perfected lien upon all of the Postpetition Collateral that is not otherwise encumbered by a validly perfected, enforceable, non-avoidable security interest or lien on the Petition Date, (y) a first priority, senior, priming and perfected lien upon (a) that portion of the Postpetition Collateral that is comprised of the Prepetition Collateral and (b) Postpetition Collateral subject to a lien that is junior to the liens securing the Prepetition Obligations and (z) a second priority, junior perfected lien upon all Postpetition Collateral (other than the portion described in the preceding clause (y)), which is subject to a validly perfected and enforceable lien as of the Petition Date; and

(ii)      the Debtors are authorized and directed to (a) immediately pay as adequate protection an amount equal to all accrued and unpaid interest on the Prepetition Obligations and letter of credit fees at the non-default contract rates provided for in the Loan Documents, and all other accrued and unpaid fees and disbursements owing to the Administrative Agent under the Loan Documents and incurred as of July 1, 2009, (b) on the first business day of each month thereafter, pay as adequate protection an amount equal to all accrued but unpaid interest on the Prepetition Obligations at the non-default LIBOR-based rate as set forth in the Credit Agreement, provided that, without prejudice to the rights of the Committee to challenge whether default interest is properly payable, default interest shall accrue on the outstanding Prepetition Obligations beginning July 1, 2009 and (c) immediately pay letter of credit and agency, administrative and other fees as and when due, all at the non-default contract rates provided for in the Loan Documents.

The payments provided for in paragraph 4(a)(ii) and 4(c) are referred to herein as the "Adequate Protection Payments."

(b) As further adequate protection hereunder, the Debtors shall provide the following reporting to the Administrative Agent and the financial advisors to the Committee (the "Reporting Requirements"):

(i)      the Debtors shall provide the Administrative Agent and the financial advisors to the Committee with copies of all financial reports, information and other materials required to be delivered to the Administrative Agent pursuant to the Loan Documents and such other information and materials as may be, from time to time, reasonably requested by the Administrative Agent and the financial advisors to the Committee;

10

(ii)    (A) no later than fifteen (15) days prior to the last day covered by the Budget, the

Debtors shall file with the Court and deliver to the Administrative Agent and the

financial advisors to the Committee a proposed budget covering a subsequently

agreed upon period; and (B) upon the failure of any party in interest to object in

writing to such budget (such written objection to be delivered to counsel to the

Debtors, the Administrative Agent and the Committee) within five (5) business

days of the filing of such proposed budget with the Court (provided that upon any

timely written objection, the Debtors, the Administrative Agent and the objecting

party shall have one business day to attempt to resolve such objection; and if such

objection cannot be resolved, a hearing on the objection shall be heard by the

Court on an expedited basis with no less than five (5) business days' notice), such

proposed budget shall become the applicable "Budget" for the period through the

Termination Date covered thereby;

(iii)    commencing on the Wednesday immediately following the entry of the Second

Interim Order and on every Wednesday thereafter, 13-week rolling cash flow

projections in the same form as the Budget;

(iv)    commencing on the Wednesday immediately following the entry of the Second

Interim Order and on every Wednesday thereafter, a weekly statement showing

(A) the ending cash balance on a consolidated basis for the prior week-ending

Sunday for the Debtors and each of the park owning or operating non-debtor

subsidiaries and affiliates (including Six Flags Over Georgia and Six Flags Over

Texas (the "Partnership Parks")) and (B) the revenue for the prior week-ending

Sunday (1) on a per-park basis (including the Partnership Parks and the Debtors'

11

international parks) and (2) for all Debtors and non-debtor subsidiaries and affiliates on a consolidated basis;

(v)     commencing on the Wednesday immediately following the entry of this Second Interim Order, and within ten (10) days of the end of every fiscal month thereafter, consolidated financial statements for the Debtors and non-debtor subsidiaries (including the Partnership Parks) as of the end of the preceding month and year-to-date period, including a statement showing line item variances for such preceding month and year-to-date period as reflected in the Budget and line item variances for such month and year-to-date period, and an explanation by management of any material variances; and

(vi)    commencing on the Wednesday immediately following the entry of this Second Interim Order and within ten (10) days of the end of every fiscal month thereafter, a monthly performance report in respect of each park detailing attendance and revenue at such park for the previous month and year-to-date to the end of such month, and a comparison to the comparable month and year-to-date period for the prior year.

The Debtors shall permit representatives, agents and/ or employees of the Administrative Agent or the Lenders and professionals of the Committee to have reasonable access to their premises and non-privileged records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with and provide to such persons all such non-privileged information as they may reasonably request from time to time.  At its discretion, the Administrative Agent or the professionals of the Committee may request, and the Debtors agree to provide, periodic telephonic updates to the Administrative

RLF1-3414787-1

Agent or the professionals of the Committee and the Lenders concerning the operations, business affairs and financial condition of the Debtors.

(c)  As additional adequate protection, the Debtors are authorized and directed, to pay or reimburse all reasonable fees, costs and charges incurred by the Administrative Agent under the Loan Documents (including, without limitation, the administration fees payable to the Administrative Agent under the Credit Agreement and the reasonable fees and out-of-pocket disbursements of The Blackstone Group ("Blackstone") or any successor financial advisors and Simpson Thacher & Bartlett LLP and Landis Rath & Cobb LLP or any successor outside counsel advising the Administrative Agent), in each case, in connection with matters relating to the Credit Agreement, the Prepetition Obligations, the monitoring of these Chapter 11 Cases or the enforcement and protection of the rights and interests of the Administrative Agent and the Lenders in these Chapter 11 Cases.  None of the fees, costs and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but the Court shall resolve any dispute as to the reasonableness of any such fees, costs and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. Nothing contained herein shall be deemed to be a waiver by any party in interest of the right to object to the reasonableness of any fees, costs and charges incurred by the Lenders or the Administrative Agent.  The Debtors shall pay the reasonable fees incurred by the Administrative Agent in accordance with this paragraph 4(c) only if each applicable professional retained by the Administrative Agent has provided copies of its invoices to the U.S. Trustee and counsel to the Creditors' Committee contemporaneously with the delivery of such invoices to the Debtors and neither the U.S. Trustee nor counsel to the Committee has filed a written objection as to the reasonableness of any such fee or expense within twenty (20) days after their receipt of such

statements; provided, however, that the Committee reserves all rights to object to the

reasonableness under section 506(b) of the Bankruptcy Code of any success or transaction fee

payable to Blackstone under the terms of its engagement letter and nothing contained herein shall

be construed as a determination by the Court as to the reasonableness of any such success or

transaction fee.  All invoices submitted by such professionals that are attorneys shall contain

reasonable detail as to the number of hours worked and applicable hourly rate, but may be

redacted to the extent necessary to delete any information subject to the attorney/client or other

privilege, any information constituting attorney work product or any other confidential

information and the provision of such invoices shall not constitute a waiver of the attorney/client

privilege or any benefits of the attorney/client work product doctrine.  Any objection filed by the

United States Trustee or the Committee shall describe with particularity the items or categories

of fees and expenses which are subject to the objection and provide a specific basis for the

objection to each such item or category of fees or expenses.  Notwithstanding the filing of any

such objections, the Debtor shall promptly pay all amounts which are not subject to any such

objection.  Any hearing on such an objection shall be scheduled for the following omnibus

hearing date and the inquiry shall be limited to the reasonableness under section 506(b) of the

Bankruptcy Code of the particular items or categories of fees and expenses which are the subject

of such objection.

       (d)  Under the circumstances (and consistent with the rights of the Lenders under

section 506(b) of the Bankruptcy Code), and based upon the Administrative Agent's consent, the

adequate protection provided herein is reasonable and sufficient to protect the interests of the

Lenders.  Notwithstanding any other provision hereof, the grant of adequate protection to the

Administrative Agent and the Lenders pursuant hereto is (i) without prejudice to the rights of any

party in interest (other than the Debtors) to assert that the Adequate Protection Payments

constitute repayments of principal on unpaid Prepetition Obligations because such Prepetition

Obligations are not oversecured and (ii) without prejudice to the right of the Administrative

Agent or the Lenders to seek modification of the grant of adequate protection provided hereby so

as to provide different or additional adequate protection and without prejudice to the right of the

Debtors or any other party in interest to contest any such modification.

     5.     As used in this Second Interim Order, the term "Carveout" means an

amount equal to (a) the unpaid fees of the clerk of the Bankruptcy Court and of the United States

Trustee pursuant to 28 U.S.C. § 1930(a) and (b) (the "Statutory Fees"), (b) the payment of

allowed professional fees and disbursements (the "Professional Fees and Disbursements")

incurred following the occurrence of an Event of Default, by the professionals retained by the

Debtors or the Committee (other than the fees and expenses, if any, of any professionals

incurred, directly or indirectly, in respect of, arising from or relating to, the initiation or

prosecution (but not the investigation conducted prior to any such initiation or prosecution) of

any action for preferences, fraudulent conveyances, other avoidance power claims or any other

claims or causes of action against the Administrative Agent or the Lenders) not to exceed

$5,000,000 in the aggregate, plus unpaid Professional Fees and Disbursements previously

incurred prior to the occurrence of such Event of Default and (c) the costs and administrative

expenses (other than the fees and expenses, if any, incurred, directly or indirectly, in respect of,

arising from or relating to, the initiation or prosecution (but not the investigation conducted prior

to such initiation or prosecution) of any action for preferences, fraudulent conveyances, other

avoidance power claims or any other claims or causes of action against the Administrative Agent

or the Lenders) not to exceed $150,000 in the aggregate that are permitted to be incurred by any

Chapter 7 trustee pursuant to an order of this Court following any conversion to Chapter 7 of these Cases. So long as no Event of Default shall have occurred and be continuing, the Debtors shall be permitted to use Cash Collateral or cash not constituting Cash Collateral to pay, without reduction of the Carveout, (x) the Statutory Fees and (y) the Professional Fees and Disbursements, as the same may be due and payable. Nothing herein shall be construed as a waiver of the right of the Administrative Agent or any Lender or the Committee to object to the allowance of any Professional Fees and Disbursements.

6.     Notwithstanding the foregoing, in no event shall the Cash Collateral or the Carveout be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any of the professionals incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (a) challenging the Prepetition Obligations, invalidating, setting aside, avoiding, or subordinating in whole or in part the Administrative Agent's liens and security interests granted pursuant to the Loan Documents or this Second Interim Order, or asserting any other claims or causes of action against the Administrative Agent or the Lenders or (b) except as permitted under paragraph 10 hereof, preventing, hindering or delaying the Administrative Agent's enforcement or realization upon any Prepetition Collateral or Postpetition Collateral in accordance with the terms of this Second Interim Order, provided however that the Cash Collateral or the Carveout may be used for the investigation in connection therewith, subject to a limitation of $150,000 and the use of cash not constituting Cash Collateral for such purpose shall not be subject to such limitation.

7.    Subject to the Carveout and that such 507(b) Claims (as defined below) shall not extend to the proceeds of any Avoidance Actions, the Adequate Protection Obligations shall constitute expenses of administration under Sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code (the "507(b) Claims") with priority in payment over any and all administrative expenses now existing or after arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code including, without limitation, Sections 105, 326, 328, 330, 331 and 726 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in these Chapter 11 Cases or, to the extent permitted by applicable law, any subsequent proceedings under the Bankruptcy Code.  Subject to the Carveout, no cost or expense now existing or after arising, of administration under Sections 105, 503(b) or 507(b) or otherwise, including those resulting from the conversion of these Chapter 11 Cases pursuant to Section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the 507(b) Claims of the Lenders arising out of the Adequate Protection Obligations and provided further, however, that neither the Administrative Agent nor any Lender shall receive or retain any payments, property or other amounts in respect to the 507(b) Claims or Adequate Protection Obligations or the Replacement Liens in respect to any Avoidance Actions or the proceeds thereof brought against the Administrative Agent, in its capacity as Administrative Agent, or such Lender, in its capacity as a Lender.

8.    Except as expressly set forth in this Second Interim Order (including, but not limited to, such Replacement Liens not extending to Avoidance Actions or the proceeds thereof), the Replacement Liens granted pursuant to this Second Interim Order shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under Section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other

17

lien under Sections 363 and 364 of the Bankruptcy Code, other than any Permitted Lien. Subject to the Carveout and any Permitted Lien, the Replacement Liens shall be prior and senior to all liens and encumbrances of all other secured creditors in and to such Postpetition Collateral granted, or arising, after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors). The Replacement Liens granted pursuant to this Second Interim Order shall constitute valid, enforceable and duly perfected security interests and liens, and the Administrative Agent and the Lenders shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, enforceability, perfection or priority of such Replacement Liens. If, however, the Administrative Agent, in its sole discretion, shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Replacement Liens, the Debtors are directed to cooperate with and assist in such process, the stay imposed by Section 362(a) of the Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Second Interim Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date of this Second Interim Order.

9.     The Administrative Agent's consent to the use of Cash Collateral pursuant to this Second Interim Order shall terminate (the date of any such termination, the "Termination Date") on the earliest to occur of (x) consummation of a plan of reorganization in these Chapter

July 29, 2009

11 Cases, (y) ~~August 13, 2009~~ if the Final Order has not been entered by the Court on or before

such date or such date as the Administrative Agent may agree or (z) five-business days

following written notice to the Debtors after the occurrence and continuance of any of the

following events ("Events of Default") beyond any applicable grace period, unless the Court

enters an order permitting the Debtors' continued use of Cash Collateral or otherwise

determining that the automatic stay shall continue in effect, in each case pursuant to paragraph

10 hereof:

a.  Failure of the Debtors to make a payment to the Administrative Agent or the
    Lenders as and when required by this Second Interim Order or other failure to
    comply in any material respect with the terms of this Second Interim Order and
    such failure shall continue unremedied for more than two business days after
    notice thereof;

b.  (i) Failure of the Debtors to deliver (and file with the Court) a proposed budget at
    least fifteen (15) days prior to the expiration of the then applicable Budget, or a
    proposed budget shall not have been accepted by the Administrative Agent as the
    applicable "Budget" for purposes hereof by the date that is at least five (5)
    business days prior to the expiration of the then applicable Budget, (ii) failure of
    the Court to approve (if required pursuant to paragraph 4(b)(ii)(B)(2) above) a
    proposed budget by the expiration of the then applicable Budget or (iii) failure of
    the Debtors to comply with the Reporting Requirements if not remedied within
    five business days after notice thereof of any applicable deadline;

c.  Failure of the Debtors to comply with any other covenant or agreement specified
    in this Second Interim Order (other than those described in clauses (a) and (b)
    above) and such failure shall continue unremedied for more than five business
    days after notice thereof specifying such failure;

d.  Any material representation or material warranty made by the Debtors in
    connection with the Reporting Requirements shall prove to have been incorrect in
    any material respect when made;

e.  SFTP or any of SFTP's Debtor subsidiaries makes a dividend, loan or other
    transfer to SFO or SFI in excess of an amount necessary for SFI or SFO, as the
    case may be, to pay (i) out-of-pocket legal fees and other administrative expenses
    incurred in the ordinary course of business, (ii) income tax liabilities of SFI and
    its subsidiaries and (iii) amounts necessary to pay ordinary course operating
    expenses of the Partnership Parks, excluding any liquidity put obligations arising
    in connection therewith;

f.  (i) Commencing with the week ending on the Sunday immediately following entry of this Second Interim Order, and as of each Sunday thereafter, the cash balance for such week, as reflected in the reports delivered pursuant to paragraph 4(b)(iv) herein, is at least 80% of the cash balance amount projected on the line item "Ending Cash Balance" of the Budget, (ii) commencing with the four-week period ending July 19, 2009, and as of each Sunday thereafter, the actual revenue based on the Debtors' daily operating reports ("DOR Revenue") for such four-week period is at least 75% of the DOR Revenue amounts projected for such period as set forth in the Budget, (iii) the consolidated revenue of the Debtors and the non-debtor subsidiaries and affiliates for any month, as reflected in the reports delivered pursuant to paragraph 4(b)(v) herein, is at least 75% of the projected consolidated revenue for such month as set forth in the Budget, (iv) the SFI EBITDA and SFO EBITDA for any month, as reflected in the reports delivered pursuant to paragraph 4(b)(v) herein, is at least 80% of the projected SFI EBITDA or SFO EBITDA, as the case may be, for such month as set forth in the Budget, or (v) as of the end of June, and the end of each successive month thereafter, the consolidated cash balance for the Debtors and non-debtor affiliates and subsidiaries is less than the amount set forth on Schedule A for such month;

g.  A "Termination Event" under the Plan Support Agreement (a/k/a the Lock Up Agreement), dated as of June 13, 2009 and executed by the Debtors and certain of the Lenders, shall have occurred and not been waived or cured pursuant to the terms therein;

h.  Any of these Chapter 11 Cases shall be dismissed or converted to a Chapter 7 Case; or a Chapter 11 Trustee with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in any of these Chapter 11 Cases; provided that the appointment by the Court of a trustee or other fiduciary of any Debtor's estate for the limited purpose of investigating, commencing or prosecuting Avoidance Actions on behalf of such Debtor's estate shall not constitute a default under this subparagraph;

i.  The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any material assets of the Debtors;

j.  An order shall be entered reversing, amending, supplementing, staying for a period in excess of three (3) days, vacating or otherwise modifying this Second Interim Order without the consent of the Administrative Agent;

k.  The Debtors shall create, incur or suffer to exist any postpetition liens or security interests other than (i) those in favor of the Administrative Agent, (ii) carriers', warehousemen's, repairmen's or other similar liens, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other

20

social security legislation, (iv) deposits to secure the payment of postpetition utilities, the performance of bids, trade contracts (other than for borrowed money), leases, statutory obligations, surety and appeal bonds, performance bonds and other obligations of a like nature incurred in the ordinary course of business, provided that the liens, pledges or deposits referred to in clauses (ii), (iii) and (iv) above shall not exceed $25 million at any one time, and (v) the liens or other security interests granted on a cash collateral account and amounts on deposit therein in connection with any letter of credit facility entered in to by the Debtors after the Petition Date in an amount of up to $5 million and on terms and conditions reasonably acceptable to the Administrative Agent (a "DIP L/C Facility" and together with the liens in respect of the foregoing, the "Permitted Liens");[4]

l.  A claim arising from funded indebtedness shall be granted in any of these Chapter 11 Cases which is pari passu with or senior to the 507(b) Claims of the Administrative Agent and the Lenders, except for claims of the type described in the preceding paragraph (k) in the amount limited thereunder or arising under DIP L/C Facility; and

m.  Any judgment in excess of $25 million as to any postpetition obligation not covered by insurance shall be rendered against the Debtors and the enforcement thereof shall not be stayed; or there shall be rendered against the Debtors a non-monetary judgment with respect to a postpetition event which causes or could reasonably be expected to result in a material adverse change or have a material adverse effect on the ability of the Debtors to perform their obligations under this Second Interim Order.

The Debtors shall promptly provide notice to the Administrative Agent (with a copy to counsel for the Committee and the United States Trustee) of the occurrence of any Event of Default.

10.    Following notice by the Administrative Agent of an Event of Default and prior to a Termination Date, the Debtor or any other party of interest, including the Committee, shall be entitled to seek an emergency hearing to be held within such five (5) day period regarding, among other things, the continued use of Cash Collateral.  Unless the Court enters an order authorizing the Debtors to continue their use of Cash Collateral or otherwise determining that the automatic stay shall continue in effect in respect to the Administrative Agent and

---

[4]    The DIP L/C Facility shall be in addition to approximately $30 million of letters of credit currently outstanding which shall continue in full force and effect.

Lenders at such hearing, the Termination Date shall occur.  Upon the Termination Date, (i) the

Adequate Protection Obligations shall become immediately due and payable, (ii) the

Administrative Agent and each Lender may setoff amounts in any account of the Debtors

maintained with the Administrative Agent or each Lender, respectively and (iii) the

Administrative Agent and the Lenders may exercise the rights and remedies available under the

Loan Documents, this Second Interim Order or applicable law, including, without limitation,

foreclosing upon and selling all or a portion of the Prepetition Collateral or Postpetition

Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under

Section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent

necessary to permit such actions following the Termination Date.  The actions described in

clauses (ii) and (iii) above may be taken without further order of or application to the Court as

the Administrative Agent or the Lenders shall, in their discretion, elect.  The Administrative

Agent and the Lenders shall be entitled to apply the payments or proceeds of the Prepetition

Collateral in accordance with the provisions of the Loan Documents, and in no event shall the

Administrative Agent or any of the Lenders be subject to the equitable doctrine of "marshaling"

or any other similar doctrine with respect to any of the Prepetition Collateral, Postpetition

Collateral or otherwise.  Notwithstanding the occurrence of the Termination Date or anything

herein, all of the rights, remedies, benefits and protections provided to the Administrative Agent

and the Lenders under this Second Interim Order shall survive the Termination Date.

      11.     To the extent the Adequate Protection Obligations have not been paid in

full in cash, the provisions of this Second Interim Order and any actions taken pursuant hereto

shall survive entry of any order which may be entered (a) confirming any plan of reorganization

in these Chapter 11 Cases; (b) converting any of these Chapter 11 Cases to a Chapter 7 case; or

(c) dismissing any of these Chapter 11 Cases.  If an order dismissing these Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Replacement Liens granted pursuant to this Second Interim Order to the Administrative Agent and the Lenders shall continue in full force and effect, shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been paid and satisfied in full and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purposes of enforcing such Replacement Liens.

12.    Entry of this Second Interim Order shall be without prejudice to any and all rights, remedies, claims and causes of action which the Administrative Agent or the Lenders may have against the Debtors or third parties, and without prejudice to the right of the Administrative Agent and the Lenders to seek relief from the automatic stay in effect pursuant to Bankruptcy Code Section 362, or any other relief in these Chapter 11 Cases, and the right of the Debtors or the Committee or any other party in interest to oppose any such relief.  The provisions of this Second Interim Order shall be binding upon and inure to the benefit of the Administrative Agent, the Lenders, the Debtors, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Chapter 11 Cases as a legal representative of the Debtors or the Debtors' estates.

13.    Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code, the Administrative Agent and the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Second Interim Order, and each is entitled to the protection provided to such entities under Section 363(m) of the Bankruptcy Code.

RLF1-3414787-1

14.     Except for Permitted Liens, without the prior written consent of the Administrative Agent, the Debtors shall be enjoined and prohibited from at any time during these Chapter 11 Cases granting (or seeking authority from the Court to grant) liens in the Prepetition Collateral, the Postpetition Collateral or any portion thereof to any other parties pursuant to Section 364 of the Bankruptcy Code, which liens are senior or on a parity with the liens of the Administrative Agent or the Lenders, unless the terms and conditions of any order granting such liens expressly provide that any unpaid Adequate Protection Obligations are paid to the Lenders concurrently with the entry of any such order.

15.     As a result of the Debtors' review of the Loan Documents and the facts related thereto, the Debtors have made certain agreements and acknowledgments as set forth in paragraphs D and E above and shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Loan Documents or any transactions or course of conduct related thereto.  The acknowledgments and agreements contained in paragraphs D and E hereof shall be binding upon the Debtors in all circumstances, and shall be binding upon all other parties in interest, including without limitation, the Committee, unless (a) a party in interest (including the Committee) has been granted standing to file and has properly filed an adversary proceeding or contested matter (subject to the limitations set forth in paragraph 6 hereof) challenging the validity, enforceability or priority of the Prepetition Obligations or the Administrative Agent's liens on the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Administrative Agent or the Lenders on behalf of the Debtors' estates, no later than (i) the later of (A) September 30, 2009 and (B) if a party in interest files a motion for standing to bring such a claim prior to September 30, 2009, the date that is 30 days after the filing of the motion or (ii)

such subsequent date as may be (A) agreed to by the Debtors, Committee and Administrative

Agent or (B) set by the Court for good cause shown upon application of the Committee,

following notice and a hearing and (b) this Court rules in favor of the plaintiff in any such timely

and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or

contested matter is commenced as of such date, then, without the requirement or need to file any

proof of claim with respect thereto, the Prepetition Obligations shall constitute allowed claims,

not subject to defense, counterclaim, offset of any kind, or subordination and otherwise

unavoidable, for all purposes in these Chapter 11 Cases or any subsequent Chapter 7 cases, the

Administrative Agent's liens on the Prepetition Collateral shall be deemed legal, valid, binding,

perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise

unavoidable, and the Administrative Agent, the Lenders, the Prepetition Obligations and the

Administrative Agent's liens on the Prepetition Collateral shall not be subject to any other or

further challenge by any party in interest seeking to exercise the rights of the Debtors' estates,

including without limitation, any successor thereto.  If any such adversary proceeding or

contested matter is timely commenced as of such date, the acknowledgements and agreements

contained in paragraphs D and E shall nonetheless remain binding and preclusive (as provided in

this paragraph) except to the extent that such acknowledgements and agreements were expressly

challenged in such adversary proceeding or contested matter. To the extent that the Committee

specifically asserts a claim challenging the validity, enforceability or priority of the Prepetition

Obligations or the Administrative Agent's liens on the Prepetition Collateral in respect thereof,

or otherwise against the Administrative Agent or the Lenders, no provisions of this Order or any

interim order previously entered regarding the use of Cash Collateral shall impair or otherwise

prejudice the ability of this Court to avoid the liens or claims constituting the debt which is the

subject of such claims or to otherwise fashion an appropriate legal or equitable remedy to afford

appropriate and just relief under the circumstances.

        16.     Nothing contained herein shall in any way limit the right of the Committee

to object to or otherwise address any issues raised by the Motion or with the proposed Final

Order at the Final Hearing.

        17.     The court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Second Interim Order.

Dated: July 13 , 2009
       Wilmington, Delaware

                                 The Honorable Christopher S. Sontchi
                                 United States Bankruptcy Judge

RLF1-3414787-1