```
------------------------------------------------------------x
                                                 :
In re                                            :   Chapter 11
                                                 :
Premier International Holdings Inc., et al.,      :   Case No. 09-12019 (CSS)
                                                 :
        Debtors.                                 :   (Jointly Administered)
                                                 :
------------------------------------------------------------X
```

## DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Six Flags, Inc. and its affiliated debtors[12] propose the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

**A.      Definitions**.

As used in the Plan, the following terms shall have the respective meanings specified below and be equally applicable to the singular and plural of terms defined:

1.1      *2010 Notes* means those certain 8.875% unsecured notes due 2010 and issued by SFI under the 2010 Notes Indenture.

1.2      *2010 Notes Indenture* means that certain indenture, dated February 11, 2002 between SFI and The Bank of New York, pursuant to which the 2010 Notes were issued, as amended from time to time.

1.3      *2013 Notes* means those certain 9.75% unsecured notes due 2013 and issued by SFI under the 2013 Notes Indenture.

1.4      *2013 Notes Indenture* means that certain indenture, dated April 16, 2003, between SFI and The Bank of New York, pursuant to which the 2013 Notes were issued, as amended from time to time.

1.5      *2014 Notes* means those certain 9.625% unsecured notes due 2014 and issued by SFI under the 2014 Notes Indenture.

1.6      *2014 Notes Indenture* means that certain indenture, dated December 5, 2003, between SFI and The Bank of New York, pursuant to which the 2014 Notes were issued, as amended from time to time.

---

[12]      All of the Debtors are identified in section 1.37 of the Plan.

1.7    ***2015 Notes*** means those certain 4.5% convertible unsecured notes due 2015 and issued by SFI under the 2015 Notes Indenture.

1.8    ***2015 Notes Indenture*** means, together, that certain indenture, dated June 30, 1999, and that certain second supplemental indenture, dated November 19, 2004, between SFI and The Bank of New York, pursuant to which the 2015 Notes were issued, each as amended from time to time.

1.9    ***2016 Notes*** means those certain 12.25% unsecured notes due 2016 and issued by SFO under the 2016 Notes Indenture.

1.10    ***2016 Notes SFI Guaranty*** means that certain guaranty of the 2016 Notes by SFI.

1.11    ***2016 Notes Indenture*** means that certain indenture, dated June 16, 2008, between SFO, as issuer, SFI, as guarantor, and HSBC Bank USA, N.A., as trustee, pursuant to which the 2016 Notes were issued, as amended from time to time.

1.12    ***Acquisition Parties*** means SFOG Acquisition A, Inc., SFOG Acquisition B, L.L.C., SFOT Acquisition I, Inc., and SFOT Acquisition II, Inc.

1.13    ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Reorganization Cases Allowed under sections 330, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Reorganization Cases, (d) Claims, pursuant to section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtors' businesses, (e) any compensation for professional services rendered and reimbursement of expenses incurred, and (f) all reasonable and customary fees and expenses of the Indenture Trustee, as provided in the Unsecured Notes Indentures, without the need for application to or approval of the Bankruptcy Court.  Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with section VI.K.7 of the Plan.

1.14    ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.15    ***Allowed*** means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in the Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or Contingent, and for which no contrary proof of Claim has been filed, (b) any timely filed proof of Claim as to which no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, or as to which an objection has been interposed and such

Claim has been allowed in whole or in part by a Final Order, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or the authority granted the Reorganized Debtors under section VI.E.5 of the Plan; *provided, however,* that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims." Unless otherwise specified in the Plan or by order of the Bankruptcy Court, (i) "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date, and (ii) "Allowed Claim" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code. For purposes of determining the amount of an "Allowed Claim" or an "Allowed Administrative Expense Claim," there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to applicable bankruptcy and nonbankruptcy law.

1.16    ***Ballot*** means the form distributed to each holder of an Impaired Claim or Preconfirmation Equity Interest that is entitled to vote to accept or reject the Plan on which is to be indicated an acceptance or rejection of the Plan.

1.17    ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

1.18    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Reorganization Cases.

1.19    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

1.20    ***Benefit Plans*** means all employee benefit plans, policies and programs sponsored by any of the Debtors, including, without limitation, all incentive and bonus arrangements, medical and health insurance, life insurance, dental insurance, disability benefits and coverage, leave of absence, savings plans, retirement pension plans and retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code).

1.21    ***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" set forth in Bankruptcy Rule 9006(a).

1.22    ***Cash*** means legal tender of the United States of America.

1.23    ***Causes of Action*** means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, and whether arising in law, equity or otherwise, based in whole or in part upon any act or omission or other

event occurring prior to the Petition Date or during the course of the Reorganization Cases, including through the Effective Date.

1.24 *Claim* means a claim, as defined in section 101(5) of the Bankruptcy Code, against a Debtor.

1.25 *Class* means a category of holders of Claims or Preconfirmation Equity Interests set forth in Article IV of the Plan.

1.26 *Collateral* means any property or interest in property of the estates of the Debtors subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.27 *Company* means SFI and all of its Debtor and non-Debtor subsidiaries.

1.28 *Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.29 *Confirmation Hearing* means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.30 *Confirmation Order* means the order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Supermajority Participating Lenders (as defined in the Plan Support Agreement), confirming the Plan.

1.31 *Contingent Claim* means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.32 *Creditors' Committee* means the committee of unsecured creditors appointed in the Reorganization Cases pursuant to section 1102(a) of the Bankruptcy Code.

1.33 *Debtors* means each of Six Flags, Inc., Astroworld GP LLC, Astroworld LP, Astroworld LP LLC, Fiesta Texas Inc., Funtime, Inc., Funtime Parks, Inc., Great America LLC, Great Escape Holding Inc., Great Escape Rides L.P., Great Escape Theme Park L.P., Hurricane Harbor GP LLC, Hurricane Harbor LP, Hurricane Harbor LP LLC, KKI, LLC, Magic Mountain LLC, Park Management Corp., PP Data Services Inc., Premier International Holdings Inc., Premier Parks of Colorado Inc., Premier Parks Holdings Inc., Premier Waterworld Sacramento Inc., Riverside Park Enterprises, Inc., SF HWP Management LLC, SFJ Management Inc., SFRCC Corp., Six Flags America LP, Six Flags America Property Corporation, Six Flags Great Adventure LLC, Six Flags Great Escape L.P., Six Flags Operations Inc., Six Flags Services, Inc., Six Flags Services of Illinois, Inc., Six Flags St. Louis LLC, Six Flags Theme Parks Inc., South Street Holdings LLC, and Stuart Amusement Company.

A-5

1.34    ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Reorganization Cases under sections 1107(a) and 1108 of the Bankruptcy Code.

1.35    ***Disbursing Agent*** means Reorganized SFI or any other entity in its capacity as a disbursing agent under sections 6.5 and 6.7 of the Plan.

1.36    ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.37    ***Disclosure Statement Order*** means the order of the Bankruptcy Court, in form and substance reasonably satisfactory to the Supermajority Participating Lenders (as defined in the Plan Support Agreement), approving, among other things, the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.38    ***Disputed*** means, with reference to any Claim or portion thereof, any Claim against any Debtor which such Debtor believes is unliquidated, disputed or contingent, and which has not become Allowed in accordance with the Plan.

1.39    ***Distribution Date*** means the earliest of the following dates that occurs after any Claim is Allowed: (a) the Effective Date, or as soon thereafter as is practicable, (b) a Subsequent Distribution Date, or (c) a Final Distribution Date.

1.40    ***Distribution Pro Rata Share*** means, with respect to any distribution of newly issued New Common Stock to the holders of Allowed SFO Unsecured Claims or Allowed SFI Unsecured Claims, the ratio (expressed as a percentage) that the Allowed amount of such Allowed SFO Unsecured Claim or Allowed SFI Unsecured Claim, as applicable, bears to the aggregate amount of all Allowed SFO Unsecured Claims or Allowed SFI Unsecured Claims, as applicable, on each Distribution Date following such Claim's allowance, which ratio shall be calculated as if no prior distributions had been made on account of such Claim; *provided, however*, that in any distribution made to the holder of an Allowed SFO Unsecured Claim or an Allowed SFI Unsecured Claim, as applicable, there shall be deducted from such distribution the amount of any distribution previously distributed to such holder on account of such Claim in any distribution made prior thereto.

1.41    ***Distribution Record Date*** means the date that is 20 days before the first day of the Confirmation Hearing, as originally scheduled by the Bankruptcy Court in the Disclosure Statement Order; provided that for purposes of determining the holders of SFTP Prepetition Credit Agreement Claims and SFO Prepetition Credit Agreement Claims the Distribution Record Date shall be the date that is 5 days before the Effective Date and the holders of record of such Prepetition Credit Agreement Claims shall be determined in accordance with the register maintained by the Prepetition Agent.

1.42    ***Effective Date*** means a Business Day selected by the Debtors on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the

conditions precedent to the effectiveness of the Plan specified in section VI.H.1 of the Plan shall have been satisfied or waived as provided in section 10.2.

1.43 **_Exculpated Parties_** means the Debtors, the Prepetition Agent, the Participating Lenders, and the members of the Creditors' Committee (but solely in their respective capacities as such).

1.44 **_Exit Facility_** means a new, secured revolving or multi-draw term credit facility in the amount of one-hundred-fifty million ($150,000,000) dollars obtained by the Debtors on the Effective Date and in connection with the Debtors' emergence from chapter 11, on terms and conditions no less favorable than those described in the Restructuring Agreement and otherwise reasonably acceptable to the Debtors, the Participating Lenders, and the Exit Facility lenders. The material terms of the Exit Facility shall be included in the Plan Supplement.

1.45 **_Final Distribution Date_** means a date after (a) the deadline for the Debtors or the Reorganized Debtors to interpose objections to Claims has passed, (b) all such objections have been resolved by signed agreement with the Debtors or Reorganized Debtors and/or Final Order, as may be applicable, and (c) all Claims that are Contingent Claims or Unliquidated Claims have been estimated but, in any event, the Final Distribution Date shall be no later than thirty (30) days thereafter, or such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtors, for cause shown.

1.46 **_Final Order_** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for _certiorari_ or move for a new trial, reargument or rehearing has expired and no appeal, petition for _certiorari_ or other proceedings for a new trial, reargument or rehearing shall then be pending or, (b) if an appeal, writ of _certiorari_, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, _certiorari_ shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for _certiorari_, or move for a new trial, reargument or rehearing shall have expired; _provided_, _however_, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.47 **_Funtime, Inc. Unsecured Claim_** means any Unsecured Claim against Funtime, Inc.

1.48 **_Impaired Claim_** means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.49 **_Indenture Trustee_** means the applicable indenture trustee for the 2010 Notes Indenture, the 2013 Notes Indenture, the 2014 Notes Indenture, the 2015 Notes Indenture, and the 2016 Notes Indenture.

1.50     ***Insurance Policy*** means any policy of insurance under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any Claim, together with any other contracts which pertain or relate to such policy (including, by way of example and not limitation, any insurance settlement agreements or coverage-in-place agreements).

1.51     ***Insured Claim*** means that portion of any Claim arising from an incident or occurrence that occurred prior to the Effective Date: (i) as to which any Insurer is obligated pursuant to the terms, conditions, limitations, and exclusions of its Insurance Policy, to pay any cost, expense, judgment, settlement, or contractual obligation with respect to the Debtors, or (ii) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Policy.

1.52     ***Insurer*** means any company or other entity that issued, or is responsible for, an Insurance Policy.

1.53     ***Intercompany Claim*** means any Claim against any Debtor or Non-Debtor Subsidiary held by another Debtor or Non-Debtor Subsidiary.

1.54     ***LIBOR*** means, with respect to an interest rate, the London Inter-Bank Offered Rate.

1.55     ***Lien*** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.56     ***Local Bankruptcy Rules*** means the Local Bankruptcy Rules for the District of Delaware, as amended from time to time.

1.57     ***Long-Term Incentive Plan*** means, effective as of the Effective Date, the incentive plan for management, selected employees and directors of Reorganized SFI, the material terms of which are set forth on Schedule 1.56.

1.58     ***New Common Stock*** means the shares of common stock of Reorganized SFI authorized to be issued pursuant to Section 5.2 of the Plan.

1.59     ***New Term Loan*** means the new secured term loans to be issued on the Effective Date in the initial aggregate amount of six-hundred million ($600,000,000) dollars, the material terms of which are set forth on Schedule 1.71.

1.60     ***Non-Debtor Subsidiary*** means any direct or indirect subsidiary of SFI that is not a Debtor.

1.61     ***Other Priority Claim*** means a Claim entitled to priority in payment as specified in section 507(a)(4), (5), (6) or (7) of the Bankruptcy Code.

1.62     ***Other Secured Claim*** means any Secured Claim other than a Claim in Class 4 or Class 8.

1.63    ***Participating Lender*** means any Prepetition Lender that is party to the Plan Support Agreement, including a Prepetition Lender that becomes a party to the Plan Support Agreement pursuant to section 4 thereof.

1.64    ***Partnership Parks*** means the Six Flags Over Georgia, Six Flags White Water Atlanta and the Six Flags Over Texas theme parks.

1.65    ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

1.66    ***Personal Injury Claim*** means any Claim against any of the Debtors, whether or not the subject of an existing lawsuit, arising from a personal injury or wrongful death allegation.  A Personal Injury Claim may also be an Insured Claim.

1.67    ***Petition Date*** means June 13, 2009, the date on which the Debtors commenced their Reorganization Cases.

1.68    ***PIERS*** means any preferred income equity redeemable shares issued by SFI and outstanding as of the Effective Date.

1.69    ***Plan*** means this Joint Plan of Reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.70    ***Plan Supplement*** means the supplement or supplements to the Plan containing certain documents relevant to the implementation of the Plan specified in section VI.K.6 of the Plan.

1.71    ***Plan Support Agreement*** means that certain restructuring agreement, dated as of June 13, 2009, by and among the Debtors, the Prepetition Agent, and the Participating Lenders.

1.72    ***Postconfirmation Board*** means the board of directors of Reorganized SFI which shall be disclosed in the Plan Supplement.

1.73    ***Postconfirmation Organizational Documents*** means the certificate of incorporation, bylaws, and other organizational documents for Reorganized SFI, the forms of which shall be reasonably satisfactory to the Supermajority Participating Lenders (as defined in the Plan Support Agreement) and shall be included in the Plan Supplement.

1.74    ***Preconfirmation Equity Interests*** means, collectively, the Preconfirmation SFI Equity Interests, the Preconfirmation SFO Equity Interests and the Preconfirmation Subsidiary Equity Interests in a Debtor, whether or not transferable, and all options, warrants or rights, contractual or otherwise, to acquire any such interests, all as of the Effective Date.

1.75    **_Preconfirmation SFI Equity Interests_** means any instrument evidencing an ownership interest in SFI, whether or not transferable, and all options, warrants or rights, contractual or otherwise, to acquire any such interests, all as of the Effective Date.

1.76    **_Preconfirmation SFO Equity Interest_** means any instrument evidencing an ownership interest in SFO, whether or not transferable, and all options, warrants or rights, contractual or otherwise, to acquire any such interests, all as of the Effective Date

1.77    **_Preconfirmation Subsidiary Equity Interests_** means any instrument evidencing an ownership interest in a Debtor other than SFI or SFO, whether or not transferable, and all options, warrants or rights, contractual or otherwise, to acquire any such interests, all as of the Effective Date. Each Preconfirmation Subsidiary Equity Interest shall be deemed Allowed under the Plan.

1.78    **_Prepetition Agent_** means JPMorgan Chase Bank, N.A. in its capacity as administrative agent under the Prepetition Credit Agreement, or any successor administrative agent thereunder.

1.79    **_Prepetition Credit Agreement_** means that certain Second Amended and Restated Credit Agreement, dated as of May 25, 2007, among: SFI; SFO; SFTP, as primary borrower; certain foreign subsidiaries of SFTP, as borrowers; the Prepetition Lenders; Credit Suisse, Cayman Islands Branch and Lehman Commercial Paper, Inc., as co-syndication agents; the Prepetition Agent; and J.P. Morgan Securities Inc., Credit Suisse Securities (USA) LLC and Lehman Brothers Inc., as joint lead arrangers and joint bookrunners, and all amendments, supplements, ancillary agreements (including but not limited to any and all notes, letters of credit, pledges, collateral agreements, intercreditor agreements, swaps and hedging agreements), side letters, financing statements, and other documents related thereto.

1.80    **_Prepetition Credit Agreement Claim_** means an SFTP Prepetition Credit Agreement Claim or an SFO Prepetition Credit Agreement Claim.

1.81    **_Prepetition Lender_** means the holder of a Prepetition Credit Agreement Claim.

1.82    **_Prepetition Period_** means the time period prior to the Petition Date.

1.83    **_Priority Tax Claim_** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.84    **_Ratable Proportion_** means, with reference to any distribution to the holder of an Allowed SFI Prepetition Credit Agreement Claim or an Allowed SFO Prepetition Credit Agreement Claim, as applicable, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

1.85    **_Reinstated_** or **_Reinstatement_** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Preconfirmation Equity Interest entitles the

holder of such Claim or Preconfirmation Equity Interest, or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Preconfirmation Equity Interest to demand or receive accelerated payment of such Claim or Preconfirmation Equity Interest after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim or Preconfirmation Equity Interest as such maturity existed before such default; (iii) compensating the holder of such Claim or Preconfirmation Equity Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or applicable law; (iv) if such Claim or such Preconfirmation Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the holder of such Claim or such Preconfirmation Equity Interest (other than the Debtor or an insider of the Debtor) for any actual pecuniary loss incurred by such holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Preconfirmation Equity Interest entitles the holder of such Claim or Preconfirmation Equity Interest.

1.86  ***Reorganization Cases*** means the jointly administered cases commenced by the Debtors under chapter 11 of the Bankruptcy Code.

1.87  ***Reorganized Debtors*** means each of the Debtors on and after the Effective Date.

1.88  ***Reorganized SFI*** means SFI, on and after the Effective Date.

1.89  ***Reorganized SFO*** means SFO, on and after the Effective Date.

1.90  ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Reorganization Cases, as the same may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rules 1007 and 1009.

1.91  ***Secured Claim*** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.92  ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein and including any related Secured Claim for penalties).

1.93  ***Securities Act*** means the Securities Act of 1933, as amended.

1.94  ***Security*** means any instrument that qualifies as a "security" under section 2(a)(1) of the Securities Act.

RLF1-3426491-1

1.95 **SFI** means Six Flags, Inc., a Delaware corporation.

1.96 **SFI TW Guaranty Claim** means any Claim arising under the guaranty by SFI of obligations owed to Time Warner and certain of its affiliates under the TW Loan, up to a maximum aggregate amount of $10 million when taken together with the SFO TW Guaranty Claim and SFTP TW Guaranty Claim.

1.97 **SFI TW Indemnity Claim** means any Claim arising under the guaranty by SFI of obligations owed to Time Warner and certain of its affiliates under the Subordinated Indemnity Agreement.

1.98 **SFI Unsecured Claim** means any Unsecured Claim against SFI. SFI Unsecured Claims include, without limitation, Claims arising under the 2010 Notes Indenture, 2013 Notes Indenture, 2014 Notes Indenture, 2015 Notes Indenture, and SFI's guaranty of the 2016 Notes Indenture.

1.99 **SFO** means Six Flags Operations, Inc., a Delaware corporation.

1.100 **SFO Prepetition Credit Agreement Claim** means Claims held by the Prepetition Lenders and/or the Prepetition Agent, and all other Claims against SFO arising under the Prepetition Credit Agreement.

1.101 **SFO TW Guaranty Claim** means Claims arising under the guaranty by SFO of obligations owed to Time Warner and certain of its affiliates under the TW Loan, up to a maximum aggregate amount of $10 million when taken together with the SFI TW Guaranty Claim and SFTP TW Guaranty Claim.

1.102 **SFO TW Indemnity Claim** means Claims arising under the guaranty by SFO of obligations owed to Time Warner and certain of its affiliates under the Subordinated Indemnity Agreement.

1.103 **SFO Unsecured Claim** means any Unsecured Claim against SFO. SFO Unsecured Claims include, without limitation, Claims arising under the 2016 Notes Indenture.

1.104 **SFTP** means Six Flags Theme Parks, Inc. a Delaware corporation.

1.105 **SFTP Prepetition Credit Agreement Claim** means any Claim held by the Prepetition Lenders and/or the Prepetition Agent, and all other Claims against SFTP or SFTP's subsidiaries arising under the Prepetition Credit Agreement. Class 4 SFTP Prepetition Credit Agreement Claims are Allowed in the aggregate amount of $1.128 billion plus accrued and unpaid interest at the default rate.

1.106 **SFTP and SFTP Subsidiary Unsecured Claim** means Unsecured Claims against SFTP, or SFTP's subsidiaries (other than Funtime, Inc.), other than an SFTP TW Guaranty Claim, an SFTP TW Indemnity Claim or a Funtime, Inc. Unsecured Claim; *provided that*, an Allowed Subsidiary Unsecured Claim shall not include any claim that is disallowed or released, whether by operation of law, Final Order, written agreement, the provisions of this Plan or otherwise.

A-12

1.107 **SFTP TW Guaranty Claim** means any Claim arising under the guaranty by SFTP of obligations owed to Time Warner and certain of its affiliates under the TW Loan, up to a maximum aggregate amount of $10 million when taken together with the SFO TW Guaranty Claim and SFI TW Guaranty Claim.

1.108 **SFTP TW Indemnity Claim** means any Claim arising under the guaranty by SFTP and SFTP's subsidiaries of obligations owed to Time Warner and certain of its affiliates under the Subordinated Indemnity Agreement.

1.109 **Subordinated Indemnity Agreement** means that certain Subordinated Indemnity Agreement (as amended, modified or otherwise supplemented from time to time) entered into by and among the SFI, Time Warner and an affiliate of Time Warner, dated as of April 1, 1998, the obligations of which are guaranteed by substantially all of the SFI's domestic subsidiaries.

1.110 **Subordinated Securities Claim** means any Claim arising from rescission of a purchase or sale of a Security (including any Preconfirmation Equity Interest) of the Debtors, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim, as set forth in section 510(b) of the Bankruptcy Code.

1.111 **Subsequent Distribution Date** means the twentieth (20th) day after the end of each calendar quarter after the occurrence of the Effective Date.

1.112 **Tax Code** means the Internal Revenue Code of 1986, as amended.

1.113 **Time Warner** means Time Warner Inc. and its subsidiaries.

1.114 **TW** means TW-SF LLC, a Delaware limited liability company.

1.115 **TW Guaranty** means that certain Guaranty Agreement, dated as of May 15, 2009, made by SFI, SFO and SFTP in favor of TW.

1.116 **TW Loan** means that certain loan in the principal amount of $52,507,000, dated as of May 15, 2009, made by TW-SF LLC to the Acquisition Parties to enable the Acquisition Parties to fund 2009 "put" obligations in respect of the Partnership Parks.

1.117 **TW Guaranty Claim** means any Claim that is an SFTP TW Guaranty Claim, SFO TW Guaranty Claim or an SFI TW Guaranty Claim.

1.118 **TW Indemnity Claim** means any Claim that is an SFTP TW Indemnity Claim, SFO TW Indemnity Claim or an SFI TW Indemnity Claim.

1.119 **Unimpaired** means, with respect to a Claim or Preconfirmation Equity Interest, that such Claim or Preconfirmation Equity Interest is not Impaired as a result of being either (a) Reinstated or (b) paid in full in Cash under this Plan.

1.120  *Unliquidated Claim* means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

1.121  *Unsecured Claim* means any Claim against the Debtors other than an Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Secured Tax Claim, Other Secured Claim, Prepetition Credit Agreement Claim, TW Guaranty Claim, TW Indemnity Claim, Subordinated Securities Claim or Intercompany Claim, but shall not include any claim that is disallowed or released, whether by operation of law, Final Order, written agreement, the provisions of this Plan or otherwise.

1.122  *Unsecured Notes* means, collectively, the 2010 Notes, the 2013 Notes, the 2014 Notes, the 2015 Notes, and the 2016 Notes.

1.123  *Unsecured Notes Indentures* means, collectively, the 2010 Notes Indenture, the 2013 Notes Indenture, the 2014 Notes Indenture, the 2015 Notes Indenture, and the 2016 Notes Indenture.

1.124  *U.S. Trustee* means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in Region 3.

**B.**  Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective section in, article of or schedule or exhibit, to the Plan or the Plan Supplement, as the same may be amended, waived or modified from time to time. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**
PROVISIONS FOR PAYMENT OF ADMINISTRATIVE
EXPENSES AND PRIORITY TAX CLAIMS

2.1  *Administrative Expense Claims*.

Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors in Possession

A-14

shall be paid in full and performed by the Debtors in Possession or Reorganized Debtors, as the case may be, in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions; *provided, further*, that if any such ordinary course expense is not billed or a request for payment is not made within ninety (90) days after the Effective Date, claims for payment of such an ordinary course expense shall be barred. The reasonable, documented and unpaid fees and expenses of Avenue, including attorneys' fees, shall be Allowed Administrative Expense Claims and shall be paid without the need for further filing of a proof of Claim and without the need for further Bankruptcy Court approval.

### 2.2 *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or the Reorganized Debtors, (a) on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to such Allowed Priority Tax Claim or, (b) commencing on the Effective Date, or as soon thereafter as is practicable, and continuing over a period not exceeding five (5) years from and after the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest for the period after the Effective Date at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Plan is confirmed, subject to the sole option of the Debtors or Reorganized Debtors to prepay the entire amount of the Allowed Priority Tax Claim. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

### 2.3 *Professional Compensation and Reimbursement Claims*.

All entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is forty-five (45) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND
## PRECONFIRMATION EQUITY INTERESTS, IMPAIRMENT AND VOTING

The following table (i) designates the classes of Claims against and Preconfirmation Equity Interests in the Debtors, (ii) specifies the classes of Claims and Preconfirmation Equity Interests that are Impaired by the Plan and therefore are deemed to reject the Plan or are entitled to vote to accept or reject the Plan in accordance with section 1126 of the

Bankruptcy Code, and (iii) specifies the classes of Claims and Preconfirmation Equity Interests that are Unimpaired by the Plan and therefore are deemed to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | SFTP Prepetition Credit Agreement Claims | Impaired | Yes |
| Class 5 | SFTP TW Guaranty Claims | Impaired | Yes |
| Class 6 | SFTP TW Indemnity Claims | Impaired | Yes |
| Class 7 | SFTP and SFTP Subsidiary Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 8 | SFO Prepetition Credit Agreement Claims | Impaired | Yes |
| Class 9 | SFO TW Guaranty Claims | Impaired | Yes |
| Class 10 | SFO TW Indemnity Claims | Impaired | Yes |
| Class 11 | SFO Unsecured Claims | Impaired | Yes |
| Class 12 | SFI TW Guaranty Claims | Impaired | Yes |
| Class 13 | SFI TW Indemnity Claims | Impaired | Yes |
| Class 14 | SFI Unsecured Claims | Impaired | Yes |
| Class 15 | Funtime, Inc. Unsecured Claims | Impaired | No (deemed to reject) |
| Class 16 | Subordinated Securities Claims | Impaired | No (deemed to reject) |
| Class 17 | Preconfirmation Subsidiary Equity Interests | Unimpaired | No (deemed to accept) |
| Class 18 | Preconfirmation SFO Equity Interests | Impaired | No (deemed to reject) |
| Class 19 | Preconfirmation SFI Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE IV
## PROVISIONS FOR TREATMENT OF CLAIMS AND
## PRECONFIRMATION EQUITY INTERESTS

4.1 *Other Priority Claims (Class 1)*.

(a) <u>Impairment and Voting.</u> Class 1 is Unimpaired by the Plan. Each holder of an Allowed Other Priority Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Allowed Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

A-16

4.2     ***Secured Tax Claims (Class 2)***.

(a)     <u>Impairment and Voting.</u>  Class 2 is Unimpaired by the Plan.  Each holder of an Allowed Secured Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  Except to the extent that a holder of an Allowed Secured Tax Claim agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, at the sole option of the Debtors or the Reorganized Debtors, (i) on the Effective Date, or as soon thereafter as is practicable, Cash in an amount equal to such Allowed Secured Tax Claim or, (ii) commencing on the Effective Date, or as soon thereafter as is practicable, and continuing over a period not exceeding five (5) years from and after the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest for the period after the Effective Date at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Plan is confirmed, subject to the sole option of the Debtors or Reorganized Debtors to prepay the entire amount of the Allowed Secured Tax Claim.

4.3     ***Other Secured Claims (Class 3)***.

(a)     <u>Impairment and Voting.</u>  Class 3 is Unimpaired by the Plan.  Each holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, at the sole option of the Debtors or the Reorganized Debtors, (i) on the Effective Date or as soon thereafter as is practicable, each Allowed Other Secured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) each holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Allowed Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable or (iii) each holder of an Allowed Other Secured Claim shall receive the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, in full and complete satisfaction of such Allowed Other Secured Claim on the later of the Effective Date and the date such Allowed Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable.

4.4     ***SFTP Prepetition Credit Agreement Claims (Class 4)***.

(a)     <u>Impairment and Voting.</u>  Class 4 is Impaired by the Plan. Each holder of an SFTP Prepetition Credit Agreement Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Distribution Date, each holder of an Allowed SFTP Prepetition Credit Agreement Claim shall receive its Ratable Proportion of the New Term Loan and ninety-two percent (92%) of newly issued New Common Stock, subject to dilution by

the Long-Term Incentive Plan, in full and complete satisfaction of such SFTP Prepetition Credit Agreement Claim. To the extent that any letters of credit issued pursuant to the Prepetition Credit Agreement are outstanding on the Effective Date, such letters of credit shall be cancelled and replaced with new letters of credit to be issued pursuant to the Exit Facility or shall be fully cash collateralized. Upon making the distributions provided above on account of Allowed SFTP Prepetition Credit Agreement Claims, all Liens and security interests granted to secure such obligations, whether prior to or during the Reorganization Cases, shall be terminated and of no further force or effect.

4.5 ***SFTP TW Guaranty Claims (Class 5)***.

(a) <u>Impairment and Voting</u>. Class 5 is Impaired by the Plan. Each holder of an SFTP TW Guaranty Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> On the Effective Date, SFTP's guaranty of the obligations under the TW Loan shall be discharged and TW shall receive a new guaranty of the obligations under the TW Loan by Reorganized SFTP.

4.6 ***SFTP TW Indemnity Claims (Class 6)***.

(a) <u>Impairment and Voting</u>. Class 6 is Impaired by the Plan. Each holder of an SFTP TW Indemnity Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> On the Effective Date, SFTP's guaranty of the obligations under the Subordinated Indemnity Agreement shall be discharged and exchanged for a new guaranty of the obligations under the Subordinated Indemnity Agreement by Reorganized SFTP.

4.7 ***SFTP and SFTP Subsidiary Unsecured Claims (Class 7)***.

(a) <u>Impairment and Voting.</u> Class 7 is Unimpaired by the Plan. Each holder of an Allowed Subsidiary Unsecured Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> Except to the extent that a holder of an Allowed Subsidiary Unsecured Claim agrees to a different treatment, at the sole option of the Reorganized Debtors (i) each Allowed Subsidiary Unsecured Claim shall be Reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) each holder of an Allowed Subsidiary Unsecured Claim shall be paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4.8 ***SFO Prepetition Credit Agreement Claims (Class 8)***.

(a) <u>Impairment and Voting</u>. Class 8 is Impaired by the Plan. Each holder of an SFO Prepetition Credit Agreement Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, SFO's guaranty of the obligations under the Prepetition Credit Agreement shall be discharged and exchanged for a new guaranty of the obligations under the New Term Loan by Reorganized SFO. Upon issuing the new guaranty provided above on account of Allowed SFO Prepetition Credit Agreement Claims, all Liens and security interests granted to secure such obligations, whether prior to or during the Reorganization Cases, shall be terminated and of no further force or effect.

### 4.9    *SFO TW Guaranty Claims (Class 9)*.

(a)     <u>Impairment and Voting.</u>  Class 9 is Impaired by the Plan. Each holder of a SFO TW Guaranty Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, SFO's guaranty of the obligations under the TW Loan shall be discharged and TW shall receive a new guaranty of the obligations under the TW Loan by Reorganized SFO.

### 4.10    *SFO TW Indemnity Claims (Class 10)*.

(a)     <u>Impairment and Voting.</u>  Class 10 is Impaired by the Plan. Each holder of a SFO TW Indemnity Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, SFO's guaranty of the obligations under the Subordinated Indemnity Agreement shall be discharged and exchanged for a new guaranty of the obligations under the Subordinated Indemnity Agreement by Reorganized SFO.

### 4.11    *SFO Unsecured Claims (Class 11)*.

<u>Impairment and Voting.</u>  Class 11 is Impaired by the Plan. Each holder of an SFO Unsecured Claim is entitled to vote to accept or reject the Plan.

<u>Distributions.</u>  On the Distribution Date, each holder of an Allowed SFO Unsecured Claim shall receive its Distribution Pro Rata Share of seven percent (7%) of newly issued New Common Stock, subject to dilution by the Long-Term Incentive Plan, in full and complete satisfaction of such SFO Unsecured Claim.

### 4.12    *SFI TW Guaranty Claims (Class 12)*.

(a)     <u>Impairment and Voting.</u>  Class 12 is Impaired by the Plan. Each holder of a SFI TW Guaranty Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions.</u>  On the Effective Date, SFI's guaranty of the obligations under the TW Loan shall be discharged and TW shall receive a new guaranty of the obligations under the TW Loan by Reorganized SFI.

### 4.13    *SFI TW Indemnity Claims (Class 13)*.

(a) <u>Impairment and Voting.</u> Class 13 is Impaired by the Plan. Each holder of a SFI TW Indemnity Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> On the Effective Date, SFI's guaranty of the obligations under the Subordinated Indemnity Agreement shall be discharged and exchanged for a new guaranty of the obligations under the Subordinated Indemnity Agreement by Reorganized SFI.

### 4.14 *SFI Unsecured Claims (Class 14)*.

(a) <u>Impairment and Voting.</u> Class 14 is Impaired by the Plan. Each holder of a SFI Unsecured Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> On the Distribution Date, each holder of an Allowed SFI Unsecured Claim shall receive its Distribution Pro Rata Share of one percent (1%) of newly issued New Common Stock, subject to dilution by the Long-Term Incentive Plan, in full and complete satisfaction of such SFI Unsecured Claim.

### 4.15 *Funtime, Inc. Unsecured Claims (Class 15)*.

(a) <u>Impairment and Voting.</u> Class 15 is Impaired by the Plan. Each holder of Funtime, Inc. Unsecured Claims is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> Each holder of a Funtime, Inc. Unsecured Claim shall not receive or retain any interest or property under the Plan on account of such Funtime, Inc. Unsecured Claim.

### 4.16 *Subordinated Securities Claims (Class 16)*.

(a) <u>Impairment and Voting.</u> Class 16 is Impaired by the Plan. Each holder of a Subordinated Securities Claim is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions.</u> Each holder of an Allowed Subordinated Securities Claim will not receive or retain any interest or property under the Plan on account of such Allowed Subordinated Securities Claim. The treatment of Subordinated Securities Claims under the Plan is in accordance with and gives effect to the provisions of section 510(b) of the Bankruptcy Code.

### 4.17 *Preconfirmation Subsidiary Equity Interests (Class 17)*.

(a) <u>Impairment and Voting.</u> Class 17 is Unimpaired by the Plan. Each holder of a Preconfirmation Subsidiary Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)     Distributions.  On the Effective Date, Preconfirmation Subsidiary Equity Interests shall be Reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

4.18     *Preconfirmation SFO Equity Interests (Class 18)*.

(a)     Impairment and Voting.  Class 18 is Impaired by the Plan.  Each holder of a Preconfirmation SFO Equity Interest is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b)     Distributions.  On the Effective Date, the Preconfirmation SFO Equity Interests shall be cancelled and the holders of Preconfirmation SFO Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Preconfirmation SFO Equity Interests under the Plan.

4.19     *Preconfirmation SFI Equity Interests (Class 19)*.

(a)     Impairment and Voting.  Class 19 is Impaired by the Plan.  Each holder of a Preconfirmation SFI Equity Interest is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b)     Distributions.  On the Effective Date, the Preconfirmation SFI Equity Interests shall be cancelled and the holders of Preconfirmation SFI Equity Interests shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Preconfirmation SFI Equity Interests under the Plan.

4.20     *Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims*.

Distributions under the Plan to each holder of an Allowed Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is within the Debtors' self-insured retention.  Amounts in excess of the applicable self-insured retention amount shall be recoverable only from the available Insurer and the Debtors shall be discharged to the extent of any such excess.  Nothing in this Section 4.17 shall constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtors' Insurers.

4.21     *Special Provision Regarding Unimpaired Claims*.

Except as otherwise explicitly provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any rights, counterclaims or defenses the Debtors or the Reorganized Debtors may have, whether at law or in equity, with respect to any Unimpaired Claim.

# ARTICLE V
# MEANS OF IMPLEMENTATION

5.1     *Intercompany Claims*.

Notwithstanding anything to the contrary herein, Intercompany Claims, at the election of the Debtor or Reorganized Debtor holding such Claim, and with the consent of the Participating Lenders, shall be (i) adjusted, released, waived and/or discharged as of the Effective Date, (ii) contributed to the capital of the obligor, or (iii) Reinstated and left Unimpaired.  Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtors, the Debtors in Possession, or the Reorganized Debtors.

5.2     *Restructuring and Other Transactions*.

(a)     Restructuring Transactions.  On the Effective Date, the following transactions ("Restructuring Transactions") shall be effectuated in the order set forth below:

(i)     Simultaneously, (A) all of the Preconfirmation Equity Interests in SFI and SFO will be cancelled, and (B) in consideration for SFI making available the New Common Stock to satisfy certain of SFO's obligations to its creditors and certain of SFTP's obligations to its creditors, all of the new equity interests in Reorganized SFO will be issued to Reorganized SFI and all of the new equity interests in Reorganized SFTP will be issued to Reorganized SFO on behalf of the holders of Allowed SFO Unsecured Claims, SFTP Prepetition Credit Agreement Claims and Allowed SFI Unsecured Claims, respectively, in full satisfaction of their Claims (and in proportion to the relative distributions to be made on account of their Claims); and

(ii)     thereafter, Reorganized SFI will, on behalf of SFO and SFTP, contribute all of the New Common Stock in Reorganized SFI to the applicable Disbursing Agent for distribution on behalf of SFO and SFTP to the holders of SFTP Prepetition Credit Agreement Claims, Allowed SFO Unsecured Claims, and Allowed SFI Unsecured Claims, respectively, and in full and complete satisfaction of the Reorganized Debtors' obligations under Sections 4.4, 4.11 and 4.14 of the Plan.

(b)     Cancellation of Existing Securities and Agreements.  Except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (iii) for purposes of evidencing a right to distributions under the Plan, or (iv) with respect to any Claim that is Reinstated and rendered Unimpaired under the Plan or (v) for purposes of preserving any indemnification rights in favor of the Prepetition Agent or the Prepetition Lenders, pursuant to, arising out of, or existing under the Prepetition Credit Agreement, on the Effective Date the Prepetition Credit Agreement, the Unsecured Notes Indentures and all Unsecured Notes issued thereunder, all Preconfirmation SFI Equity Interests, Preconfirmation SFO Equity Interests and other instruments evidencing any Claims against the Debtors, Preconfirmation SFO Equity Interests or Preconfirmation SFI Equity Interests shall be deemed automatically cancelled without further act or action under any

A-22

applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.

(c)     Surrender of Existing Securities.  Each holder of the Unsecured Notes shall surrender such note(s) to the Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, the Depository Trust Company, the Disbursing Agent shall seek the cooperation of the Depository Trust Company to provide appropriate instructions to the Indenture Trustee.  No distributions under the Plan shall be made for or on behalf of any such holder unless and until such note is received by the Indenture Trustee or appropriate instructions from the Depository Trust Company shall be received by the Indenture Trustee, or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Indenture Trustee, which satisfaction may require such holder to (i) submit a lost instrument affidavit and an indemnity bond and (ii) hold the Debtors, Reorganized Debtors, Disbursing Agent and Indenture Trustee harmless in respect of such note and any distributions made in respect thereof.  Upon compliance with this section by a holder of any Unsecured Note, such holder shall, for all purposes under the Plan, be deemed to have surrendered such note.  Any holder of Unsecured Notes that fails to surrender such note(s) or satisfactorily explain its nonavailability to the Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors and the Reorganized Debtors (or their property) or the Indenture Trustee in respect of such Claim and shall not participate in any distribution under the Plan.

(d)     Issuance of New Common Stock.  The issuance by Reorganized SFI of the New Common Stock on and after the Effective Date is hereby authorized without the need for any further corporate action and without any further action by holders of Claims or Preconfirmation Equity Interests.  As provided in the Postconfirmation Organizational Documents, which are incorporated herein by reference, New Common Stock may be issued in more than one series, shall be identical in all respects, and shall have equal rights and privileges. In compliance with 1123(a)(6) of the Bankruptcy Code, the Postconfirmation Organizational Documents shall provide that Reorganized SFI shall not issue nonvoting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code.

(e)     Incurrence of New Indebtedness.  The Reorganized Debtors' entry into the New Term Loans and the Exit Facility, and the incurrence of indebtedness thereunder on the Effective Date, is hereby authorized without the need for any further corporate action, except as set forth in the New Term Loans and the Exit Facility, as the case may be, and without any further action by holders of Claims or equity interests.

5.3     *Exemption from Securities Laws*.

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Common Stock and any other securities pursuant to this Plan and any subsequent sales, resales, transfers, or other distributions of such New Common Stock or other securities shall be exempt from registration under the Securities Act, any other federal or state securities law registration requirements, and all rules and regulations promulgated thereunder.

5.4     *Registration Rights Agreement and Securities Exchange Listing*.

On the Effective Date, Reorganized SFI expects to enter into a registration rights agreement (the "Registration Rights Agreement") with each holder of greater than 5% of the New Common Stock. Pursuant to the Registration Rights Agreement, holders collectively owning at least 20% of the outstanding shares of New Common Stock party thereto would have the right to require Reorganized SFI to effect registered, underwritten secondary offerings of such holders' New Common Stock on terms and conditions to be negotiated and reflected in such Registration Rights Agreement, with the number of demand registration rights to be determined. The holders of New Common Stock entitled to demand such registrations shall be entitled to request an aggregate of three such registrations (or such other approaches that the new Board adopts). A form of the Registration Rights Agreement will be included in the Plan Supplement.

In addition, for certain purposes, including requiring Reorganized SFI to continue as a public reporting company under the Securities Exchange Act, Reorganized SFI expects to file with the SEC a registration statement on Form 10 under the Securities Exchange Act registering the New Common Stock under the Securities Exchange Act. Following the effectiveness of such registration statement, Reorganized SFI expects that it will seek to obtain a listing for the New Common Stock on a national securities exchange to be determined at a later date.

### 5.5    *Continued Corporate Existence*.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except with respect to the Postconfirmation Organizational Documents (or other formation documents) that are amended by the Plan, the Plan Supplement or otherwise, and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval. Notwithstanding the foregoing, on or as of the Effective Date, or as soon as practicable thereafter, and without the need for any further action, the Reorganized Debtors may: (i) cause any or all of the Reorganized Debtors to be merged into one or more of the Reorganized Debtors, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors, or (iii) engage in any other transaction in furtherance of the Plan.

### ARTICLE VI
### PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

### 6.1    *Voting of Claims*.

Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to ARTICLE III and ARTICLE IV of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes

to accept or reject the Plan, or any other order of the Bankruptcy Court.

### 6.2 *Nonconsensual Confirmation*.

If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with section VI.K.4 of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to Impaired Classes of claims that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

### 6.3 *Distributions on Allowed Unsecured Claims*.

Distributions with respect to holders of Allowed Unsecured Claims shall only be made on each Distribution Date. All Allowed Unsecured Claims held by a single creditor against a single Debtor shall be aggregated and treated as a single Claim against such Debtor. At the written request of the Reorganized Debtors or the Disbursing Agent, any creditor holding multiple Allowed Unsecured Claims shall provide to the Reorganized Debtors or the Disbursing Agent, as the case may be, a single address to which any distributions shall be sent.

### 6.4 *Date of Distributions*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.5 *Disbursing Agent*.

All distributions under the Plan shall be made by Reorganized SFI as Disbursing Agent or such other entity designated by Reorganized SFI as a Disbursing Agent. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of their duties.

### 6.6 *Expenses of the Disbursing Agent*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including, without limitation, taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

### 6.7 *Rights and Powers of Disbursing Agent*.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities and (d) exercise such other powers as may be vested in the Disbursing

RLF1-3426491-1

Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. In furtherance of the rights and powers of the Disbursing Agent, the Disbursing Agent shall have no duty or obligation to make distributions to any holder of an Allowed Claim unless and until such holder executes and delivers, in a form acceptable to the Disbursing Agent, any documents applicable to such distributions.

6.8    ***Delivery of Distributions***.

(a)    <u>Distributions to Last Known Address</u>. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim or Allowed Administrative Expense Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or its agents, as applicable, unless the Debtors or Reorganized Debtors have been notified in writing of a change of address by the filing of a proof of Claim by such holder that contains an address for such holder different than the address of such holder as set forth on the Schedules. Nothing in this Plan shall require the Reorganized Debtors to attempt to locate any holder of an Allowed Claim.

(b)    <u>Distributions to Indenture Trustee</u>. The Indenture Trustee shall be the Disbursing Agent for the Unsecured Notes Claims. Accordingly, distributions for the benefit of the holders of such Claims shall be made to the Indenture Trustee under the applicable Unsecured Notes Indenture. The Indenture Trustees shall, in turn, promptly administer the distribution to the holders of such Allowed Claims in accordance with the Plan and the applicable Unsecured Notes Indenture. The distribution of New Common Stock to the respective Indenture Trustees shall be deemed a distribution to the respective holder of an Allowed Claim. Upon delivery of the distributions required under the Plan to the Indenture Trustee, the Reorganized Debtors shall be released of all liability with respect to the delivery of such distributions.

(c)    <u>Distributions to Prepetition Agent</u>. The Prepetition Agent shall be the Disbursing Agent for the holders of Class 4 SFTP Prepetition Credit Agreement Claims and Class 8 SFO Prepetition Credit Agreement Claims. Accordingly, distributions for the benefit of the holders of Class 4 and Class 8 Claims shall be made to the Prepetition Agent. The Prepetition Agent shall, in turn, promptly administer the distribution to the holders of Allowed Claims in Class 4 and Class 8, in accordance with the Plan and the Prepetition Credit Agreement. The distribution of New Common Stock to the Prepetition Agent, and the issuance, execution and delivery of New Term Loan documents, shall be deemed a distribution to the respective holders of Allowed Class 4 and Class 8 Claims. Upon delivery of the distributions required under the Plan as provided in this paragraph, the Reorganized Debtors shall be released of all liability with respect to the delivery of such distributions.

6.9    ***Unclaimed Distributions***.

All distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Reorganized Debtors and any entitlement of any holder of any Claims to such distributions shall be extinguished and forever barred.

6.10    *Distribution Record Date*.

The Claims register shall be closed on the Distribution Record Date, and any subsequent transfer of any Claim shall be prohibited. The Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of any such Claims occurring after the close of business on such date.

6.11    *Manner of Payment*.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. All distributions of Cash to the creditors of each of the Debtors under the Plan shall be made by, or on behalf of, the applicable Debtor.

6.12    *No Fractional Distributions*.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number, with no further payment therefor. The total number of authorized shares of New Common Stock to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

6.13    *Limitation on Cash Distributions*.

No payment of Cash less than one-hundred dollars ($100) shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Reorganized Debtors.

6.14    *Setoffs and Recoupment*.

The Debtors may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim they may have against such claimant.

6.15    *Allocation of Plan Distributions Between Principal and Interest*.

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## ARTICLE VII
## PROCEDURES FOR TREATING DISPUTED
## CLAIMS UNDER PLAN OF REORGANIZATION

7.1     ***Objections***.

As of the Effective Date, objections to, and requests for estimation of, Administrative Expense Claims and Claims against the Debtors may be interposed and prosecuted only by the Reorganized Debtors.  Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the latest of: (i) one hundred twenty (120) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court (the "Objection Deadline"); *provided*, *however*, that with respect to Claims that, as of the Objection Deadline, are subject to a pending claim objection, contested matter, or adversary proceeding (an "Initial Objection") wherein the Reorganized Debtors' objection to such claim is ultimately denied, the Objection Deadline shall be extended to the latter of: (a) sixty (60) days from the date on which the Bankruptcy Court enters an order denying such Initial Objection or (b) sixty (60) days from the date on which any appellate court enters a Final Order reversing or vacating an order of the Bankruptcy Court granting such Initial Objection; *provided, further*, that with respect to Claims that (i) are filed (whether as an amended Claim, new Claim, or otherwise) after the Effective Date, and (ii) that are not otherwise subject to adjustment, expunction or disallowance pursuant to sections VI.E.2, VI.E.8, VI.E.9, VI.E.11, and VI.E.12 of the Plan, the Objection Deadline shall be one hundred twenty (120) days after the date on which such Claim was filed.  Nothing herein shall affect the Debtors' or the Reorganized Debtors' ability to amend the Schedules in accordance with the Bankruptcy Code and the Bankruptcy Rules.

7.2     ***Adjustment to Certain Claims Without a Filed Objection***.

Any Claim that has been settled, paid and satisfied, or amended and superseded, may be adjusted or expunged on the Claims register by the Reorganized Debtors without a claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, all Claims filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order or approval of the Bankruptcy Court.

7.3     ***No Distributions Pending Allowance***.

Notwithstanding any other provision hereof, if any portion of a Claim or Administrative Expense Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim or Administrative Expense Claim unless and until such Disputed Claim or Disputed Administrative Expense Claim becomes Allowed.

7.4     ***Distributions After Allowance***.

To the extent that a Disputed Claim or Disputed Administrative Expense Claim ultimately becomes an Allowed Claim or Allowed Administrative Expense Claim, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Administrative Expense

Claim in accordance with the provisions of the Plan.

### 7.5  *Resolution of Administrative Expense Claims and Claims.*

On and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Administrative Expense Claims and Claims against the Debtors and to compromise, settle or otherwise resolve any Disputed Administrative Expense Claims and Disputed Claims against the Debtors without approval of the Bankruptcy Court.

### 7.6  *Estimation of Claims.*

The Debtors or the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 7.7  *Interest.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon, except as may be required by Final Order, or applicable bankruptcy and non-bankruptcy law.

### 7.8  *Disallowance of Certain Claims.*

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by a Person that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and such Persons may not receive any distributions on account of their Claims until such time as such Causes of Action against such Persons have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Person have been turned over or paid to the Reorganized Debtors.

### 7.9  *Indenture Trustee as Claim Holder.*

Consistent with Bankruptcy Rule 3003(c), the Reorganized Debtors shall recognize proofs of Claim timely filed by any Indenture Trustee in respect of any Claims under the Unsecured Notes Indentures. Accordingly, any Claim arising under the Unsecured Notes Indentures, proof of which is filed by the registered or beneficial holder of Unsecured Notes, shall be disallowed as duplicative of the Claim of the applicable Indenture Trustee, without any further action of the Bankruptcy Court.

### 7.10 *Offer of Judgment.*

The Reorganized Debtors are authorized to serve upon a holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the holder of a Claim must pay the costs incurred by the Reorganized Debtors after the making of such offer, the Reorganized Debtors are entitled to setoff such amounts against the amount of any distribution to be paid to such holder without any further notice to or action, order, or approval of the Bankruptcy Court.

### 7.11 *Amendments to Claims.*

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Claim filed without prior authorization shall be deemed disallowed in full and expunged without any further action.

### 7.12 *Claims Paid and Payable by Third Parties.*

A Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged from the Claims register without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### 7.13 *Personal Injury Claims.*

All Personal Injury Claims are Disputed Claims. No distributions shall be made on account of any Personal Injury Claim unless and until such Claim is liquidated and becomes and Allowed Claim. Any Personal Injury Claim which has not been liquidated prior to the Effective Date and as to which a proof of claim was timely filed in the Reorganization Cases, shall be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction.

RLF1-3426491-1

# ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1    *Assumption or Rejection of Executory Contracts and Unexpired Leases.*

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any person or entity shall be deemed assumed by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (1) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (2) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or (3) that is specifically designated as a contract or lease to be rejected on Schedules 8.1(A) (executory contracts) or 8.1(B) (unexpired leases), which schedules shall be contained in the Plan Supplement; *provided*, *however*, that the Debtors reserve the right, on or prior to the Effective Date, to amend Schedules 8.1(A) and 8.1(B) to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, respectively, either assumed or rejected as of the Effective Date.  The Debtors shall provide notice of any amendments to Schedules 8.1(A) and/or 8.1(B) to the parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on Schedules 8.1(A) or 8.1(B) shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

8.2    *Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.*

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to section 8.1 of the Plan, and of the rejection of the executory contracts and unexpired leases rejected pursuant to section 8.1 of the Plan.

8.3    *Inclusiveness.*

Unless otherwise specified on Schedules 8.1(A) or 8.1(B) of the Plan Supplement, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedules 8.1(A) or 8.1(B).

8.4    *Cure of Defaults.*

Except to the extent that a different treatment has been agreed to by the parties, within thirty (30) days after the Effective Date, the Reorganized Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a

Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. Notwithstanding section 8.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or unexpired leases that are the subject of a dispute concerning amounts necessary to cure any defaults, in which event the Reorganized Debtors shall make their election to reject such executory contracts and unexpired leases within thirty (30) days of the entry of a Final Order determining the amount required to be cured.

### 8.5 *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.*

Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the attorneys for the Debtors or, on and after the Effective Date, the Reorganized Debtors, no later than thirty (30) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order, (c) notice of an amendment to Schedules 8.1(A) or (B) of the Plan Supplement (solely with respect to the party directly affected by such modification), or (d) notice of the Debtors' election to reject under section VI.F.4 of the Plan. All such proofs of Claim not filed within such time shall be forever barred from assertion against the Debtors and their estates or the Reorganized Debtors and their property.

### 8.6 *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Petition Date to indemnify, defend, reimburse or limit the liability (i) of directors, officers or employees who are directors, officers or employees of the Debtors on or after the Confirmation Date, respectively, against any claims or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents or applicable law and (ii) arising under the Prepetition Credit Agreement, shall survive confirmation of the Plan, remain unaffected thereby and not be discharged, irrespective of whether such indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before or after the Petition Date.

### 8.7 *Insurance Policies.*

Unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' Insurance Policies which are executory, if any, and any agreements, documents or instruments relating thereto, shall be assumed under the Plan. Nothing contained in this section shall constitute or be deemed a waiver of any cause of action that the Debtors or Reorganized Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

### 8.8 *Benefit Plans.*

Notwithstanding anything contained in the Plan to the contrary, unless rejected by order of the Bankruptcy Court, the Reorganized Debtors shall continue to honor, in the ordinary course of business, all employee compensation and Benefit Plans of the Debtors, including

Benefit Plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated.

8.9     *Retiree Benefits.*

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of and subject to section 1114 of the Bankruptcy Code) for the duration of the period for which the Debtors had obligated themselves to provide such benefits and subject to the right of the Reorganized Debtors to modify or terminate such retiree benefits in accordance with the terms thereof.

## ARTICLE IX
## CORPORATE GOVERNANCE AND MANAGEMENT
## OF THE REORGANIZED DEBTORS

9.1     *General.*

On the Effective Date, the management, control and operation of Reorganized SFI and the other Reorganized Debtors shall become the general responsibility of the Postconfirmation Board.

9.2     *Postconfirmation Board.*

The Postconfirmation Board shall consist of eleven members, seven of whom shall be selected by the Participating Lenders, one of whom shall be the Chief Executive Officer of SFI, and three of whom shall be the following three current directors of SFI: Daniel M. Snyder (who shall be designated Chairman of the Postconfirmation Board), Mark Jennings and Dwight Schar.  Of the seven Postconfirmation Board members to be selected by the Participating Lenders, Robert McGuire and Perry Rogers shall be considered for such seats.

9.3     *Filing of Postconfirmation Organizational Documents.*

On the Effective Date, or as soon thereafter as practicable, to the extent necessary, the Reorganized Debtors shall file their Postconfirmation Organizational Documents, as required or deemed appropriate, with the appropriate Persons in their respective jurisdictions of incorporation or establishment.

9.4     *Officers of the Reorganized Debtors.*

The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Such officers shall serve in accordance with applicable non-bankruptcy law, any employment agreement with the Reorganized Debtors and the Postconfirmation Organizational Documents.

9.5     *Long-Term Incentive Plan.*

On the Effective Date, Reorganized SFI shall be deemed to have adopted the

Long-Term Incentive Plan. The solicitation of votes on the Plan shall include, and be deemed to be, a solicitation for approval of the Long-Term Incentive Plan. Entry of the Confirmation Order shall constitute such approval.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVE DATE

10.1 *Conditions Precedent to Effectiveness.*

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with section 10.2 of the Plan:

(a) The Confirmation Order, in form and substance acceptable to the Participating Lenders, shall have been entered and is a Final Order or, if not a Final Order, is not subject to any stay;

(b) The conditions precedent to the effectiveness of the Exit Facility are satisfied or waived by the parties thereto and the Reorganized Debtors have access to funding under the Exit Facility;

(c) All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Participating Lenders;

(d) All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked; and

(e) All conditions set forth in the Plan Support Agreement have been satisfied.

10.2 *Waiver of Conditions.*

Each of the conditions precedent in section VI.H.1 hereof may be waived, in whole or in part, by the Debtors with the prior consent of the Participating Lenders (which consent shall not be unreasonably withheld). Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.3 *Satisfaction of Conditions.*

Except as expressly provided or permitted in the Plan, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. In the event that one or more of the conditions specified in section VI.H.1 of the Plan have not occurred or otherwise been waived pursuant to section 10.2 of the Plan, (a) the Confirmation Order shall be vacated, (b) the Debtors and all holders of Claims and interests, including any Preconfirmation Equity Interests, shall be restored to the *status quo ante* as of the

A-34

day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Debtors' obligations with respect to Claims and Preconfirmation Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Preconfirmation Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

## ARTICLE XI
## EFFECT OF CONFIRMATION

### 11.1 *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Debtors, their properties and interests in property and their operations shall be released from the custody and jurisdiction of the Bankruptcy Court, and all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided in the Plan. From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, subject to the terms and conditions of the Plan.

### 11.2 *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Preconfirmation Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests, including any Preconfirmation Equity Interest, of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

### 11.3 *Discharge of Claims and Termination of Preconfirmation Equity Interests.*

Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall terminate all Preconfirmation SFI Equity Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Preconfirmation SFI Equity Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Preconfirmation SFI Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees or any of their assets or properties, any other or further Claim or Preconfirmation SFI Equity Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

### 11.4 *Discharge of Debtors.*

Upon the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Preconfirmation SFI Equity Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Preconfirmation SFI Equity Interests, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Preconfirmation SFI Equity Interest in the Debtors.

11.5 **Reservation of Causes of Action/Reservation of Rights.**

Nothing contained in the Plan shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtors or the Reorganized Debtors may have or may choose to assert against any Person.

11.6 **Exculpation.**

None of the Exculpated Parties, and the Exculpated Parties' respective current or former officers, directors, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors, and attorneys, and each of their respective agents and representatives (but, in each case, solely in connection with their official capacities in the Reorganization Cases), shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Reorganization Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Reorganization Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

11.7 **Limited Releases.**

**Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of (a) the present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of or to the Debtors who acted in such capacities after the Petition Date; (b) the Prepetition Agent and its affiliates and the other Prepetition Lenders and their affiliates, and each of their respective directors, officers, affiliates, agents, partners, members, representatives, employees, financial advisors, restructuring advisors, attorneys and representatives (the parties set forth in subsections (a) and (b), being the "Released Parties"), the Debtors, their respective chapter 11 estates and the Reorganized Debtors and all holders of Claims that accept the Plan shall release, waive and discharge unconditionally and forever each of the Released Parties from any and all Claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown,**

foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence: (i) taking place before the Petition Date in connection with or relating to any of the Debtors or any of their direct or indirect subsidiaries; and (ii) in connection with, related to, or arising out of these Reorganization Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; *provided* that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or gross negligence of any Released Party.

11.8 *Avoidance Actions/Objections.*

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Reorganized Debtors shall have the right to prosecute any and all avoidance or equitable subordination actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession.

11.9 *Injunction or Stay*

Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against, or Preconfirmation SFI Equity Interests in, the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Preconfirmation SFI Equity Interest against any of the Reorganized Debtors or any of the Released Parties, to the extent of the release provided for in Section 6 hereof, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor or any of the Released Parties, to the extent of the release provided for in Section 6 hereof, with respect to such Claim or Preconfirmation SFI Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor or any of the Released Parties, to the extent of the release provided in Section 6 hereof, or against the property or interests in property of any Reorganized Debtor or any of the Released Parties with respect to such Claim or Preconfirmation SFI Equity Interest, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Reorganized Debtor or any of the Released Parties, to the extent of the release provided in Section 6 hereof, or against the property or interests in property of any Reorganized Debtor or any of the Released Parties with respect to such Claim or Preconfirmation SFI Equity Interest and (e) pursuing any Claim released pursuant to the Plan.

Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect until the Effective Date; *provided*, *however*, that no such injunction or stay shall preclude enforcement of parties' rights under the Plan and the related documents.

A-37

# ARTICLE XII
# RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Reorganization Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

    (a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts and Claims resulting therefrom;

    (b)    To determine any and all adversary proceedings, applications and contested matters;

    (c)    To hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

    (d)    To hear and determine any timely objections to, or requests for estimation of Disputed Administrative Expense Claims and Disputed Claims, in whole or in part;

    (e)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

    (f)    To issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

    (g)    To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

    (h)    To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court; *provided*, *however*, that any dispute arising under or in connection with the Exit Facility or the New Term Loan shall be determined in accordance with the governing law designated by the applicable documents;

    (i)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Reorganized Debtors after the Effective Date for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

    (j)    To hear and determine all disputes involving the existence, scope and nature of the discharges granted under the Plan, the Confirmation Order or the Bankruptcy Code;

(k)	To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(l)	To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)	To hear and determine any rights, Claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(n)	To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(o)	To enter a final decree closing the Reorganization Cases; and

(p)	To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.1	*Effectuating Documents and Further Transactions.*

On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to them as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

### 13.2	*Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

RLF1-3426491-1

### 13.3   *Corporate Action.*

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the managers or directors of one or more of the Debtors or Reorganized Debtors, as the case may be, shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors or the Reorganized Debtors are incorporated or established, without any requirement of further action by the managers or directors of the Debtors or the Reorganized Debtors.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall, if required, file their amended articles of organization or certificates of incorporation, as the case may be, with the Secretary of State of the state in which each such entity is (or shall be) organized, in accordance with the applicable general business law of each such jurisdiction.

### 13.4   *Modification of Plan.*

Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, but only after consultation with and approval of such alteration, amendment or modification by the Prepetition Agent, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, but only after consultation with and approval of such alteration, amendment or modification by the Prepetition Agent, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan will be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Preconfirmation Equity Interests.

### 13.5   *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Preconfirmation Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

### 13.6   *Plan Supplement.*

The Plan Supplement and the documents contained therein shall be in form, scope

and substance satisfactory to the Debtors and the Participating Lenders, and shall be filed with the Bankruptcy Court no later than five (5) Business Days before the deadline for voting to accept or reject the Plan, provided that the documents included therein may thereafter be amended and supplemented prior to execution, so long as no such amendment or supplement materially affects the rights of holders of Claims. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plan as if set forth in full herein.

### 13.7 *Payment of Statutory Fees.*

On or before the Effective Date, all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid in Cash. Following the Effective Date, all such fees shall be paid by the applicable Reorganized Debtor until the earlier of the conversion or dismissal of the applicable Reorganization Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Reorganization Case pursuant to section 350(a) of the Bankruptcy Code.

### 13.8 *Dissolution of the Creditors' Committee.*

On the Effective Date, except as provided below, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Reorganization Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants and other agents, if any, shall terminate, except for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

### 13.9 *Exemption from Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the issuance of New Common Stock, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

### 13.10 *Expedited Tax Determination.*

The Debtors and the Reorganized Debtors are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Petition Date through and including the Effective Date.

### 13.11 *Exhibits/Schedules.*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

13.12  ***Substantial Consummation.***

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.13  ***Severability of Plan Provisions.***

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

13.14  ***Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its principles of conflict of law.

13.15  ***Notices.***

All notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission) to be effective and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

SIX FLAGS, INC.
1540 Broadway
New York, NY 10036
Attn:   James Coughlin
Telephone:     (212) 652-9380
Facsimile:     (212) 354-3089

*with a copy to:*

PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois  60606
Attn:   Paul E. Harner
          Steven T. Catlett
Telephone:  (312) 499-6000
Facsimile:  (312) 499-6100

          *-and-*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:   Daniel J. DeFranceschi
          L. Katherine Good
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

RLF1-3426491-1

Dated: August 20, 2009

Respectfully submitted,

**Six Flags, Inc., *et al.***
(for itself and on behalf of each of the other Debtors)

By: _____
    Name:  Jeffrey R. Speed
    Title:   Chief Financial Officer

## Schedule 1.56
## Material Terms of the Long-Term Incentive Plan

| Participants: | Management, selected employees and directors of Reorganized SFI. |
|---|---|
| Allocation: | Stock options and/or restricted stock in Reorganized SFI equal to ten percent (10%) on a fully diluted basis.<br><br>Effective as of the Effective Date, the Debtors will adopt an incentive plan for management, selected employees and directors of Reorganized SFI, which shall be substantially in the form set forth in the Plan Supplement and shall contain the following material terms and conditions: (i) management, selected employees and directors of Reorganized SFI shall receive stock options and/or restricted stock in Reorganized SFI equal to ten percent (10%) of the New Common Stock, on a fully diluted basis; and (ii) immediately following the Effective Date, the aggregate allocations to senior management under the Long-Term Incentive Plan will consist of three and three-quarters percent (3.75%) of the New Common Stock on a fully diluted basis in the form of restricted stock, which will vest in equal annual installments over the four year period, commencing on the effective date of the Employment Agreements, and three and three-quarters percent (3.75%) of the New Common Stock on a fully diluted basis in the form of options, which will only vest at the expiration of the above four-year period, all of which will be allocated to the members of the Reorganized Debtors' management in accordance with their respective employment agreements. Any additional allocations following the Effective Date will be determined by the Postconfirmation Board, provided that management will not be able to participate therein for the year following the Effective Date absent full approval of the Postconfirmation Board.<br><br>Any additional allocations following the Effective Date shall be determined by the Postconfirmation Board, provided that senior management shall not be able to participate therein for the year following the Effective Date absent full approval of the Postconfirmation Board. |

RLF1-3426491-1

## Schedule 1.71
## New Term Loan

| | |
|---|---|
| Borrower: | Reorganized SFI. |
| Guarantors: | Reorganized SFI, Reorganized SFO, Reorganized SFTP and Reorganized SFTP's domestic subsidiaries. |
| Principal: | $600 million. |
| Maturity: | 5 years from the Effective Date. |
| Interest Rate: | Seven percent (7.00%) above LIBOR, with a LIBOR floor of two and one-half percentage points (2.50%), *provided that*, prior to the second anniversary of the Effective Date, one and one-half percentage points (1.50%) of such interest may, at the Debtors' option, be paid in kind and any such interest that is paid in kind shall be added to principal and deemed an additional New Term Loan. |
| Call Premium: | The Reorganized Debtors shall pay one hundred three percent (103%) of principal plus accrued interest if such loans are redeemed prior to the first anniversary of the Effective Date, one hundred one and one-half percent (101.5%) of principal plus accrued interest if such loans are redeemed prior to the second anniversary of the Effective Date, and par for any redemption occurring thereafter. |
| Financial Covenants: | Usual and customary affirmative and negative covenants, including but not limited to limitations on indebtedness, liens, restricted payments and disposition and investments. |
| | The New Term Loan will contain restrictive covenants that limit, to an agreed amount, the amount that can be paid from operational cash flow to satisfy "put" notices from holders of units in the limited partnerships that own the Partnership Parks; *provided, however*, that the Debtors will be permitted to finance up to an additional $150 million in order to make payments on account of future "put" notices. |
| Collateral: | First lien on substantially all assets of the Reorganized Debtors which liens shall rank pari passu with the liens securing the Exit Facility, *provided that*, following an event of default, all collateral proceeds would be allocated to the New Term Loan on a "last-out" basis relative to payments made on account of the Exit Facility. |