# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Premier International Holdings Inc., *et al.*,[1] | Case No. 09-12019 (CSS) |
| | (Jointly Administered) |
| Debtors. | Related to Docket Nos. 615, 655<br>Hearing Date: October 16, 2009<br>Objection Deadline: October 13, 2009 |

## THE SFI NOTEHOLDERS' LIMITED RESPONSE (I) IN SUPPORT OF THE MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE EXTENDING THEIR EXCLUSIVE PERIODS IN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON AND (II) IN OPPOSITION TO EMERGENCY MOTION OF THE INFORMAL COMMITTEE OF SFO NOTEHOLDERS FOR A TERMINATION OF THE DEBTORS' EXCLUSIVE PERIODS IN WHICH TO FILE A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF

The Ad Hoc Committee of Six Flags Noteholders (the "SFI Noteholders"),[2] as holders and advisors to holders of senior notes (the "SFI Notes") issued by Debtor Six Flags, Inc. ("SFI"), hereby file this limited response (the "Limited Response") (I) in support of the motion of SFI and its affiliated debtors and debtors in

---

[1]     The Debtors are the following thirty-seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Astroworld GP LLC (0431), Astroworld LP (0445), Astroworld LP LLC (0460), Fiesta Texas Inc. (2900), Funtime, Inc. (7495), Funtime Parks, Inc. (0042), Great America LLC (7907), Great Escape Holding Inc. (2284), Great Escape Rides L.P. (9906), Great Escape Theme Park L.P. (3322), Hurricane Harbor GP LLC (0376), Hurricane Harbor LP (0408), Hurricane Harbor LP LLC (0417), KKI, LLC (2287), Magic Mountain LLC (8004), Park Management Corp. (1641), PP Data Services Inc. (8826), Premier International Holdings Inc. (6510), Premier Parks of Colorado Inc. (3464), Premier Parks Holdings Inc. (9961), Premier Waterworld Sacramento Inc. (8406), Riverside Park Enterprises, Inc. (7486), SF HWP Management LLC (5651), SFJ Management Inc. (4280), SFRCC Corp. (1638), Six Flags, Inc. (5059), Six Flags America LP (8165), Six Flags America Property Corporation (5464), Six Flags Great Adventure LLC (8235), Six Flags Great Escape L.P. (8306), Six Flags Operations Inc. (7714), Six Flags Services, Inc. (6089), Six Flags Services of Illinois, Inc. (2550), Six Flags St. Louis LLC (8376), Six Flags Theme Parks Inc. (4873), South Street Holdings LLC (7486), Stuart Amusement Company (2016). The mailing address of each of the Debtors solely for purposes of notices and communications is 1540 Broadway, 15th Floor, New York, NY 10036 (Attn: James Coughlin).

[2]     The SFI Noteholders are Stark Investments, CQS, Tricadia Capital Management, LLC, and 1798 Global Partners.

possession (collectively, the "Debtors") for entry of an order pursuant to section 1121 of title 11, United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), extending the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") and extending the period during which the Debtors have the exclusive right to solicit acceptances of a plan (the "Exclusive Solicitation Period, and together with the Exclusive Filing Period, the "Exclusive Periods" or "Exclusivity") [Docket No. 655] (the "Debtors' Exclusivity Motion"), and (II) in opposition to the emergency motion of the Informal Committee of SFO Noteholders (the "SFO Noteholders") for an order terminating Exclusivity [Docket No. 615] (the "Motion to Terminate Exclusivity"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The SFI Noteholders represent in excess of $230 million of over $870 million of principal amount of SFI Notes issued by SFI.  For the reasons set forth below, the SFI Noteholders support a limited 30-day extension of Exclusivity for the Debtors (the "30-Day Period") and oppose the SFO Noteholders' Motion to Terminate Exclusivity at this time.  The SFI Noteholders believe that this limited extension is necessary to permit the Debtors to designate an unconflicted estate representative of SFI to represent the interests of SFI's estate and its creditors and to negotiate with SFI's stakeholders (the "SFI Estate Representative").

2.      The Debtors in these chapter 11 cases (the "Cases") are a family of corporations—the ultimate parent being SFI and its wholly-owned operating subsidiary being Six Flags Operations, Inc. ("SFO").  Both SFI and SFO have issued public debt to the noteholders in these cases and both own distinct assets in the form of equity in their subsidiaries.  As set forth below, the Debtors and other parties in interest, including the

SFO Noteholders, have essentially cast SFI and the SFI Noteholders as nothing but "out of the money,"[3] because (i) a substantial portion of the Debtors' amusement park operations take place at subsidiaries of SFI (most notably, SFO and its subsidiary, Six Flags Theme Parks, Inc. ("SFTP")), and (ii) the Debtors' senior lenders (the "Senior Lenders"), who are owed in excess of $1.1 billion, allegedly are secured by substantially all of the assets of SFO, SFTP and its subsidiaries. Without question, the minimal distributions to SFI creditors proposed under the Debtors' chapter 11 plan (as amended and filed on August 21, 2009, the "Debtors' Plan") and the chapter 11 plan proposed by the SFO Noteholders in their Motion to Terminate Exclusivity (the "SFO Noteholder Plan") are driven by these contentions.[4]

       3.     The inconvenient truth, however, for both the Debtors and the SFO Noteholders is that *SFI has its own assets* – independent of its direct and indirect equity interests in SFO and SFTP. In addition to owning the equity interests in SFO, SFI indirectly owns approximately 52% and 29% of the equity interests in the Debtors' two flagship parks, the original Six Flags theme park, "Six Flags Over Texas" located in Arlington, Texas and "Six Flags Over Georgia" located in Atlanta, Georgia (collectively, the "Partnership Parks"), respectively. SFI also (i) owns or controls over $198 million of principal amount of intercompany notes owed by the Partnership Parks (the "Partnership Park Notes"), and (ii) has substantial potential fraudulent transfer and other estate causes of action including, without limitation, claims arising from SFI's acquisition, and

---

[3]     The SFI Noteholders disagree with the apparent assumptions made by the Debtors and the SFO Noteholders that SFI's equity interests in SFO are essentially worthless and explicitly reserve all of their rights in connection with the value of those interests and any other property of the Debtors.

[4]     The Debtors' Plan would distribute 1% of the new equity of the reorganized SFI (the "New SFI Common Stock") to SFI creditors. The SFO Noteholder Plan would distribute approximately 3.6% of the New SFI Common Stock plus warrants to SFI creditors.

subsequent transfer to SFTP for no consideration, of a 40% equity interest in dick clark productions, inc. (the "SFI Estate Causes of Action" and, collectively with the Partnership Parks, the Partnership Park Notes and any other assets of SFI, the "SFI Assets"). The SFI Assets are **not** encumbered by any claims of the Senior Lenders and, at most, the SFO Noteholders have an unsecured guarantee claim against SFI for any deficiency amount owed under the SFO Notes.

4.    Yet, since the beginning of these Cases and despite the requests of the SFI Noteholders, the Debtors have refused to identify an SFI-only representative to negotiate with SFI's creditors. More to the point, the Debtors' Plan, which was negotiated with the Senior Lenders (who are creditors of SFO, SFTP and its subsidiaries and are **not** creditors of SFI) has not been considered by any independent fiduciary for SFI or negotiated with any group of SFI-only creditors. The same is true with respect to the SFO Noteholder Plan. As a result, each plan considered by the Debtors proposes to take and contribute the SFI Assets to creditors of SFO and its subsidiaries without any negotiation whatsoever with SFI-only creditors. A limited extension of Exclusivity will provide the Debtors an opportunity to designate an unconflicted SFI Estate Representative to represent the interests of SFI's estate, who can negotiate with SFI's stakeholders over the terms of a chapter 11 plan for SFI and remedy the lack of representation at SFI.

5.    In the meantime, because the Debtors have declined to designate an SFI Estate Representative to address their obvious conflicts of interests in representing all of the Debtors and because the Official Committee of Unsecured Creditors appointed in the Debtors' jointly administered Cases (the "Official Committee") is similarly

conflicted, the SFI Noteholders have retained their own financial advisor, Chanin Capital Partners LLC, and have been conducting diligence and are actively engaged in developing a stand-alone chapter 11 plan for SFI (the "SFI Noteholder Plan"). Recoveries under such a plan—considering only the value of the SFI Assets—would be far in excess of the 1% of the New SFI Common Stock under the Debtors' Plan and the approximately 3.6% of the New SFI Common Stock and warrants under the SFO Noteholder Plan that have been proposed to SFI Creditors thus far in these Cases. In the event that the Debtors fail to appoint a proper SFI Estate Representative within 15 days following a limited extension of Exclusivity requested herein and continue to leave SFI's estate unrepresented, the SFI Noteholders reserve their right to seek (i) permission from this Court to file the SFI Noteholder Plan under seal and to terminate Exclusivity to permit the SFI Noteholders to prosecute that plan, (ii) the appointment of a chapter 11 trustee for SFI, and/or (iii) the appointment of a separate official committee for SFI creditors.

      6.     For the reasons set forth herein, the SFI Noteholders (i) support a limited extension of the Debtors' Exclusivity for a 30-day period and (ii) submit that the SFO Noteholders' Motion to Terminate should be denied.

## BACKGROUND

      7.     On June 13, 2009, the Debtors and certain of the Senior Lenders entered into a plan support agreement, which sets forth certain terms and conditions pursuant to which the Debtors would propose a chapter 11 plan with the support of the Senior Lenders. That same day the Debtors each filed a petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing their respective chapter 11 cases with this Court.

8.      On June 30, 2009, the U.S. Trustee appointed the Official Committee. The Official Committee is comprised of creditors of SFI, SFO and SFTP.

9.      On July 22, 2009, the Debtors filed their Joint Chapter 11 Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 239] and Disclosure Statement in connection therewith [Docket No. 240]. Subsequently, on August 21, 2009, the Debtors filed the Debtors' Plan and amended Disclosure Statement in connection therewith [Docket No. 498] (as it may be further amended, the "Disclosure Statement").

10.     On September 2, 2009, the Debtors filed a notice of hearing to consider approval of the Disclosure Statement [Docket No. 538], which set October 8, 2009 at 10:00 a.m. as the date and time at which the Court would hold a hearing to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing").

11.     On September 8, 2009, the SFI Noteholders sent a letter (the "September 8 Letter") to the Board of Directors of SFI (the "SFI Board") raising serious issues, many of which are addressed in this Limited Response, related to the proper administration of SFI's bankruptcy estate. Among other deficiencies, the SFI Noteholders noted the obvious lack of a disinterested fiduciary to represent the interests of SFI's stakeholders even though SFI owns substantial assets that are not subject to the liens of the Senior Lenders or other claims of creditors of SFI's subsidiaries.[5] The September 8 Letter requested, among other things, that the SFI Board agree to adjourn the Disclosure Statement Hearing and that the SFI Board and its advisors meet with the SFI Noteholders to address the issues and engage in negotiations regarding how to maximize recoveries for SFI creditors.

---

[5]      A copy of the letter is attached hereto as Exhibit A.

12.     On September 10, 2009, the undersigned counsel for the SFI Noteholders contacted the Debtors' advisors requesting a meeting between SFI and the SFI Noteholders as soon as possible. The Debtors' advisors agreed to meet with the SFI Noteholders. On September 15, 2009, the Debtors' CFO and advisors and the SFI Noteholders and their advisors met in New York, but the Debtors did not address any of the significant issues concerning the proper representation of SFI and its creditors— including the appointment of an independent representative for SFI's estate. The Debtors did, however, subsequently agree to continue the Disclosure Statement Hearing to November 5, 2009.

13.     On September 22, 2009, counsel to the Debtors sent a response to the September 8 Letter, asserting that all of the points raised in the September 8 Letter are being addressed and that no further response is necessary or appropriate.[6] The SFI Noteholders' counsel responded that same day reiterating the SFI Noteholders' questions and concerns from the September 8 Letter with respect to the proper representation of the SFI estate.[7] The Debtors have taken no further steps to address the issues raised in the September 8 Letter and continue to administer the SFI estate without an independent fiduciary.

14.     Also, on September 22, 2009, the SFI Noteholders requested by both email and telephone that the Debtors bring together all of the major stakeholders in these chapter 11 cases to discuss plan negotiations and allow the SFI Noteholders to actively negotiate on behalf of SFI's estate and its creditors. Late in the evening of September 24, 2009, counsel for the Debtors responded by telephone that such a meeting

---

[6]     A copy of the letter is attached hereto as Exhibit C.

[7]     A copy of the letter is attached hereto as Exhibit D.

was premature. Since that time, the Debtors have continued their negotiations with the SFO Noteholders but have not engaged in any plan negotiations with the SFI Noteholders and have taken no further steps to address the lack of any fiduciary representing the interests of SFI.

15.  Despite having had **no** substantive plan negotiations with the SFI Noteholders, the Debtors' counsel reported to the Court on October 8, 2009 that they had been in discussions with the parties in interest in these chapter 11 cases. Further, the Debtors disclosed that they had been in discussions with the SFO Noteholders regarding the SFO Noteholder Plan with the hope of reaching "a consensual plan." Neither the SFI Noteholders nor any other unconflicted, SFI-only creditor representative have been involved in those or any other negotiations regarding a plan for SFI's estate.

## LIMITED RESPONSE

**I.     Exclusivity Should Be Extended For A 30-Day Period So That The Debtors Can Designate An SFI Estate Representative**

### A.     The Proper Administration Of SFI's Chapter 11 Case Requires An Unconflicted SFI Estate Representative

16.  Unlike many large multi-debtor chapter 11 cases, not all of the Debtors' assets are subject to the claims and liens of the Debtors' various creditor constituencies. As described in the Disclosure Statement and the Debtors' other public disclosures, SFI owns, through certain of its direct and indirect non-Debtor subsidiaries, the SFI Assets in addition to its equity interests in SFO. The SFI Assets are significant and include, among other things, 100 percent ownership of the shares of non-debtor GP Holdings Inc., which, through its subsidiaries, is the general partner of the entities that own portions of the Partnership Parks and owns or controls the Partnership Park Notes,

see Schedule of Assets and Liabilities For Six Flags, Inc., Schedule B [Docket No. 460], as well as the SFI Estate Causes of Action.  As further disclosed by the Debtors, the SFI Assets are not subject to the liens of the Senior Lenders.

17.    As a consequence, the proper administration of these chapter 11 cases requires the Debtors and their boards to do more than just determine the enterprise value of all Debtors on a consolidated basis.  Rather, the Debtors and their boards act as debtors-in-possession for each of the estates.  Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985).  As debtor-in-possession, each Debtor and its board of directors must properly discharge its fiduciary duties in favor of each individual estate, rather than acting for the benefit of creditors of affiliate debtors.  See also Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 520 (2d Cir. 1988).  Although interrelated, each Debtor and its board of directors, as a debtor-in-possession, has independent fiduciary duties owing to its own estate and its own creditors under sections 1106 and 1107 of the Bankruptcy Code.  Cf. Weintraub, 471 U.S. at 355.

18.    Indeed, as the Third Circuit has recognized, the separateness of estates within a multi-debtor chapter 11 case must be respected:

> Limiting the cross-creep of liability by respecting entity separateness is a "fundamental ground rule[]."  As a result, the general expectation of state law and of the Bankruptcy Code, and thus of commercial markets, is that courts respect entity separateness absent compelling circumstances calling equity (and even then only possibly substantive consolidation) into play.

In re Owens Corning, 419 F.3d 195, 211 (3d Cir. 2005) (internal citations omitted). Where the duty to maximize value for one Debtor's estate is or becomes adverse to the duty to maximize value for another Debtor's estate, an obvious conflict of interest arises

for a board of directors acting as the debtor in possession for both such estates. See In re Adelphia Commc'ns Corp., 336 B.R. 610, 671 (Bankr. S.D.N.Y. 2006) (directing the debtors to recuse themselves from certain interdebtor disputes to give creditors comfort that the debtors would maintain their neutrality and not act to the detriment of particular estates). Here, there is a discreet set of SFI Assets available only to SFI's stakeholders. While it is the duty of the SFI Board to maximize the value of these assets for SFI's creditors, certain of these same board members are directors and officers of other Debtor entities. As such, these individuals also owe fiduciary obligations to each of the other Debtor estates, which have no right to the SFI Assets. Thus, there is an inherent conflict of interest concerning the SFI Board's continued management of all Debtor estates, which has yet to be addressed in these Cases.

**B.      SFI's Creditors Have Suffered Because The Debtors Have Declined To Appoint A Representative For SFI's Estate**

19.      Despite the obvious conflicts of interest and the SFI Noteholders' repeated requests for the SFI Board to address these conflicts, the Debtors and the SFI Board have continued to administer all of the chapter 11 estates as a single enterprise without taking any actions to remedy the situation. According to the information contained in the Disclosure Statement, no steps have been taken to consider the unique interests of SFI's creditors in the SFI Assets. Nor have the Debtors provided any indication to the SFI Noteholders that they have taken any remedial actions in response to the September 8 Letter, which first identified and highlighted these issues and requested that the SFI Board designate an unconflicted SFI Estate Representative to negotiate with SFI's creditors. To the contrary, it appears that the SFI Board has ignored SFI's unique rights to the SFI Assets, and as such, the Debtors and the SFI Board cannot demonstrate

that SFI has or can fulfill its fiduciary duties as a debtor-in-possession to the SFI creditors. As a result of the Debtors' apparent inability to manage these conflicts of interest and properly discharge their fiduciary duties owed to SFI's estate, the interests of SFI's creditors have suffered in these Cases and will continue to do so absent proper remedial steps.

20. The fundamental flaws of the Debtors' Plan perhaps best highlight the absence of a fiduciary representing SFI's estate and its creditors. Until very recently, the Debtors have pursued the Debtors' Plan, the terms of which were insisted upon and negotiated with the Senior Lenders, who are creditors of SFO and its subsidiaries, including SFTP, and who have no claims against SFI or liens on the SFI Assets. As indicated by the information contained in the Disclosure Statement, the Debtors' Plan is premised on the belief that SFI's ownership interest in SFO has little or no value and, as such, provides SFI creditors with a de minimis recovery. The Disclosure Statement further indicates that, in negotiating the Debtors' Plan, the Debtors paid little consideration to the value of the SFI Assets, any potential SFI Estate Causes of Action, or the possible alternatives available for maximizing the value of SFI's estate—including the possibility of a stand-alone reorganization plan for SFI.

21. The allegation that SFI's ownership interest in SFO is worthless underscores the immediate need for an SFI Estate Representative. Without explanation, the Debtors seek to force SFI to participate in a consolidated chapter 11 plan with the rest of the Debtors. Ironically, the treatment proposed for SFI creditors under the Debtors' Plan is worse than substantive consolidation because only the assets (and not the liabilities) of SFI are being substantively consolidated with the other Debtors.

22.     The Debtors' Plan if approved, would thus effectuate an impermissible substantive consolidation of the Debtors' assets in violation of well-established Third Circuit authority.  See Owens Corning, 419 F.3d at 211 (noting that substantive consolidation may not be used offensively where the primary purpose is to disadvantage a group of creditors in the plan process); Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.), 402 F.3d 416, 423 (3d Cir. 2005) (recognizing that substantive consolidation is a sparingly used remedy used only where the debtor's conduct blurs the corporate separateness and creditors deal with them as a single unit); see also Augie/Restivo Baking Co., 860 F.2d at 518 (noting "[t]he sole purpose of substantive consolidation is to ensure the equitable treatment of all creditors.").

23.     Under Third Circuit precedent, in order to substantively consolidate the Debtors' estates, the Debtors must prove that (i) prepetition the Debtors disregarded corporate separateness so significantly that their creditors treated them as one legal entity, or (ii) postpetition the Debtors' assets and liabilities are so scrambled among the estates that separating them is prohibitive and hurts all creditors.  Owens Corning, 419 F.3d at 211.  The Debtors simply cannot meet that burden.  The Debtors have not argued—much less proven—that such a consolidation is appropriate here, and they clearly cannot show that the holders of SFI Notes did not rely on the corporate separateness of the Debtor estates when they acquired notes issued by SFI.

24.     Indeed, the only plausible way the SFI Board could have both discharged its fiduciary duties to SFI's creditors and proposed a plan that effectively results in the forced sale of the SFI Assets to the rest of the Debtors' creditors would be if

some independent fiduciary or other representative had negotiated exclusively on SFI's behalf. Yet, no such fiduciary or negotiations have been disclosed, nor does anything close to such measures appear to have occurred. If they had, the Debtors and the SFI Board likely would have engaged SFI creditors, such as the SFI Noteholders, in meaningful negotiations regarding the disposition of SFI Assets under a plan. The Debtors and the SFI Board have simply not done so. The only conclusion, therefore, is that the process being employed by the SFI Board to maximize the value of SFI's estate is fundamentally flawed and is in derogation of the SFI Board's fiduciary duties owed to SFI's creditors.

25. Consequently, despite the Debtors' serious deficiencies in managing their estates and, in particular, the lack of any adequate representative for the interests of SFI, its estate and creditors, the SFI Noteholders believe that Exclusivity should not be terminated at this time. Instead, the Debtors should be permitted to retain Exclusivity for no more the 30-Day Period with the understanding that this additional time should be used to designate an SFI Estate Representative, who can negotiate a chapter 11 plan with SFI's stakeholders. To date, both the SFO Noteholders and the Debtors have declined to engage in meaningful restructuring negotiations with the SFI Noteholders or any other unconflicted SFI creditor constituency. Thus, an extension will permit time so that all—as opposed to just some—of the various creditor constituencies will have an opportunity to engage in substantive negotiations regarding plan of reorganization for SFI.

## II. Exclusivity Should Not Be Terminated And The SFO Noteholder Plan Should Not Be Solicited

26. In supporting only a limited extension of Exclusivity, the SFI Noteholders also oppose the SFO Noteholders' Motion to Terminate Exclusivity. Like the Debtors' Plan, the formulation of the SFO Noteholder Plan did not involve any negotiations with any SFI fiduciary or unconflicted SFI creditor constituency. As a result, the SFO Noteholder Plan suffers from many of the same fatal flaws that are contained in the Debtors' current plan. The SFO Noteholder Plan also relies on the flawed premise that SFI should be forced to contribute the SFI Assets for the benefit of the Debtors' other creditors. Like the Debtors, the SFO Noteholders provide no justification for this contribution. Instead, the SFO Noteholders simply ignore the separation of the Debtors' estates, concluding that SFO's creditors "are structurally senior" to SFI's creditors. Motion to Terminate Exclusivity ¶ 27.

27. Essentially, the SFO Noteholder Plan is no more than a rehashing of the Debtors' Plan that simply reallocates more equity in a reorganized SFI to the SFO creditors as opposed to the Senior Lenders. Although allegedly providing a marginally better recovery for SFI creditors, it likewise ignores the exclusive right of SFI creditors to the SFI Assets. As such, the SFO Noteholder Plan also is patently unconfirmable and thus the Motion to Terminate Exclusivity should be denied.

**CONCLUSION**

The SFI Noteholders respectfully request that the Court (i) grant in part the Debtors' Exclusivity Motion, but only for the 30-Day Period and only to the extent requested herein, (ii) deny the SFO Noteholders' Motion to Terminate Exclusivity, and (iii) grant such other and further relief as the Court deems just and proper.

Dated:  October 13, 2009
        Wilmington, Delaware

BAYARD, P.A.

_____

Neil B. Glassman (No. 2087)
GianClaudio Finizio (No. 4253)
Justin R. Alberto (No. 5126)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

-and-

Thomas E Lauria
J. Christopher Shore
John K. Cunningham
WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Boulevard,
49th Floor
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Attorneys for the SFI Noteholders*