# EXHIBIT A

**Stark Investments**
3600 South Lake Drive
St. Francis, WI 53235
P: (414) 294-7000
F: (414) 294-7700

**CQS**
152 West 57th Street, 41st Floor
New York, NY 10019
P: (917) 206-4000
F: (917) 206-4099

September 8, 2009

<u>VIA FEDEX</u>

To: The Board of Directors of Six Flags, Inc.

Attn: Mr. Daniel M. Snyder
Chairman of the Board of
  Directors of Six Flags, Inc.
1540 Broadway
New York, NY 10036

Redskin Park
P.O. Box 17247
Washington, D.C. 20041

Attn: Mr. Mark E. Jennings
One Greenwich Office Park
Greenwich, CT 06831

Attn: Mr. Robert J. McGuire
15910 Ventura Boulevard, Suite 900
Encino, CA 91436

Attn: Mr. Charles Elliot Andrews
12061 Bluemont Way
Reston, VA 20190

Attn: Mr. Mark Shapiro
Six Flags, Inc.
1540 Broadway
New York, NY 10036

Attn: Mr. Dwight C. Schar
11700 Plaza America Drive, Suite 500
Reston, VA 20190

Attn: Mr. Harvey Weinstein
One Biscayne Tower, Suite 2960
Miami, FL 33131

Attn: Mr. Perry Rogers
3960 Howard Hughes Pkwy., Suite 750
Las Vegas, NV 89169

Re:   <u>In re Premier International Holdings Inc., et al., No. 09-12019 (CSS) (Bankr. D. Del.)</u>

Gentlemen:

    Stark Investments and its affiliates ("Stark") and CQS and its affiliates (collectively, with Stark, the "SFI Noteholders") are holders or advisors to holders of over $170 million out of the approximately $870 million of the unsecured notes (collectively, the "SFI Notes") issued by Six Flags, Inc. ("SFI").

    Based on the pendency of SFI's chapter 11 case, the Board of Directors of SFI (the "SFI Board") has a fiduciary duty to maximize the value of SFI's estate for the benefit of SFI's

September 8, 2009

stakeholders (as opposed to the stakeholders of SFI's subsidiaries or their insiders). The information contained in the Disclosure Statement dated August 20, 2009 (the "Disclosure Statement") with respect to the Debtors' Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan") filed by SFI and its affiliated debtors (collectively, the "Debtors") does not provide a basis for understanding that these duties have been properly performed. Indeed, it suggests otherwise.

According to the information provided in the Disclosure Statement, both SFI and its subsidiary Six Flags Operations, Inc. ("SFO") are insolvent. Although we reserve all of our rights with respect to these positions, if they are to be believed—as the SFI Board apparently does by having authorized the filing of the Disclosure Statement and Plan—there are a couple of conclusions that follow: (i) SFI's equity interests in its subsidiary SFO have no value, and (ii) the SFI Board owes its fiduciary duties exclusively to the benefit of SFI's creditors.

Against this backdrop, the Plan raises (and the Disclosure Statement does NOT answer) a series of questions:

(1) What is the basis for SFI retaining its worthless ownership interest in SFO? What was the underlying information relied upon and considered by the SFI Board in making that determination?

(2) What is the value of the business (the Partnership Parks; dick clark productions, inc.; undeveloped real estate; trademarks and intellectual property; etc.) directly owned by SFI on a stand alone basis?

(3) What consideration is SFI paying to reacquire ownership of SFO? What is that interest worth? Who is realizing the value?

(4) Who negotiated the deal as between SFI and SFO? Were they disinterested? Who advised SFI from a legal and financial perspective? Were they disinterested?

(5) What specific information has the SFI Board reviewed and considered to conclude that the Plan maximizes value for SFI's creditors? What alternatives were considered?

(6) Why has SFI taken the unprecedented action of proposing and filing a Plan without first engaging in any negotiations with its creditors over its contents? Shouldn't the SFI creditors be afforded the opportunity to convert their debt into ownership of SFI and to realize directly whatever value is available?

(7) Why has SFI entered into a plan deal with the secured lenders to SFO and its subsidiaries? These creditors have no claims against SFI, and you believe that SFI's interest in SFO has no value.

September 8, 2009

(8) What efforts have SFI or its advisors made to investigate (a) prepetition intercompany transactions with SFO and its subsidiaries or (b) prepetition transactions with third parties, including those involving Time Warner and the Partnership Parks, to determine whether any are subject to the avoidance provisions of the Bankruptcy Code, particularly in light of your views that SFI is insolvent and that its interests in SFO and its subsidiaries are materially impaired? Who retains the benefits of those claims under the Plan? If the claims are being released, what is the basis for SFI agreeing to that?

Having failed to address any of these fundamental issues in the Disclosure Statement, we ask that the following actions be taken immediately

(1) Adjourn the hearing on the Disclosure Statement so that the Board and its advisors can meet with us to address, and to provide us a reasonable opportunity to independently assess, these matters;

(2) Provide evidence that these issues have been decided on an unconflicted basis or establish an unconflicted SFI negotiating committee to consider SFI's plan options;

(3) Provide evidence that the unconflicted Board members who have decided these issues received advice from advisors who were disinterested or have the new negotiating committee retain disinterested advisors; and

(4) Promptly engage with us in negotiations regarding how to maximize recoveries at SFI.

Your failure to take these measures will necessitate us seeking immediate curative relief from the Bankruptcy Court. In that regard, we reserve all of our rights.

Sincerely,

STARK INVESTMENTS

Donald Bobbs

CQS

Mark Unferth

cc:
Thomas E Lauria, Esq. (via email)
J. Christopher Shore, Esq. (via email)
John K. Cunningham, Esq. (via email)
Paul Harner, Esq. (via email)

Dennis Block, Esq. (via email)
Edward Weisfelner, Esq. (via email)
Steven Levine, Esq. (via email)
Robert Rosenberg, Esq. (via email)

3

September 8, 2009

(8) What efforts have SFI or its advisors made to investigate (a) prepetition intercompany transactions with SFO and its subsidiaries or (b) prepetition transactions with third parties, including those involving Time Warner and the Partnership Parks, to determine whether any are subject to the avoidance provisions of the Bankruptcy Code, particularly in light of your views that SFI is insolvent and that its interests in SFO and its subsidiaries are materially impaired? Who retains the benefits of those claims under the Plan? If the claims are being released, what is the basis for SFI agreeing to that?

Having failed to address any of these fundamental issues in the Disclosure Statement, we ask that the following actions be taken immediately—

(1) Adjourn the hearing on the Disclosure Statement so that the Board and its advisors can meet with us to address, and to provide us a reasonable opportunity to independently assess, these matters;

(2) Provide evidence that these issues have been decided on an unconflicted basis or establish an unconflicted SFI negotiating committee to consider SFI's plan options;

(3) Provide evidence that the unconflicted Board members who have decided these issues received advice from advisors who were disinterested or have the new negotiating committee retain disinterested advisors; and

(4) Promptly engage with us in negotiations regarding how to maximize recoveries at SFI.

Your failure to take these measures will necessitate us seeking immediate curative relief from the Bankruptcy Court. In that regard, we reserve all of our rights.

Sincerely,

STARK INVESTMENTS

_____
Donald Bobbs

CQS

_____
Mark Unferth

cc:
Thomas E Lauria, Esq. (via email)
J. Christopher Shore, Esq. (via email)
John K. Cunningham, Esq. (via email)
Paul Harner, Esq. (via email)

Dennis Block, Esq. (via email)
Edward Weisfelner, Esq. (via email)
Steven Levine, Esq. (via email)
Robert Rosenberg, Esq. (via email)

3