## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Premier International Holdings Inc., *et al.*,[1] | : | Case No. 09-12019 (CSS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
---------------------------------------------------------------x

**Obj. Deadline: 10/29/09 at 4:00 p.m (EDT)**
**Hearing Date: 11/5/09 at 10:00 a.m (EST)**

## DEBTORS' MOTION FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT AND NOTICE THEREOF AND (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE INCLUDING (A) FIXING THE VOTING RECORD DATE, (B) APPROVING SOLICITATION PACKAGES AND PROCEDURES FOR DISTRIBUTION THEREOF, AND (C) APPROVING FORMS OF BALLOTS AND ESTABLISHING PROCEDURES FOR VOTING ON THE PLAN; (III) SCHEDULING A CONFIRMATION HEARING AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF THE PLAN; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the

"Debtors") in the above-captioned chapter 11 cases hereby file this motion (the "Motion")

pursuant to sections 105, 1123, 1125, 1126 and 1128 of title 11 of the United States Code, 11

---

[1] The Debtors are the following thirty-seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Astroworld GP LLC (0431), Astroworld LP (0445), Astroworld LP LLC (0460), Fiesta Texas Inc. (2900), Funtime, Inc. (7495), Funtime Parks, Inc. (0042), Great America LLC (7907), Great Escape Holding Inc. (2284), Great Escape Rides L.P. (9906), Great Escape Theme Park L.P. (3322), Hurricane Harbor GP LLC (0376), Hurricane Harbor LP (0408), Hurricane Harbor LP LLC (0417), KKI, LLC (2287), Magic Mountain LLC (8004), Park Management Corp. (1641), PP Data Services Inc. (8826), Premier International Holdings Inc. (6510), Premier Parks of Colorado Inc. (3464), Premier Parks Holdings Inc. (9961), Premier Waterworld Sacramento Inc. (8406), Riverside Park Enterprises, Inc. (7486), SF HWP Management LLC (5651), SFJ Management Inc. (4280), SFRCC Corp. (1638), Six Flags, Inc. (5059), Six Flags America LP (8165), Six Flags America Property Corporation (5464), Six Flags Great Adventure LLC (8235), Six Flags Great Escape L.P. (8306), Six Flags Operations Inc. (7714), Six Flags Services, Inc. (6089), Six Flags Services of Illinois, Inc. (2550), Six Flags St. Louis LLC (8376), Six Flags Theme Parks Inc. (4873), South Street Holdings LLC (7486), Stuart Amusement Company (2016). The mailing address of each of the Debtors solely for purposes of notices and communications is 1540 Broadway, 15th Floor, New York, NY 10036 (Attn: James Coughlin).

U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 3001, 3003, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court (the "Court") for the District of Delaware (the "Local Rules"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "Solicitation Order"): (i) approving the *Disclosure Statement for the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 498] (as may be amended from time to time, the "Proposed Disclosure Statement"); (ii) approving notice and objection procedures for the Disclosure Statement Hearing (as defined below); (iii) establishing procedures for the solicitation and tabulation of votes to accept or reject the *Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 496] (as it may be further amended from time to time, the "Plan"),[2] including: (a) fixing the voting record date for purposes of determining which holders of Claims are entitled to vote on the Plan, (b) approving solicitation packages and procedures for distribution thereof in connection with the solicitation of votes on the Plan and (c) approving forms of ballots and notices of non-voting status and establishing procedures for voting on the Plan; (iv) scheduling a Confirmation Hearing (as defined below) and establishing notice and objection procedures in respect thereof; and (v) granting related relief, all as is more fully set forth below. In support of the relief requested in this Motion, the Debtors respectfully represent as follows:

## Background

1.    On June 13, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

Cases"). The Debtors are continuing to operate their business as debtors and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. The United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") on June 26, 2009.

2.    Six Flags, Inc. ("Six Flags") is the largest regional theme park operator in the world. From its headquarters in New York City, Six Flags indirectly owns or operates twenty parks located in geographically diverse markets across North America, including eighteen domestic parks, one park in Mexico, and one park in Canada. Six Flags and its affiliates currently employ approximately 2,040 full-time employees, 16% of whom are subject to labor agreements with local chapters of national unions. In addition, Six Flags and its affiliates employed 28,500 seasonal employees during the 2008 operating season.

3.    Six Flags' operations are highly seasonal in that approximately 80% of park attendance and revenues are generated during the second and third quarters of the calendar year, with the most significant revenue generation occurring between Memorial Day and Labor Day. During the 2008 operating season, Six Flags generated approximately $535 million in ticket sales and an additional $487 million in food, merchandise, and other sales, including sponsorship and licensing revenues, achieving Free Cash Flow[3] for the first time, with operating income more than tripling from the previous year. Overall attendance during the 2008 season increased by approximately 2% percent from the previous year and revenue increased by approximately 5%.

[3] "Free Cash Flow" is defined as Adjusted EBIDTA excluding (i) cash interest expense (net) and debt issuance costs, dividends, and taxes paid in cash and (ii) capital expenditures, net of property insurance recoveries. "Adjusted EBITDA" is defined as Six Flags' net income (loss) before the cumulative effect of changes in accounting principles, discontinued operations, income tax expense (benefit), other expense, early repurchase of debt, equity in operations of partnerships, minority interest in earnings (losses), interest expense (net), amortization, depreciation, stock-based compensation, gain (loss) on disposal of assets, interests of third parties in the Adjusted EBITDA of four parks that are less than wholly owned (consisting of Six Flags Over Georgia, Six Flags Over Texas, Six Flags White Water Atlanta, and Six Flags Discovery Kingdom), and Six Flags' interest in the Adjusted EBITDA of Six Flags Great Escape Lodge & Indoor Waterpark and dick clark productions, inc.

4.     As of the Petition Date, the Debtors had approximately $1,268.3 million of fixed-rate senior unsecured notes, with staggered maturities ranging from 2010 to 2016 (the "Unsecured Notes"). In addition, certain of the Debtors entered into a senior secured credit agreement (the "Credit Facility") with a syndicate of lenders (the "Prepetition Lenders"), which provides for (i) an $850 million term loan maturing in April 2015 ($835,125,000 of which was outstanding as of the Petition Date) (the "Term Credit Agreement") and (ii) a revolving facility (the "Revolver") totaling $275 million ($243,492,063 of which was outstanding as of the Petition Date, as well as letters of credit in the amount of $31,402,000 on such date) and an uncommitted optional term loan tranche of up to $300 million. The Revolver matures on March 31, 2013. Finally, the Debtors are obligated to redeem certain outstanding preferred income equity redeemable shares ("PIERS"), which are required to be redeemed for cash on August 15, 2009 and total approximately $287.5 million, in addition to accrued and unpaid dividends, which will total approximately $31.3 million.

5.     Several internal and external factors have impacted the Debtors severely, prompting the liquidity pressures that precipitated the decision to commence these Bankruptcy Cases. From 1998 through 2005, Six Flags amassed over $2.4 billion of debt and PIERS obligations in connection with the acquisition of parks and various capital expenditure programs. As a result, the current management team, installed in late 2005 and early 2006, inherited a highly leveraged balance sheet, a burdensome cost structure, and significant legacy costs needing financial reorganization. The current management team has worked diligently to diversify and grow revenues, increase operational efficiency, and reduce the inherited debt obligations through, among other things, the sale of ten parks, a successful exchange offer, and a successful

negotiation and execution of the Credit Facility on more favorable terms and with an extended maturity.

6.    The current management team's efforts have been successful. In 2008, Six Flags achieved every one of its five key strategic goals that it had determined to accomplish by the end of the current management's third year. In fact, in 2008, a year that was difficult for many enterprises reliant on discretionary consumer spending, Six Flags: (i) improved the overall guest experience and repositioned the brand by diversifying product offerings, resulting in guest satisfaction scores at or above all-time highs; (ii) created and grew new high margin and low capital sponsorship and licensing businesses, and achieved annual revenues in these businesses in excess of the targeted $50 million, reaching approximately $59 million in 2008; (iii) achieved total revenue per capita of at least $40, or 20% cumulative growth from 2005; (iv) operated at a Modified EBITDA[4] margin of at least 30%; and (v) became Free Cash Flow positive for the first time in Six Flags' history, with an Adjusted EBITDA in excess of $275 million.

7.    The Debtors have material ongoing capital expenditure requirements and remain highly leveraged, with substantial cash interest costs as well as significant portions of their debt maturing, and the PIERS being mandatorily redeemable, in the near future. In fact, as noted above, the Debtors' obligations under the PIERS mature on August 15, 2009, and certain of the Unsecured Notes mature in February 2010. Accordingly, the Debtors believe that commencement of bankruptcy proceedings will afford them the best opportunity to restructure their debt comprehensively and decisively.

---

[4] "Modified EBITDA" is defined as Adjusted EBITDA plus the interests of the third parties in the Adjusted EBITDA of the four parks that are less than wholly owned, less Six Flags' interest in the Adjusted EBITDA of Six Flags Great Escape Lodge & Indoor Waterpark and dick clark productions, inc.

8. On July 22, 2009, the Debtors filed the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 239] and the *Disclosure Statement for Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 240], with the support of the Prepetition Lenders. Subsequently, on August 21, 2009, the Debtors filed the Plan and Proposed Disclosure Statement amending these previous filings.

9. On September 2, 2009, the Debtors filed the *Notice of Hearing to Consider Approval of Disclosure Statement for Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 538], substantially in the form annexed to the Solicitation Order (as defined below) as Exhibit 1 (the "Notice of Disclosure Statement Hearing"). Pursuant to the Notice of Disclosure Statement Hearing, the hearing on approval of the Proposed Disclosure Statement (the "Disclosure Statement Hearing") was scheduled to be heard on October 8, 2009 at 10:00 a.m. (Eastern Daylight Time). However, pursuant to the Notice of Disclosure Statement Hearing, the Debtors continued the Disclosure Statement Hearing to November 5, 2009 at 10:00 a.m. (Eastern Standard Time). See *Notice of Agenda of Matters Scheduled for Hearing on October 8, 2009 at 10:00 a.m.* [Docket No. 759].

### Relief Requested

10. By this Motion, the Debtors respectfully request entry of the proposed Solicitation Order: (i) approving the Proposed Disclosure Statement; (ii) approving notice and objection procedures for the Disclosure Statement Hearing; (iii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including: (a) fixing the voting record date for purposes of determining which holders of Claims are entitled to vote on the Plan, (b) approving solicitation packages and procedures for distribution thereof in connection with the solicitation of votes on the Plan and (c) approving forms of ballots and notices of non-voting

status and establishing procedures for voting on the Plan; (iv) scheduling a Confirmation Hearing and establishing notice and objection procedures in respect thereof; and (v) granting related relief.

## I. THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION

11. Under section 1125 of the Bankruptcy Code, a debtor must provide its creditors and interest holders with "adequate information" regarding such debtor's proposed plan of reorganization. To that end, section 1125(a)(1) of the Bankruptcy Code provides that "adequate information" means:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan .
> . . .

11 U.S.C. § 1125(a)(1). Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on such debtor's plan of reorganization. See, e.g., Century Glove, Inc. v. First Am. Bank of New York, 860 F.2d 94, 100 (3rd Cir. 1988) (Section "1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); In re Zenith Elecs. Corp., 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); In re Dakota Rail, Inc., 104 B.R. 138, 142-43 (Bankr. D. Minn. 1989); In re Copy Crafters Quickprint Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of a disclosure statement is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties). Congress intended that such

informed judgments would be needed to both negotiate the terms of and vote on a plan of reorganization. Century Glove, 860 F.2d at 100.

12.    A court has broad discretion in determining whether a disclosure statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code. See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop.), 150 F.3d 503, 518 (5th Cir. 1998), cert. denied, 119 S. Ct. 2019 (1999); Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995); see also Dakota Rail, 104 B.R. at 143 (court has "wide discretion to determine . . . whether a disclosure statement contains adequate information without burdensome, unnecessary and cumbersome detail").

13.    Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.3d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."). In that regard, courts generally examine whether a disclosure statement contains, where and if applicable, the following types of information:

|     |     |
| --- | --- |
| a.  | the circumstances that gave rise to the filing of the bankruptcy petition; |
| b.  | a complete description of the available assets and their value; |
| c.  | the anticipated future of the debtor; |
| d.  | the source of the information provided in the disclosure statement; |
| e.  | a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; |

f. the financial condition and performance of the debtor during the pendency of its chapter 11 case;

g. information regarding claims against the debtor's estate;

h. a liquidation analysis identifying the estimated return that creditors would receive if the debtor's bankruptcy case was a case under chapter 7 of the Bankruptcy Code;

i. the accounting and valuation methods used to produce the financial information in the disclosure statement;

j. information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

k. a summary of the plan of reorganization;

l. an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

m. the collectibility of any accounts receivable;

n. any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan of reorganization;

o. information relevant to the risks being taken by the creditors and interest holders;

p. the actual or projected value that could be obtained from avoidable transfers;

q. the existence, likelihood and possible success of nonbankruptcy litigation;

r. the tax consequences of the plan of reorganization; and

s. the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

14. The Proposed Disclosure Statement contains ample information with respect to the topics identified above where applicable, including, *inter alia*, information with respect to: (a) the terms of the Plan; (b) certain events preceding the Bankruptcy Cases; (c) the status of the

Debtors' businesses during the course of the Bankruptcy Cases; (d) estimates of the Claims asserted or to be asserted against the Debtors' estates and the value of distributions to be received by holders of such Claims; (e) the risk factors affecting the Plan; (f) the Restructuring Transactions hat will occur upon the effectiveness of the Plan; (g) the method and timing of distributions under the Plan; (h) a discussion of the treatment of creditors under the Plan and the treatment such creditors would receive if the Bankruptcy Cases were cases under chapter 7 of the Bankruptcy Code; and (i) appropriate disclaimers regarding the Court's approval of information only as contained in the Proposed Disclosure Statement. Accordingly, the Debtors respectfully submit that the Proposed Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code. To the extent necessary, the Debtors will demonstrate at the hearing on this Motion (the "Disclosure Statement Hearing") that the Disclosure Statement addresses the information set forth above in a manner that provides those entities entitled to vote on the Plan with adequate information within the meaning of section 1125.

## II.    NOTICE OF DISCLOSURE STATEMENT HEARING

15.    Bankruptcy Rule 3017(a) provides that after filing of a disclosure statement:

> [T]he court shall hold a hearing on at least 25 days' notice to the debtor, creditors, equity security holders and other parties in interest as provided in Rule 2002 to consider the disclosure statement and any objections or modifications thereto. The plan and the disclosure statement shall be mailed with the notice of hearing only to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan.

16.    On September 2, 2009, the Debtors filed the Notice of Disclosure Statement Hearing and served such notice on the following parties: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the agent bank for the Prepetition Lenders; (d) the Debtors' prepetition indenture trustees; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) those parties who had requested notice pursuant to Bankruptcy Rule 2002;

(h) all persons or entities listed in the Debtors' schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs; and (i) any other known or potential holders of Claims or record holders of equity interests in the Debtors (collectively, the "Noticed Parties"). Among other things, the Notice of the Disclosure Statement hearing provided the Noticed Parties with the time set for filing objections to the Proposed Disclosure Statement and the time and location of the Disclosure Statement Hearing. Further, in accordance with Bankruptcy Rule 3017(a), the Debtors mailed, or cause to be mailed, a copy of the Proposed Disclosure Statement and Plan to, among others, the following parties: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; and (c) the Securities and Exchange Commission. The Debtors submit that such service comports with the requirements of Bankruptcy Rule 3017(a), and request that the Court approve the Notice of the Disclosure Statement Hearing as adequate.

### III. ESTABLISHING SOLICITATION AND NOTICE PROCEDURES

#### A. Fixing a Record Date

17. Generally, the date used to determine which holders of claims against and interests in a debtor are entitled to vote on such debtor's plan of reorganization is the date the Court enters the order approving the disclosure statement for such plan. See Fed R. Bankr. P. 3017(d). Subject to the Court's approval of the Proposed Disclosure Statement, the Debtors request that this Court exercise its authority to establish November 5, 2009, the date of the Disclosure Statement Hearing, as the record date (the "Voting Record Date") for the purpose of determining (a) creditors or equity interest holders entitled to receive Solicitation Packages (as defined below) or Rejecting Class Notices (as defined below), as applicable, and (b) creditors entitled to vote to accept or reject the Plan, notwithstanding anything else to the contrary in the Bankruptcy Rules or the Local Rules.

**B.** **Approval of Solicitation Packages and Certain Notices and Procedures for Distribution Thereof to Voting Classes, Unimpaired Classes and the Rejecting Classes**

   **i.**   **Solicitation Packages**

18.   Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims against and equity interests in the debtors for the purpose of soliciting their votes and providing adequate notice of the Confirmation Hearing.   In particular, Bankruptcy Rule 3017(d) provides that:

> Upon approval of a disclosure statement, – except to the extent that the court orders otherwise with respect to one or more unimpaired class of creditors or equity security holders – the debtors in possession, trustee, proponent of the plan, or clerk as the court orders, shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:
>
>> (1)   the plan or a court-approved summary of the plan;
>>
>> (2)   the disclosure statement approved by the court;
>>
>> (3)   notice of the time within which acceptances and rejections of the plan may be filed; and
>>
>> (4)   any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

19.   In accordance with the requirements of Bankruptcy Rule 3017(d), upon the Solicitation Commencement Date (as defined below), the Debtors propose to distribute, or cause to be distributed, solicitation packages, to holders of Claims in Voting Classes (as defined below) and holders of Unimpaired Claims or equity interests in the Debtors.  Such solicitation packages (the "Solicitation Packages") will contain copies of:

a. a CD-ROM containing the Proposed Disclosure Statement, together with the Plan and other exhibits annexed thereto;[5]

b. the Solicitation Order, excluding exhibits annexed thereto;

c. the Confirmation Hearing Notice (as defined below);

d. either

(i) the appropriate Ballot (as defined below), together with a return envelope; or

(ii) an Unimpaired Notice of Non-Voting Status (as defined below); and

e. such other materials as the Court may direct or approve, including supplemental solicitation materials the Debtors may file with the Court.

20. In addition, with respect to any transferred Claim in a Voting Class, the Debtors propose that the transferee will be entitled to receive a Solicitation Package and cast a Ballot (as defined below) on account of such transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date: (i) the documentation required by Bankruptcy Rule 3001(e) to evidence that transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the transferor has completed a Ballot and has submitted such Ballot to the Voting Agent, the transferee of such Claim shall also be bound by any vote (and the

---

[5] The Proposed Disclosure Statement and Plan, including exhibits, comprise approximately 195 pages. Accordingly, to reduce administrative costs associated with printing and mailing such a large document, the Debtors propose, in their discretion, to serve the Proposed Disclosure Statement and Plan (including exhibits) in the form of a CD-ROM. This procedure has been approved by this Court in other chapter 11 cases. See, e.g., In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. July 21, 2009); In re Special Devices Inc., Case No. 08-13312 (MFW) (Bankr. D. Del. June 12, 2009); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. April 18, 2006); In re Premium Papers Holdco, Case No. 06-10269 (CSS), (Bankr. D. Del. November 22, 2006). However, any party receiving the CD-ROM may request, at the Debtors' expense, paper copies of the Proposed Disclosure Statement, together with the Plan and other exhibits annexed thereto, from the Voting Agent (as defined below).

consequences thereof) made on such Ballot by the holder of such transferred Claim as of the Voting Record Date.

21.    The Debtors expect that they will be able to commence distribution of the Solicitation Packages immediately upon the entry of the Solicitation Order (the "Solicitation Commencement Date") to all applicable holders of Claims and equity interests in the Debtors. To avoid duplication and reduce expense, the Debtors propose that, to the extent practicable, holders who hold more than one Claim or equity interest in the Debtors in more than one Class entitled to receive a Solicitation Package should only receive one Solicitation Package containing all necessary Ballots.

22.    Under the Plan, holders of Administrative Expense Claims, Priority Tax Claims and Professional Compensation and Reimbursement Claims will receive distributions, but their Claims are unclassified for purposes of voting to accept or reject the Plan. To the extent that such parties are not otherwise entitled to receive a Solicitation Package, on the Solicitation Commencement Date the Debtors will commence distribution of (a) the CD-ROM containing the Proposed Disclosure Statement, together with the Plan and other exhibits annexed thereto, (b) the Solicitation Order, excluding exhibits annexed thereto, and (c) the Confirmation Hearing Notice, to all holders of such Claims.

23.    In addition, to the extent that the following parties are not otherwise entitled to receive a Solicitation Package under the procedures previously described, on the Solicitation Commencement Date, the Debtors will commence distribution of (a) the CD-ROM containing the Proposed Disclosure Statement, together with the Plan and other exhibits annexed thereto, (b) the Solicitation Order, excluding exhibits annexed thereto and (c) the Confirmation Hearing Notice to: (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the agent

bank for the Prepetition Lenders; (iv) the Debtors' prepetition indenture trustees; (v) the Securities and Exchange Commission; and (vi) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

### ii.    Notices to Holders of Unimpaired Claims

24.    Allowed Claims in Class 1 (Other Priority Claims), Allowed Claims in Class 2 (Secured Tax Claims), Allowed Claims in Class 3 (Other Secured Claims), Allowed Claims in Class 7 (SFTP and SFTP Subsidiary Unsecured Claims) and Allowed Claims in Class 17 (Preconfirmation Subsidiary Equity Interests) are Unimpaired and therefore, are conclusively presumed to accept the Plan. See 11 U.S.C. § 1126(f). Consistent with section 1126(f) of the Bankruptcy Code, all holders of such Claims and equity interests in the Debtors will receive the Solicitation Package; however, such package will not include a Ballot. Instead of a Ballot, the Solicitation Packages for such holders will include a notice of non-voting status, substantially in the forms annexed to the Solicitation Order as Exhibit 2 (each, an "Unimpaired Notice of Non-Voting Status").

### iii.    Notices to Deemed to Reject Classes

25.    Pursuant to the terms of the Plan, holders of Claims in Class 15 (Funtime, Inc. Unsecured Claims), Class 16 (Subordinated Securities Claims), Class 18 (Preconfirmation SFO Equity Interests) and Class 19 (Preconfirmation SFI Equity Interests) (collectively, the "Rejecting Classes") are impaired, shall neither receive nor retain any property on account of their Claims or equity interests in the Debtors and thus, are presumed to reject the Plan. See id. § 1126(g). The Debtors propose that they not be required to transmit a Solicitation Package to the Rejecting Classes because sending a Solicitation Package to such parties is unnecessary, potentially confusing, and would represent an unnecessary cost to the Debtors' estates. Instead, the Debtors propose to mail or cause to be mailed, by first class mail, within five (5) business

days after Solicitation Commencement Date to each member of a Rejecting Class: (a) the Confirmation Hearing Notice and (b) the appropriate notice of non-voting Status, substantially in the form annexed to the Solicitation Order as Exhibit 3 (the "Rejecting Class Notice").

26.     The Confirmation Hearing Notice, which will be sent to, among others, holders of Claims and equity interests in the Debtors in each Class as well as holders of Administrative Expense Claims, Priority Tax Claims and Professional Compensation and Reimbursement Claims, also advises any party wishing to obtain a copy of either or both of the Proposed Disclosure Statement and the Plan to do so by (a) accessing the Debtors' website at www.kccllc.net/SixFlags or (b) contacting Kurtzman Carson Consultants LLC ("KCC"), the Voting Agent (i) by first class mail addressed to Six Flags Ballot Processing Center c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245; (ii) by electronic mail at SixFlagsInfo@kccllc.com; or (iii) by telephoning the Voting Agent at (866) 967-1783, to obtain a copy of the documents at the Debtors' expense.

### iv.     Undeliverable or Returned Notices and Solicitation Packages

27.     In compliance with Bankruptcy Rules 2002 and 3017, the Debtors sent the Notice of the Disclosure Statement Hearing to the Noticed Parties. The Debtors anticipate that some Notices of the Disclosure Statement Hearing may be returned by the United States Postal Service or other carrier as undeliverable. The Debtors believe that it would be costly and wasteful to distribute Solicitation Packages, Confirmation Hearing Notices or Rejecting Class Notices to the same addresses to which undeliverable Notices of Disclosure Statement Hearing were distributed.

28.     In this regard, the Debtors seek the Court's approval for a departure from the notice rule as follows: (a) the Debtors shall be excused from giving notice or providing service of any kind upon any person or entity to whom the Debtors mailed a Notice of the Disclosure

Statement Hearing or any other notices or materials approved for distribution pursuant to the Solicitation Order and received any of such notices returned by the United States Postal Service or other carrier marked "undeliverable as addressed", "moved – left no forwarding address", or "forwarding order expired", or other similar reason, unless the Debtors have been informed in writing by such person or entity of that person's or entity's new address; and (b) the Debtors shall be excused from re-mailing the Solicitation Package, or other notices, as the case may be, to those persons or entities whose addresses differ from the addresses in the claims register or the Debtors' records as of the Voting Record Date. If a creditor has changed its mailing address after the Petition Date, the burden shall be on the creditor or party-in-interest, not the Debtors, to advise the Voting Agent or the Debtors of its new address prior to the Voting Record Date.

29. The Debtors believe that the proposed solicitation, notice and service procedures and other relief requested herein are cost-effective, provide adequate notice and an opportunity to be heard and are in the best interests of the Debtors' estates, their creditors and other parties-in-interest. Accordingly, the Debtors submit that good cause exists for the relief requested herein.

C. **Approving Forms of Ballots and Establishing Procedures for Voting on the Plan**

i. **Approving Forms of Ballots, Distribution Thereof and Related Issues**

30. Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot to "creditors and equity security holders entitled to vote on the plan." The Debtors propose to distribute one or more individual ballots (including instructions attached thereto), substantially in the forms annexed to the Solicitation Order as Exhibit 4 (collectively, "Individual Ballots"), to certain creditors in the Voting Classes. In addition, certain creditors in the Voting Classes hold Claims through brokers, banks or other nominees (each, a "Master Ballot Agent"). In lieu of distributing Individual Ballots to such creditors, the Debtors propose to distribute a master ballot

(including instructions attached thereto), substantially in the forms annexed to the Solicitation Order as Exhibit 4 (collectively, "Master Ballots"), and the appropriate number of beneficial owner ballots (including instructions), substantially in the forms annexed to the Solicitation Order as Exhibit 4 (collectively, "Beneficial Owner Ballots" and together with the Master Ballots and the Individual Ballots, the "Ballots"), to each Master Ballot Agent.

31.    In accordance with Bankruptcy Rule 3017(d), the Ballots are based on Official Form No. 14 but have been modified to address the particular aspects of the Bankruptcy Cases and to include certain additional information that the Debtors believe to be relevant and appropriate for each Voting Class.   The appropriate Ballot, along with return envelopes addressed to the address set forth on such Ballot, will be distributed to holders of Claims in the Voting Classes and Master Ballot Agents, as applicable, in the following Classes (collectively, the "Voting Classes"):

| Class | Type of Claim |
|-------|---------------|
| 4 | SFTP Prepetition Credit Agreement Claims |
| 5 | SFTP TW Guaranty Claims |
| 6 | SFTP TW Indemnity Claims |
| 8 | SFO Prepetition Credit Agreement Claims |
| 9 | SFO TW Guaranty Claims |
| 10 | SFO TW Indemnity Claims |
| 11 | SFO Unsecured Claims |
| 12 | SFI TW Guaranty Claims |
| 13 | SFI TW Indemnity Claims |
| 14 | SFI Unsecured Claims |

32.    All other Classes of Claims and equity interests in the Debtors are either Unimpaired or are impaired and are not entitled to receive or retain any property under the Plan and thus, in each case, are not entitled to vote on the Plan. Accordingly, such holders will not receive a Ballot.

## ii. Establishing Voting Deadline for Receipt of Ballots

33. Bankruptcy Rule 3017(c) provides, in relevant part, that "on or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan." The Debtors will use their reasonable efforts to commence solicitation on the Solicitation Commencement Date and to complete mailing within five (5) business days of such date.

34. Based on this schedule, the Debtors respectfully request that the Court establish December 11, 2009 at 4:00 p.m. (Pacific Standard Time) as the deadline by which all Ballots must be properly executed, completed, delivered to, and received by the Voting Agent (the "Voting Deadline"). Ballots must be returned to the Voting Agent by first class mail postage prepaid, by personal delivery, or by overnight courier. The proposed Voting Deadline is approximately thirty-six (36) days after the Solicitation Commencement Date, and approximately twenty-nine (29) days after the proposed date for concluding the mailing of Solicitation Packages. The Debtors submit that such solicitation period is a sufficient period within which creditors can make an informed decision to accept or reject the Plan. The Debtors further request authority to extend the Voting Deadline for holders of Claims in Voting Classes, if necessary, without further order of the Court.

## iii. Approval of Procedures for Vote Tabulation

### a. Appointment of KCC as Voting Agent

35. Pursuant to an order of this Court, entered July 14, 2009, KCC (in such capacity, the "Voting Agent") was retained to, among other things, provide balloting services to the Debtors. In connection therewith, the Voting Agent will perform all services relating to the solicitation of votes on the Plan (collectively, the "Balloting Services"), including, without limitation:

| a. | Mailing the Confirmation Hearing Notice; |
|---|---|
| b. | Identifying holders of Claims in Voting Classes and holders of Claims and equity interests in the Debtors that are not entitled to vote on the Plan; |
| c. | Preparing voting reports for each Class and maintaining such information in a database; |
| d. | Where appropriate, printing Ballots specific to each creditor, indicating Voting Class, voting amount of Claim and other relevant information; |
| e. | Coordinating the mailing of Ballots and providing an affidavit verifying the mailing of Ballots; |
| f. | Receiving Ballots and tabulating the votes on the Plan; and |
| g. | Providing any other balloting related services the Debtors may from time to time request including, without limitation, providing testimony at the Confirmation Hearing with respect to the Balloting Services and the results of the vote on the Plan. |

### b. **Ballot Tabulation**

36. The Debtors propose that each holder of a Claim in a Voting Class be entitled to vote the amount of such Claim as is held as of the Voting Record Date.

37. The Debtors further propose that if any party wishes to have its Claim allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot it received or if any party that did not receive a Ballot wishes to have its Claim temporarily allowed for voting purposes only, such party must serve on the Debtors and file with the Court, on or before the later of (i) fifteen (15) days after service of the Confirmation Hearing Notice or (ii) fifteen (15) days after the date of service of notice of objection on such party to any of such party's underlying Claims, a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (a "3018 Motion"). A 3018 Motion must set forth with particularly the amount and classification such party believes its Claim should be allowed for voting purposes, and supporting evidence. In respect of any timely-filed 3018 Motion, the

Ballot in question shall be counted (a) in the amount established by the Court in an order entered on or before the Voting Deadline or (b) if such an order has not been entered by the Voting Deadline and unless the Debtors and the party have come to an agreement as to the relief requested in the 3018 Motion, in an amount equal to the preprinted amount on the Ballot or, in the event a party did not receive a Ballot, such party shall not have a Ballot counted at all. Subject to the Court's calendar, and notwithstanding the foregoing, the Debtors propose that any hearing to consider 3018 Motions be held on or prior to the Voting Deadline.

38. Unless a 3018 motion is timely-filed in accordance with the procedures set forth above, if a Claim in a Voting Class is contingent, unliquidated, or disputed, or if a Claim in a Voting Class is otherwise deemed disputed under the Plan, the Debtors propose that such Claim be temporarily allowed, solely for voting purposes, in the amount of $1.00.

39. The Debtors request that whenever a party casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last Ballot received before the Voting Deadline be deemed to reflect the voter's intent and supersede any prior Ballots. If a holder of Claims casts Ballots that are received by the Voting Agent on the same day, but which are voted inconsistently, the Debtors request that such Ballots not be counted.

40. The Debtors further request that creditors with multiple Claims within a particular Voting Class must vote all of their Claims within such Class either to accept or reject the Plan and may not split their vote(s). Accordingly, an individual Ballot that partially rejects and partially accepts the Plan will not be counted. On account of this, to the extent that a party asserts numerous Claims in a single Voting Class, the Debtors request that each such party only be allowed one (1) vote for that Class, and only be allowed to submit a single Ballot representing its vote to accept or reject the Plan with respect to such Class. Notwithstanding the foregoing,

the Debtors further request that a holder of Claims in more than one Voting Class must submit a separate Ballot for each class of Claims.

41.     The following types of Ballots will not be counted in determining whether the Plan has been accepted or rejected:

a.     any Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan;

b.     any Ballot received after the Voting Deadline, unless the Debtors extend or waive such deadline;

c.     any Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

d.     any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

e.     any Ballot cast by a person or entity that does not hold a Claim in a Voting Class;

f.     any unsigned or non-original Ballot; or

g.     any Ballot transmitted to the Voting Agent by facsimile or other electronic means.

42.     In addition, the Debtors propose that the following voting procedures and standard assumptions be used in tabulating the ballots:

a.     The method of delivery of Ballots to be sent to the Voting Agent or Master Ballot Agent, as applicable, is at the election and risk of each creditor, but such delivery will be deemed made only when the original, executed Ballot is actually received by the Voting Agent;

b.     The Debtors, in their sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time including failure to timely file such Ballot, either before or after the Voting Deadline, and without notice or further order of the Court. Notwithstanding the foregoing and except as provided below, Debtors may, in their sole discretion, reject any defective

Ballot as invalid and therefore, decline to utilize it in connection with confirmation of the Plan;

c.    After the Voting Deadline, no vote may be withdrawn or modified without the prior consent of the Debtors;

d.    Subject to any contrary order of the Court, the Debtors reserve the absolute right to reject any and all Ballots not proper in form;

e.    Unless waived by the Debtors or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived; and

f.    None of the Debtors, the Voting Agent or any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liabilities for failure to provide such notification. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

43.    Similar procedures have been approved in other chapter 11 cases in this District. See, e.g., In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. July 21, 2009); In re Special Devices Inc., Case No. 08-13312 (MFW) (Bankr. D. Del. June 12, 2009); In re Premium Papers Holdco, Case No. 06-10269 (CSS), (Bankr. D. Del., Nov. 22, 2006); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. April 18, 2006); In re QUTI Corp., f/k/a Questron Tech., Inc., Case No. 02-10319 (PJW), (Bankr. D. Del., Aug. 26, 2005); In re Cone Mills Corp., Case No. 03-12944 (PJW), (Bankr. D. Del., Aug. 20, 2004); In re BRAC Group, Inc. (f/k/a Budget Group Inc.), Case No. 02-12152 (CGC) (Bankr. D. Del., Feb. 4, 2004); In re Med. Wind Down Holdings I, Inc., f/k/a Maxxim Medical Group, Inc., Case No. 03-10438 (PJW) (Bankr. D. Del., April 2, 2004); In re Alterra Healthcare Corp., Case No. 03-10254 (MFW) (Bankr. D. Del., Sept. 15, 2003). The Debtors submit that the procedures set forth herein provide for a fair and equitable voting process.

## IV. ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF THE PLAN

### A. Setting the Confirmation Hearing

44.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall
> fix a time within which the holders of claims and interests may
> accept or reject the plan and may fix a date for the hearing on
> confirmation.

45.    In accordance with Bankruptcy Rule 3017(c) and in view of the Debtors'

proposed solicitation schedule outlined herein, the Debtors request that a hearing on

confirmation of the Plan (the "Confirmation Hearing") be scheduled, subject to the Court's

calendar, approximately eleven (11) days after the proposed Voting Deadline. Accordingly, in

accordance with the Bankruptcy Rules and in light of the solicitation schedule described above,

the Debtors propose that, subject to the Court's calendar, December 22, 2009 be fixed by the

Court as the date for the Confirmation Hearing. Such date will give the Debtors sufficient time

to solicit votes on the Plan and to notify the required parties of the date, place and time of the

Confirmation Hearing. The Debtors also request that the Court order that the Confirmation

Hearing may be continued from time to time without further notice to creditors or other parties-

in-interest.

### B. Establishing Procedures for the Confirmation Hearing

46.    Bankruptcy Rules 2002(b) and (d) requires not less than twenty-five (25) days'

notice to all creditors, indenture trustees and equity security holders of the time fixed for filing

objections to confirmation of a plan of reorganization and the hearing to consider confirmation of

a plan of reorganization. In accordance with the Bankruptcy Rules, the Debtors propose to

provide all known creditors, parties filing a notice of appearance in the Bankruptcy Cases,

governmental units having an interest in the Bankruptcy Cases and holders of equity interests in

24

the Debtors, each as of the Voting Record Date (the "Confirmation Hearing Notice Parties"), with a copy of the notice of the confirmation hearing, substantially in the form annexed to the Solicitation Order as Exhibit 5 (the "Confirmation Hearing Notice"). The Confirmation Hearing Notice shall set forth, among other things, (a) the Voting Deadline for submission of Ballots to accept or reject the Plan, (b) the Plan Objection Deadline (as defined below), and (c) the date, place and time of the Confirmation Hearing. Such notice will be served contemporaneously with the Solicitation Packages, which, as mentioned above, will be sent within five (5) business days of the Solicitation Commencement Date, but in no event will any Confirmation Hearing Notices be served less than twenty-five (25) days in advance of the Plan Objection Deadline.

47.     Furthermore, to supplement notice of the Confirmation Hearing by mail, the Debtors will publish, on one occasion, at least twenty-five (25) days prior to the Plan Objection Deadline, in the National Edition of *USA Today*, a notice of the Confirmation Hearing, substantially in the form annexed to the Solicitation Order as Exhibit 6 (the "Publication Notice"). Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." The Debtors submit that publication of the Publication Notice will provide sufficient notice of the Plan Objection Deadline, the Confirmation Hearing and other relevant deadlines to persons or entities who many not otherwise receive the Confirmation Hearing Notice by mail.

48.     The Debtors submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, request that the Court approve such notice as adequate.

## C.   Establishing Procedures for the Filing of Objections to Confirmation of the Plan

49.   Bankruptcy Rule 3020(b) provides that objections to confirmation of a proposed plan of reorganization must be filed with the Court and served on the Debtors, the trustee, any committee appointed under the Bankruptcy Code and on any other entity designated by the Court, within a time specified by the Court.

50.   To permit the Debtors adequate time to respond to objections prior to the Confirmation Hearing, the Debtors request that December 11, 2009 at 4:00 p.m. (Eastern Standard Time) be fixed by the Court as the last date for filing and serving written objections to confirmation of the Plan (including any supporting memoranda) (the "Plan Objection Deadline"). The Debtors request that the Court direct that objections, if any, to confirmation of the Plan: (i) be made in writing; (ii) conform to the Bankruptcy Rules and Local Rules; (iii) state the name and address of the objecting party and the amount and nature of the Claim or interest of such party; (iv) state with particularity the legal and factual basis and nature of any objection to the Plan and, if practicable, provide a proposed modification to the Plan that would resolve such objection; and (v) be filed with the Court, together with proof of service, and served so that they are received on or before the Plan Objection Deadline by the following parties: (i) counsel for the Debtors, Paul Hastings, Janofsky & Walker, LLP, 191 North Wacker Drive, 30th Floor, Chicago, IL 60606 (Attention: Paul E. Harner, Esq. and Steven T. Catlett, Esq.), and Richards, Layton & Finger, P.A., One Rodney Square, 920 King Street, Wilmington, Delaware 19801 (Attention: Daniel J. DeFranceschi, Esq.); (ii) counsel for the Creditors' Committee, Brown Rudnick LLP, One Financial Center, Boston, Massachusetts 02111 (Attention: Steven B. Levine, Esq.), Brown Rudnick LLP, Seven Times Square, New York, New York 10035 (Attention: Neal D'Amato, Esq.), and Pachulski, Stang, Ziehl & Jones LLP, 919 Market Street, 17th Floor, P.O. Box 8705,

Wilmington, Delaware 19899-8705 (Attention: Laura Davis Jones, Esq.); (iii) counsel for the agent bank for the Prepetition Lenders, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017-3954 (Attention: Kenneth S. Ziman, Esq.); and (iv) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attention: Richard L. Schepacarter, Esq.).

51.     The Debtors submit that the proposed timing for filing and service of objections and proposed modifications to the Plan, if any, will afford the Court, the Debtors and other parties-in-interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing.

52.     The Debtors further request that it be allowed to file its reply to any timely-filed objections to the Plan by no later than 5:00 p.m. (prevailing Eastern Time) two (2) business days before the Confirmation Hearing.

## NOTICE

53.     Notice of this Motion has been given to: (a) the U.S. Trustee; (b) counsel for the Creditors' Committee; (c) counsel for the agent bank for the Prepetition Lenders; (d) the Debtors' prepetition indenture trustees; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; and (g) those parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

54.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the aforementioned reasons, the Debtors respectfully request that this Court enter the proposed Solicitation Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 16, 2009
       Wilmington, Delaware

Respectfully submitted,

_____
Daniel J. DeFranceschi (DE 2732)
L. Katherine Good (DE 5101)
Zachary I. Shapiro (DE 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
       good@rlf.com
       shapiro@rlf.com

       -and-

Paul E. Harner (IL 6276961)
Steven T. Catlett (IL 6269229)
Christian M. Auty (IL 6285671)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
191 North Wacker Drive, 30th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
Email:  paulharner@paulhastings.com
        stevencatlett@paulhastings.com
        christianauty@paulhastings.com

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

LEGAL_US_E # 84809642 3
RLF1-3434610-2