# Exhibit A

**New Common Stock Term Sheet**

# SIX FLAGS, INC.

# $450,000,000 COMMON STOCK

## Summary of Principal Terms

The following Summary of Principal Terms (this "**New Common Stock Term Sheet**") provides an outline of a proposed Common Stock offering by the Issuer identified below in connection with and upon the emergence of the Issuer and its affiliates (collectively, the "**Debtors**") from chapter 11 proceedings pursuant to a chapter 11 plan of reorganization, the terms of which are described in more detail in the Backstop Commitment Agreement (defined below) to which this New Common Stock Term Sheet is attached (the "**Plan**"). The actual terms and conditions upon which any purchaser might purchase the Shares are subject to execution and delivery of definitive legal documentation, by all required parties and such other terms and conditions as are determined by the parties. This New Common Stock Term Sheet and the information contained herein is strictly confidential and may not be shared with any person or entity without the prior written consent of the Majority Backstop Purchasers (as defined below). Unless otherwise defined herein, each capitalized term used in this New Common Stock Term Sheet shall have the same meaning ascribed to such term in the Plan.

| | |
|---|---|
| **Issuer:** | Six Flags, Inc. (the "*Issuer*"). |
| **Securities Offered:** | $450,000,000 in the aggregate (the "*Offering Amount*") of Common Stock (the "*Shares*"). |
| **Offering:** | The Shares, representing 69.77% of the New Common Stock of the Issuer on the Effective Date (as defined below), subject to dilution in connection with awards issued on or after the Effective Date under the Long-Term Incentive Plan, will be offered on a limited basis and as provided in the Offering Procedures (the "*Offering*") (i) to each Eligible Holder its Limited Offering Pro Rata Share and (ii) to the extent less than all of the Shares are issued to the Accepting SFO Noteholders, to the entities which agree to backstop the Offering pursuant to the Backstop Commitment Agreement (defined below), the initial list of which is set forth on Schedule I hereto (the parties listed on Schedule I, the "*Backstop Purchasers*").[1] For the avoidance of doubt, a Backstop Purchaser shall be entitled to participate in the Offering |

---

[1] The net affect of the Offering, (i) assuming the Offering is fully subscribed for by Eligible Holders and (ii) as a result of the application of each Eligible Holder's Limited Offering Pro Rata Share, all Eligible Holders (including Backstop Purchasers solely in their capacity as Eligible Holders) would acquire approximately 25% of the Shares (or approximately 5%, excluding purchases by Backstop Purchasers that are Eligible Holders), and the Backstop Purchasers would acquire approximately 75% of the Shares (or approximately 95% of the Shares, including purchases by Backstop Purchasers in their capacity as Eligible Holders).

in its capacity as a SFO Noteholder.

On the terms and subject to the conditions set forth in that certain backstop commitment agreement, dated as of November 6, 2009 (the "***Backstop Commitment Agreement***"), each Backstop Purchaser will severally commit to purchase its respective Commitment Percentage of Shares in the aggregate principal amount equal to $450,000,000. For purposes hereof, a Backstop Purchaser's "***Commitment Percentage***" is the percentage for such Backstop Purchaser set forth on <u>Schedule I</u> hereto. Subject to the terms and conditions of the Backstop Commitment Agreement, the rights to subscribe for the purchase of the Shares shall be non-transferrable.

The Offering will only be made to accredited investors in a fashion that will be exempt from registration under the Securities Act of 1933 as amended (the "***1933 Act***").

**Purchase Price:** The Offering will be at a purchase price based upon an assumed enterprise value of the Issuer on the Effective Date of $1.335 billion.

**Use of Proceeds:** Proceeds of the Shares may only be used to make payments required to be made on and after the Effective Date under the Plan, including, without limitation, repayment of all amounts owing under the Prepetition Credit Agreement.

**Fees:** In the event the Issuer enters into a financing transaction with parties other than the Backstop Purchasers or does not issue the Shares on the terms set forth in this New Common Stock Term Sheet, the Debtors shall pay to the Backstop Purchasers an aggregate break up fee in Cash equal to 5.0% of the Offering Amount (the "***Break Up Fee***"), which fee shall be fully earned upon entry of the Approval Order by the Bankruptcy Court and shall be payable in full in Cash upon the confirmation of any Chapter 11 plan of reorganization (other than the Plan) or liquidation with respect of the Debtors.

**Registration Rights:** To the extent contemplated by the Plan, Purchasers of Shares may be entitled to become party to a Registration Rights Agreement all in form and substance satisfactory to the Majority Backstop Purchasers.

**Conditions Precedent To the Closing:** The obligation of the Backstop Purchasers to purchase the Shares will be conditioned upon satisfaction of each of the following; <u>provided</u>, that each of the following conditions may be waived in writing by the Majority Backstop Purchasers:

74

- The Postconfirmation Organizational Documents shall be in form and substance acceptable to the Majority Backstop Purchasers;

- The Registration Rights Agreement shall be in form and substance acceptable to the Majority Backstop Purchasers;

- Except as otherwise provided, the Plan, the Disclosure Statement, the Solicitation Order, the Confirmation Order and any Plan supplemental documents (collectively, the "*Plan Documents*") shall be in form and substance acceptable to the Majority Backstop Purchasers in their discretion exercised reasonably;

- All motions and other documents to be filed with the Bankruptcy Court in connection with the offer and sale of the Shares, and payment of the fees contemplated under the Plan, the Backstop Commitment Agreement, this New Common Stock Term Sheet and the Offering Procedures shall be in form and substance satisfactory to the Majority Backstop Purchasers;

- All motions and other documents to be filed with the Bankruptcy Court in connection the approval of the Postconfirmation Organizational Documents shall be in form and substance satisfactory to the Majority Backstop Purchasers;

- All reasonable out-of-pocket fees and expenses (including reasonable fees and expenses of counsel and the fees and expenses of financial advisors) required to be paid to the Backstop Purchasers under the Plan, the Backstop Commitment Agreement, this New Common Stock Term Sheet and/or the Offering Procedures have been paid;

- The Bankruptcy Court shall have entered an order (the "*Approval Order*"), in form and substance acceptable to the Majority Backstop Purchasers, which order shall (without limitation) authorize the Debtors to execute the Backstop Commitment Agreement and authorize and approve the transactions contemplated therein and herein, including (without limitation) the payment of all consideration and fees contemplated under the Backstop Commitment Agreement and this New Common Stock Term Sheet, and authorize the indemnification provisions set forth in the Backstop Commitment Agreement, which order shall be in full force and effect and shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the Majority

|   |   |
|---|---|
|   | Backstop Purchasers; |
|   | - The Adjusted EBITDA (as such term is defined in the Debtors' financial release dated as of November 2, 2009) for the twelve (12) months ending on November 30, 2009 shall exceed $180 million; |
|   | - Any and all governmental and third party consents and approvals necessary in connection with the offer and sale of the Shares, the execution and filing where applicable, of the Postconfirmation Organizational Documents and the transactions contemplated hereby and thereby shall have been obtained and shall remain in effect; |
|   | - The Exit Facility Loan Documents and the documents governing the New TW Loan (as such terms are defined in the Plan) shall be in form and substance acceptable to the Majority Backstop Purchasers; and |
|   | - The Plan shall have become, or simultaneously with the issuance of the Shares will become, effective. |
| **Termination of Backstop Commitments:** | The commitment of the Backstop Purchasers to purchase the Shares set forth in the Backstop Commitment Agreement (the "***Backstop Commitment***") shall terminate and all of the obligations of the Debtors (other than the obligations of the Debtors to pay the reimbursable fees and expenses and the Break Up Fee and to satisfy their indemnification obligations set forth in the Backstop Commitment Agreement) shall be of no further force or effect, at the election of and upon the giving of written notice of termination by the Majority Backstop Purchasers, in the event that any of the following occurs, each of which may be waived in writing by the Majority Backstop Purchasers: |
|   | - the Plan and Disclosure Statement, each in form and substance acceptable to the Majority Backstop Purchasers in their discretion exercised reasonably, are not filed by the Debtors with the Bankruptcy Court on or before November 6, 2009; |
|   | - the Bankruptcy Court fails to enter the Approval Order on or before November 24, 2009; |
|   | - the Solicitation Order, in form and substance acceptable to the Majority Backstop Purchasers in their discretion exercised reasonably, has not been entered by the Bankruptcy Court on or before November 24, 2009; |
|   | - the Debtors fail to commence a solicitation of votes for acceptance of the Plan on or before November 27, 2009; |
|   | - the Approval Order does not become final on or before |

December 5, 2009;

- the Postconfirmation Organizational Documents, each in form and substance acceptable to the Majority Backstop Purchasers, are not filed under a Plan Supplement on or before the date that is ten days prior to the voting deadline on the Plan;

- the Confirmation Order, in form and substance acceptable to the Majority Backstop Purchasers in their discretion exercised reasonably, has not been entered by the Bankruptcy Court on or before December 31, 2009;

- the Confirmation Order shall not have become a final order by January 11, 2010;

- the Effective Date does not occur on or before January 11, 2010; provided, that the terminating party is not then in material breach of its obligations hereunder;

- the withdrawal, amendment, modification or filing of a pleading seeking to amend or modify, the Plan, the Disclosure Statement or any document related to the Plan or Disclosure Statement (including, without limitation, any motion, notice, exhibit, appendix or order) by the Debtors, which withdrawal, amendment, modification or filing is inconsistent with this New Common Stock Term Sheet;

- the filing by the Debtors of any motion or other request for relief seeking (i) to voluntarily dismiss any of the Chapter 11 Cases, (ii) conversion of any of the Chapter 11 Cases to chapter 7 of the Bankruptcy Code, or (iii) appointment of a trustee or an examiner with expanded powers pursuant to Section 1104 of the Bankruptcy Code in any of the Chapter 11 Cases;

- the entry of an order by the Bankruptcy Court (i) dismissing any of the Chapter 11 Cases, (ii) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (iii) appointing a trustee or an examiner with expanded powers pursuant to Section 1104 of the Bankruptcy Code in any of the Chapter 11 Cases; or (iv) making a finding of fraud, dishonesty, or misconduct by any officer or director of the Debtors;

- a material breach by the Debtors of any of their obligations under this New Common Stock Term Sheet or the Backstop Commitment Agreement that is not cured within five (5) business days after receipt of written notice thereof to the Debtors from the Majority Backstop Purchasers;

- any court of competent jurisdiction or other competent

77

|  | governmental or regulatory authority issues an order making illegal or otherwise restricting, preventing, or prohibiting the restructuring set forth in this New Common Stock Term Sheet in a manner that cannot be reasonably remedied by the Debtors or the Majority Backstop Purchasers; and |
|---|---|
|  | one or more of the conditions precedent to occurrence of the Effective Date set forth in this New Common Stock Term Sheet or to the obligations of the Backstop Purchasers set forth in the Backstop Commitment Agreement is not satisfied or, in the judgment of the Majority Backstop Purchasers, becomes impossible to satisfy on or before the Effective Date. |
| **Effective Date:** | The effective date of the Plan as ordered by the Bankruptcy Court, it being anticipated that such date will occur on or before January 11, 2010 (the "*Effective Date*"). |
| **Expenses:** | Whether or not the transactions contemplated hereunder or the Backstop Commitment Agreement are consummated, the Debtors shall pay within 10 days of demand the reasonable and documented fees, expenses, disbursements and charges of the Backstop Purchasers incurred previously or in the future relating to the exploration and discussion of the restructuring of the Debtors, alternative financing structures to the Backstop Commitment or to the preparation and negotiation of the Backstop Commitment Agreement, the Plan, the Offering Procedures, this New Common Stock Term Sheet, the Plan Documents or the Postconfirmation Organizational Documents (including, without limitation, in connection with the enforcement or protection of any of rights and remedies under the Postconfirmation Organizational Documents) and, in each of the foregoing cases, the proposed documentation and the transactions contemplated thereunder, including, without limitation, the fees and expenses of counsel to the Backstop Purchasers, and the financial advisors to the Backstop Purchasers. |