IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PREMIER INTERNATIONAL HOLDINGS INC., et al.,<br><br>    Debtors. | Chapter 11<br><br>Case No. 09-12019 (CSS)<br><br>Jointly Administered |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO COMPEL THE SFO NOTEHOLDERS COMMITTEE TO COMPLY WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019

The Official Committee of Unsecured Creditors (the "Committee") of Premier International Holdings, Inc. and certain of its subsidiaries and affiliates (collectively, the "Debtors"), by and through its undersigned co-counsel, hereby submits this Motion (the "Motion") to Compel the Informal SFO Noteholders Committee to Comply with Federal Rule of Bankruptcy Procedure 2019 (the "Motion"). In support of the Motion, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Rule 2019, by its terms, mandates disclosures by informal or ad hoc committees, including disclosure of the nature and amount of claims or interests held by group members, as well as when such claims or interests were acquired or sold. The Committee fully recognizes the split in authorities, both within the District of Delaware and among the various judicial districts, as to whether strict compliance with Rule 2019 must be required of every informal committee, in

every case.[1] But, under any interpretation of Rule 2019, particular facts and circumstances will justify compelled, detailed disclosure regarding the claims and interests of ad hoc or informal committee members. Here, such facts and circumstances exist.

2. The actions of the SFO Noteholders Committee in connection with these cases have so skewed the reorganization process as to warrant closer scrutiny of that group's actual motives (by shedding light on the group members' actual financial interests and incentives). More specifically, the SFO Noteholders Committee has arrogated itself to a central role in these cases -- formulating and imposing on the Debtors a plan structure that significantly prejudices the rights of other unsecured creditors (with the Debtors effectively abdicating their duties to other unsecured creditors (in particular, unsecured creditors of Debtor Six Flags, Inc.) in order to push the SFO Noteholders Committee's plan of reorganization through this Court).

3. Upon information and belief, this hijacking of the reorganization process was accomplished, in part, through representations to the Debtors that the members of the SFO Noteholders Committee held SFI Note claims (as defined herein) at the relevant times, and, therefore, the interests of SFI Noteholders were being adequately accounted for in the negotiations. But, upon information and belief, certain members of the SFO Noteholders Committee were, at the time, actively engaging in transactions designed to shield themselves from the same negative treatment they were then seeking to impose on other unsecured creditors. Further, the Debtors' complacency at this time was accompanied by the grant to existing management of significant incentives to support the SFO Plan (including continued employment and rich equity packages in the reorganized Debtors).

---

[1] The Committee further recognizes that the disclosure of information required by Rule 2019 was raised on December 18, 2009 in the context of document requests propounded by the Committee. Given the circumstances underlying the Committee's request for enforcement of Rule 2019 in these cases, the Committee believes the Court should be afforded the benefit of written submissions by the parties (including this Motion) before being asked to render a final decision on the issue.

-2-

4. It is, accordingly, imperative for the Court and parties in interest to understand the interplay between the SFO Noteholders Committee's claims trading, the incentives given to management, and the terms of the plan of reorganization now championed by the Debtors. But, the Rule 2019 statement filed by the SFO Noteholders Committee is devoid of the detail required to determine how and when members of that group acquired or disposed of positions at various levels of the Debtors' capital structure or, more importantly, whether those transactions violated legal or ethical duties owed by the members of the SFO Noteholders Committee. Further, despite acknowledged transactions over the past three months involving claims against the Debtors, no effort has been made to update the SFO Noteholders Committee's initial, sparse Rule 2019 statement.

5. The information at issue thus is critical to the Court's determination of whether the plan devised by the SFO Noteholders Committee, and now advocated by the Debtors, was formulated and proposed with the requisite good faith. It is for this reason that, under the facts and circumstances of these cases, the Committee believes further information regarding the SFO Noteholders Committee's holdings should be disclosed (at the very least, to the Committee's professionals and/or to the Court, in camera).[2]

---

[2] The Committee is aware that Rule 2019 is often employed strategically for its in terrorem effect to deter case participation by ad hoc committee members otherwise reluctant to publicly reveal debt and/or equity trading strategies. As such, the Committee would propose receipt of Rule 2019 information be limited, in the first instance, to counsel for the Committee and counsel for the Debtors (if they so choose). If after reviewing such information, the Committee's concerns are further substantiated, a protocol could then be developed to bring relevant information to the attention of the Court, the United States Trustee and/or other parties, as appropriate.

## BACKGROUND

6. On June 13, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 13, 2009, the Court entered an order approving joint administration of these Chapter 11 Cases. As of the date of this filing, the Debtors remain in possession of their assets and manage their business as debtors-in-possession, pursuant to Bankruptcy Code Sections 1107(a) and 1108.

7. On June 26, 2009, the United States Trustee for the District of Delaware appointed the Committee.

8. On September 10, 2009, a self-styled informal committee (the "SFO Noteholders Committee") comprised of certain holders of 12.25% unsecured notes due 2016 (the "SFO Notes") first appeared in these cases. See *Notice of Appearance and Request for Service of Notices and Papers by Akin Gump Strauss Hauer & Feld LLP and Drinker Biddle & Reath LLP on Behalf of an Informal Committee Comprised of Certain Holders of 12.25% Unsecured Notes Due 2016 and HSBC Bank USA, National Association as Indenture Trustee*, filed on September 10, 2009 [Docket No. 592] (the "First NOA"); see also *Verified Statement of Akin Gump Strauss Hauer & Feld LLP and Drinker Biddle & Reath LLP Regarding Multiple Representations Pursuant to Fed. R. Bankr. P. 2019(a)*, filed on September 10, 2009 [Docket No. 593] (the "SFO 2019 Statement"). True and correct copies of the First NOA and the SFO 2019 Statement are attached hereto as Exhibits A and B, respectively. Neither the First NOA, nor the SFO 2019 Statement reveal member holdings of note claims against Debtor Six Flags, Inc. (the "SFI Notes"). The SFO Noteholders Committee has not supplemented the SFO 2019 Statement to reflect any transactions occurring since September 10, 2009.

9. Following its formation, the SFO Noteholders Committee actively opposed the initial plan of reorganization proposed by the Debtors, filing a motion to terminate exclusivity on September 14, 2009. [Docket No. 615] In connection with its attempt to terminate exclusivity, the SFO Noteholders Committee sought authority to file its own plan of reorganization, which plan would have provided enhanced treatment for members of the SFO Noteholders Committee. Thereafter, the SFO Noteholders Committee engaged in discussions with the Debtors, which resulted in the Debtors agreeing to seek confirmation of a revised plan on substantially the terms dictated to them by the SFO Noteholders Committee (the "SFO Plan"). Notably, under the SFO Plan, existing management will retain their employment. See Disclosure Statement, p. 85. Moreover, senior management negotiated for itself up to a 10% ownership stake in the post-emergence entity. See id. Even the Debtors' chairman of the board, Daniel Snyder, has been negotiating to save his job. See Mike Spector, *Synder's Six Flags Roller-Coaster Ride*, WALL ST. J., Dec. 19, 2009), attached hereto at Exhibit C, (interestingly, Mark Shapiro, the Debtors' CEO, believes that it is his "job" to convince Avenue Capital, the apparent leader of the SFO Noteholders Committee, to allow Snyder to retain his position as well).

10. The Committee was excluded from the discussions that led to the Debtors' adoption of the SFO Plan, as was an informal committee comprised of holders of SFI Notes. It is the Committee's belief that SFO Plan benefits SFO Noteholders at the expense of holders of SFI Notes.

11. The Debtors have since indicated that, at the time they decided to adopt the SFO Plan, they were of the belief that the SFO Noteholders Committee members with whom they were dealing also owned SFI Note claims. See Tr. of Proceedings, at pp. 196:3 – 198:1, In re: Premier Int'l Holdings Inc., No. 09-12019 (Bankr. D. Dec. 4, 2009), excerpts attached hereto as

Exhibit D. But, upon information and belief, at or about the same time the SFO Noteholder Committee was negotiating plan terms and representing themselves to own SFI Notes, members of the SFO Noteholder Committee were engaging in transactions to take advantage of, or at least protect themselves against, the negative treatment they were seeking to impose on holders of SFI Notes under the SFO Plan. For example, on or about September 23, 2009, members of the SFO Noteholders Committee held approximately $200,000,000 in SFI Note claims. See Sep. 23, 2009 Ltr. from Ira S. Dizengoff, Att'y to SFO Noteholders Informal Comm., to Official Comm. of Unsecured Creditors of Premier Int'l Holdings Inc., attached hereto as Exhibit E. Upon information and belief, the members of the SFO Noteholders Committee have since divested themselves of all SFI Note holdings. See, e.g., Michael Elkins Dep., pp. 34:9 - 35:2, Dec. 1, 2009, excerpts attached hereto as Exhibit F. The SFO Noteholders Committee has refused to disclose to the Committee when, and under what circumstances, during the plan negotiation process its members eliminated their exposure to SFI Note claims.

## JURISDICTION AND VENUE

12. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The statutory predicates for the relief requested herein are Bankruptcy Code Section 105 and Rule 2019.

## RELIEF REQUESTED

14. By this Motion, the Committee respectfully requests the Court to enter an Order, substantially in the form attached hereto: (a) compelling the SFO Noteholders Committee to comply with Rule 2019 by requiring each member of the SFO Noteholders Committee to

disclose the amount of each of their respective claims (current and previously-held) against each Debtor, the date(s) such claims were acquired, the amounts paid therefore and the dates and circumstances of any subsequent dispositions thereof; or (b) otherwise bar their participation in these cases until disclosure consistent with the Court's ruling on this Motion is completed.

## BASIS FOR RELIEF

15. By its terms, Rule 2019(a) provides that every entity or committee representing more than one creditor shall file a verified statement setting forth: (a) the name and address of the creditor; (b) the nature and amount of the claim and the time it was acquired (unless alleged to have been acquired more than one year prior to the bankruptcy filing); (c) a recital of the pertinent facts and circumstances in connection with the employment of the entity and, in the case of a committee, the name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged or the committee was organized and agreed to act; and (d) the amounts of claims owned by the entity, the members of the committee, the times when acquired, the amounts paid therefore, and any sales or dispositions thereof. See Fed. R. Bankr. P. 2019(a); see also In re Washington Mutual, Case No. 08-12229 [Docket No. 1952] (Bankr. Del. December 2, 2009) (MFW) (citing Fed. R. Bankr. P. 2019(a)), attached hereto at Exhibit G; In re Northwest Airlines, Inc. 363 B.R. 701, 702 (Bankr. S.D.N.Y. 2007). Rule 2019 also requires the prompt filing of supplemental statements, "setting forth any material changes in the facts contained in the statement filed . . . ." See Fed. R. Bankr. P. 2019(a).

16. In recent years, requests for disclosure under Rule 2019 have received differing receptions from courts around the country. Compare In re Washington Mutual, Case No. 08-12229 [Docket No. 1952] (Bankr. Del. December 2, 2009) (holding that ad hoc committees and

investor groups are required to comply with Rule 2019, including the requirement to disclose details of their trades in the debtor's debt); and In re Northwest Airlines, Inc. 363 B.R. 701, 702 (Bankr. S.D.N.Y. 2007) ("[b]y its plain terms, the Rule requires disclosure of the amounts of claims or interests owned by the members of the committee, the times when acquired, the amounts paid therefore, and any sales or other disposition thereof") (internal quotations omitted), with In re Scotia Pacific Co. LLC, Case No. 07-20027 [Docket No. 659] (Bankr. S.D. Texas April 18, 2007), attached hereto as Exhibit H, (denying motion for an order compelling an ad hoc committee to fully comply with Rule 2019(a)).

17. But, as important as the ultimate decisions on the level of disclosure required under Rule 2019 are the issues identified by courts and commentators as properly considered in the inquiry. For instance, in Northwest Airlines, the court noted that the purpose of Rule 2019 is to "help foster fair and equitable plans free from deception and overreaching." See In re Northwest Airlines Corp., 363 B.R. 701, 704 (Bankr S.D.N.Y. 2007). In a subsequent opinion, the Northwest Airlines court stated that another purpose of Rule 2019 disclosure is to "give all parties a better *ability to gauge the credibility* of an important group that has chosen to appear in a bankruptcy case and play a *major role*." See In re Northwest Airlines Corp., 363 B.R. 704, 709 (Bankr. S.D.N.Y. 2007) (emphases added). See also In re CF Holding Corp./Colt's Mfg. Co., 145 B.R. 124, 126 (Bankr. D. Conn. 1992) ("[t]he purpose of Rule 2019 is to further the Bankruptcy Code's goal of complete disclosure during the business reorganization process, and was designed to cover entities which, during the bankruptcy case, act in a fiduciary capacity to those they represent, but are not otherwise subject to control of the court."); Wilson v. Valley Electric Membership Corp., 141 B.R., 309, 314 (E.D. La. 1992) ("Rule 2019 more appropriately

seems to apply to the formal organization of a group of creditors holding similar claims, who have elected to consolidate their collection efforts.").

18. Recently, in the District of Delaware, Judge Walrath expressed concerns regarding the complex, conflicting economic incentives potentially created through derivative credit transactions and by ad hoc committee members possessing interests at multiple levels of a debtor's capital structure. See In re Washington Mutual, Case No. 08-12229 [Docket No. 1952] (Bankr. Del. December 2, 2009) (MFW), p. 18. Judge Walrath also noted that one of the underpinnings of Rule 2019 was "advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings." See id., at p. 15.

19. Putting to the side the issue of whether Rule 2019 must be strictly enforced in every case, the Committee believes enforcement of the rule is essential under the facts and circumstances of these cases. Here, the SFO Noteholders Committee has affirmatively chosen to assume a central role in these cases; first seeking to terminate exclusivity to propose their own plan, and then striking a deal whereby the Debtors adopted and agreed to champion the SFO Plan. The Committee believes the Debtors' complicity in pushing the SFO Plan is based, at least in part, on the Debtors' acceptance of contemporaneous representations by the SFO Noteholders Committee that it represented the interests of holders of SFI Notes. And while the SFO Noteholders Committee has failed to disclose to the Court prior holdings and dispositions of SFI Notes, the Committee believes the members of the SFO Noteholders Committee were engaged in transactions to save themselves from the negative treatment they were negotiating to impose on SFI Notes under the SFO Plan. At the same time the Debtors' management was failing to protect the rights of SFI Noteholders, the SFO Noteholders Committee was apparently securing

management support through offers of continued employment and significant ownership stakes in the to-be-reorganized companies.

20. Given the central role the SFO Noteholders Committee has chosen to play in these cases, and the likely role it will play in trying to force confirmation of the SFO Plan over the objections of the Committee and other unsecured creditors, it is critical for the Court and the Committee to be able to fairly evaluate the SFO Noteholder Committee's credibility and motives in these cases, including through an understanding of: (a) the financial incentives created through debt holdings at multiple levels of the Debtors' capital structure; (b) the veracity of claims to have been acting consistent with the interests of holders of SFI Notes during the negotiation of the SFO Plan; and (c) the securing of the Debtors' acquiescence to the SFO Plan through benefits promised to senior management).

## NOTICE

21. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the SFO Noteholders Committee; (c) Counsel to the SFI Noteholders Committee; (d) the Debtors; (e) counsel to the Debtors; and (f) all parties having requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Committee submits no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto, compelling the SFO Noteholders Committee to (i) comply with Bankruptcy Rule 2019 and otherwise bar its participation in these cases until its disclosure deficiencies are fully remedied; and (ii) grant such other and further relief as is just and proper.

Dated: December 24, 2009

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ Laura Davis Jones
_____
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302/652-4100
Facsimile: 302/652-4400

-and-

**BROWN RUDNICK LLP**
Edward S. Weisfelner
Andrew Dash
Neal A. D'Amato
Seven Times Square
New York, NY 10036
(212) 209-4900 (telephone)
(212) 209-4801 (facsimile)

-and-

Steven B. Levine
Jeremy B. Coffey
One Financial Center
Boston, MA 02111
(617) 856-8587 (telephone)
(617) 856-8201 (facsimile)

*Counsel for the Official Committee of Unsecured Creditors of the Debtors*