## Exhibit A

Escrow Agreement

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (as the same may be amended or modified from time to time pursuant hereto, this "Escrow Agreement") is made and entered into as of March 18, 2010, by and among the parties listed on Schedule I hereto (collectively, the "Backstop Parties") and Wilmington Trust FSB (the "Escrow Agent"). Capitalized terms used herein, but not otherwise defined shall have the meanings ascribed to such terms in the Equity Commitment Agreement (as defined below).

**WHEREAS**, the Backstop Parties have agreed to deposit in escrow certain funds in accordance with the terms of that certain Amended Equity Commitment Agreement (the "Equity Commitment Agreement"), dated March 18, 2010, by and among the Backstop Parties and Six Flags, Inc. (the "Debtor"), and wish such deposit to be subject to the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1. **Appointment**. The Backstop Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

2. **Fund.** Each Backstop Party agrees to deposit into an escrow account (the "Escrow Account") with the Escrow Agent (i) the amount set forth opposite its name under the column entitled Offering Amount on Schedule I hereto, which in the aggregate for all Backstop Parties shall total $505,500,000 (the "Offering Amount"), (ii) the amount, if any, set forth opposite its name under the column entitled Direct Purchase Amount on Schedule I hereto, which in the aggregate for all Backstop Parties shall total $75,000,000 (the "Direct Purchase Amount"), (iii) the amount, if any, set forth opposite its name under the column entitled Additional Direct Purchase Amount on Schedule I hereto, which in the aggregate for all Backstop Parties shall total $50,000,000 (the "Additional Direct Purchase Amount") and (iv) the amount, if any, set forth opposite its name under the column entitled Delayed Draw Amount on Schedule I hereto, which in the aggregate shall total $25,000,000 (the "Delayed Draw Amount" and collectively with the Offering Amount, the Direct Purchase Amount and the Additional Direct Purchase Amount, the "Escrow Deposit"). Schedule I hereto also sets forth the aggregate amount contributed by each Backstop Party to the Escrow Deposit (the "Aggregate Amount Per Backstop Party"). The Escrow Agent shall hold the Escrow Deposit, which shall total $655,500,000 and, subject to the terms and conditions hereof, shall invest and reinvest the Escrow Deposit and the proceeds thereof (the "Fund") as directed in Section 4. Upon deposit of the Escrow Deposit, the Escrow Agent will acknowledge receipt of such deposit by delivery of a written notice to Pentwater Capital Management LP, the representative of the Backstop Parties (the "Backstop Parties Representative").

3. **Funds Not Subject to Bankruptcy Estates**. The Backstop Parties intend and agree that, upon deposit, the Fund will not be considered property of the bankruptcy estates of the Debtor or any of its affiliates, will not be subject to the bankruptcy estates

of the Debtor or any of its affiliates in the Debtor's proceedings under the Bankruptcy Code and will not be subject to the jurisdiction or control of the Bankruptcy Court, any bankruptcy trustee or the creditors of the Debtor or any of its affiliates.

4. **Investment of Fund.** The Escrow Agent shall hold the Escrow Deposit until March 29, 2010 in a non-interest bearing demand deposit account with the Escrow Agent, which account is covered by FDIC insurance for the entire balance in the account through June 30, 2010 under the Transaction Account Guarantee Program under the FDIC's Temporary Liquidity Guarantee Program and is thereafter instructed to invest the Escrow Deposit in the Federated Government Obligations Fund (Institutional Service Shares); provided that if prior to March 29, 2010, the Escrow Agent has received written instructions from the Backstop Parties Representative to direct the Escrow Deposit into a different FDIC insured account, whether within the Escrow Agent or with a different FDIC insured institution, the Escrow Agent shall promptly act in accordance with such instructions. The Backstop Parties agree to pay the Escrow Agent within ten Business Days of receipt of written demand thereof an amount equal to the FDIC insurance premiums required to be paid by the Escrow Agent in respect of the Fund for the period in which the Fund was held in an FDIC insured account (it being understood that such premiums are 5 basis points of the principal amount of the Fund calculated on the last day of each calendar quarter). Each Backstop Party acknowledges that shares in the mutual fund are not obligations of Wilmington Trust FSB or Wilmington Trust Corporation, are not deposits and are not insured by the FDIC. The Escrow Agent or its affiliate may be compensated by the mutual fund for services rendered in its capacity as investment advisor, or other service provider, such as provider of shareholder servicing and distribution services, and such compensation is both described in detail in the prospectus for the fund, and is in addition to the compensation, if any, paid to Wilmington Trust FSB in its capacity as Escrow Agent hereunder. Any income received from investments of the Escrow Deposit pursuant to this Section 4 shall be added to the Fund and disbursed in accordance with Section 5, provided that each Backstop Party shall receive its pro rata portion of such income in accordance with the commitment percentage of each Backstop Party calculated by dividing the Aggregate Amount Per Backstop Party by the Escrow Deposit (each such percentage to be set forth on Schedule I hereto, an "Aggregate Amount Commitment Percentage"). Monthly statements will be provided to the Backstop Parties Representative reflecting transactions executed in connection with the investment of the Escrow Deposit.

5. **Disposition and Termination**. (a) The Escrow Agent shall release funds from the Fund in accordance with the following:

(i) the Escrow Agent shall promptly release to each Backstop Party, by wire transfer of immediately available funds to the account designated by each such Backstop Party in accordance with Schedule I attached hereto, such Backstop Party's Aggregate Amount Per Backstop Party upon the occurrence of the following events:

(A)     within one Business Day (as defined below) following receipt of a certificate from the Backstop Parties Representative stating that the Equity Commitment Agreement has terminated in accordance with its terms;

(B)     within one Business Day following receipt of a certificate from the Backstop Parties Representative stating that 3 days has elapsed from the entry by the Bankruptcy Court of an order allowing the claims asserted by the indenture trustee for the SFO Notes for "make-whole", prepayment, "no-call" or other similar claims or damages;

(C)     within one Business Day following April 19, 2010, unless prior to such date the Escrow Agent has received a certificate from the Backstop Parties Representative stating that the Debtor has executed the Equity Commitment Agreement or the court has granted the Backstop Parties Motion to Terminate Exclusivity; or

(D)     within one Business Day following May 17, 2010, unless prior to such date the Fund was released by the Escrow Agent in accordance with Section 5(a)(ii) below.

(ii)     unless previously released pursuant to Section 5(a)(i) above, one (1) Business Day prior to the hearing conducted by the Bankruptcy Court (the "Confirmation Hearing") to consider confirmation of the chapter 11 plan of reorganization that will be filed in connection with the Equity Commitment Agreement (the "Plan") which shall incorporate the terms and conditions set forth on the term sheet attached to the Equity Commitment Letter, (A) the amount of the Offering (as such terms is defined in the Equity Commitment Agreement) that is not, or cannot be subscribed for and purchased prior to the relevant subscription expiration date of the Offering (the "Unsubscribed Offering Amount"), (B) the Direct Purchase Amount, and (C) the Additional Direct Purchase Amount shall be released to the subscription agent (the "Subscription Agent") designated by the Backstop Parties in connection with the Offering following receipt by the Escrow Agent from the Backstop Parties Representative, of a certificate to that effect, it being understood that all such amounts shall be set forth on the certificate. Any funds out of the Offering Amount not released to the Subscription Agent in accordance with Section 5(a)(ii)(A), shall be automatically released to the Backstop Parties such that each Backstop Party shall receive an amount equal to the result of multiplying such Backstop Party's Offering Commitment Percentage by the difference between the Offering Amount and the Unsubscribed Offering Amount, it being understood that all such amounts shall be set forth on a certificate to be delivered to the Escrow Agent by the Backstop Parties Representative.

(iii)     unless previously released pursuant to Section 5(a)(i) above, the Escrow Agent shall release to each Backstop Party who deposited a Delayed Draw Amount the amount deposited by such party  upon the occurrence of the following events:

(A)     within one Business Day following receipt of a certificate from the Backstop Parties Representative (A) stating that the definitive documents necessary to finalize the terms and conditions of the Delayed Equity Draw Commitment have been

executed, and (B) setting forth the amount to be released by the Escrow Agent to each such Backstop Party; or

(B) within one Business Day following receipt of a certificate from the Backstop Parties Representative stating that the Bankruptcy Court denied confirmation of the Plan or the Effective Date did not occur within 15 days following the Confirmation Order.

(iv) unless previously released pursuant to Section 5(a)(i) above, as set forth in the proviso to the first sentence in Section 4.

Upon delivery of the Fund by the Escrow Agent in accordance with this Section 5, this Escrow Agreement shall terminate.

(b) All payments pursuant to this Section 5 shall be made by wire transfer as directed by the Person entitled to receive such payments.

6. **Escrow Agent**. (a) In acting hereunder, the Escrow Agent shall have only such duties as are specified herein and no implied duties shall be read into this Agreement, and the Escrow Agent shall not be liable for any act done, or omitted to be done, by it in the absence of its gross negligence, willful misconduct, fraud or bad faith.

(b) The Escrow Agent may act in reliance upon any writing or instrument or signature delivered by the Backstop Parties Representative which it, in good faith, believes genuine and may assume the validity and accuracy of any statement or assertion contained in such a writing or instrument and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so.

(c) The Escrow Agent shall be entitled to consult with legal counsel in the event that a question or dispute arises with regard to the construction of any of the provisions hereof, and shall incur no liability and shall be fully protected in acting in accordance with the advice or opinion of such counsel; provided that the Escrow Agent has first consulted with and attempted to resolve any question or dispute with the Backstop Parties Representative prior to taking any such action.

(d) The Escrow Agent shall not be required to use its own funds in the performance of any of its obligations or duties or the exercise of any of its rights or powers, and shall not be required to take any action which, in the Escrow Agent's sole and absolute judgment, could involve it in expense or liability unless furnished with security and indemnity which it deems, in its sole and absolute discretion, to be satisfactory.

(e) The Backstop Parties shall pay to the Escrow Agent compensation for its services hereunder $2,500 to be deducted from the balance of the Fund. In the event the Escrow Agent incurs any reasonable out-of-pocket cost or expense in connection with the Escrow Account or renders any extraordinary services in connection with the Escrow

Account at the request of the Backstop Parties, the Escrow Agent shall be entitled to additional compensation therefor.

(f)     The Backstop Parties Representative agrees to indemnify the Escrow Agent, its directors, officers, employees and agents (collectively, the "Indemnified Parties"), and hold the Indemnified Parties harmless from any and against any and all liabilities, losses, actions, suits or proceedings at law or in equity, and any other expenses, fees or charges, including, without limitation, reasonable attorney's fees and expenses (excluding allocated costs of in-house counsel, if any), which an Indemnified Party may incur or with which it may be threatened by reason of acting as or on behalf of the Escrow Agent under this Escrow Agreement or arising out of the existence of the Escrow Account, except to the extent the same shall be caused by the Escrow Agent's gross negligence, willful misconduct or bad faith.  The terms of this paragraph (f) shall survive termination of this Agreement.

(g)     In the event the Escrow Agent receives conflicting instructions hereunder, the Escrow Agent shall be fully protected in refraining from acting until such conflict is resolved to the satisfaction of the Escrow Agent.

(h)     The Escrow Agent may resign as Escrow Agent at any time upon sixty (60) days' prior written notice of such resignation, and, upon its resignation, shall thereupon be discharged from any and all further duties and obligations under this Agreement, except for the transference of the Escrow Deposit to the Substitute Escrow Agent (as defined below) by giving notice in writing of such resignation to the Backstop Parties Representative, which notice shall specify a date upon which such resignation shall take effect. Upon the resignation of the Escrow Agent, the Backstop Parties, within thirty (30) business days after the Backstop Parties Representative receiving the foregoing notice from the Escrow Agent, shall designate a substitute escrow agent (the "Substitute Escrow Agent"), which Substitute Escrow Agent shall, upon its designation and notice of such designation to the Escrow Agent, succeed to all of the rights, duties and obligations of the Escrow Agent hereunder. In the event the Backstop Parties shall not have delivered to the Escrow Agent a written designation of Substitute Escrow Agent within the aforementioned thirty (30) day period, together with the consent to such designation by the Substitute Escrow Agent, the Escrow Agent may apply to a court of competent jurisdiction to appoint a Substitute Escrow Agent, and the costs of obtaining such appointment shall be reimbursable from the Backstop Parties.

7.     **Patriot   Act   Disclosure/Taxpayer   Identification   Numbers/Tax Reporting.**

(a)     **Patriot Act Disclosure.**  Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("USA PATRIOT Act") requires the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it. Accordingly, the Backstop Parties acknowledge that Section 326 of the USA PATRIOT Act and the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm the Backstop Parties identity including

without limitation name, address and organizational documents ("identifying information"). The Backstop Parties agree to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(b)     **Taxpayer Identification Numbers ("TIN")**.  The Backstop Parties have provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation.  The Backstop Parties each represent that its correct TIN assigned by the IRS, or any other taxing authority, is set forth in the delivered forms, as well as in the Substitute IRS Form W-9 set forth on the signature page of this Agreement.

(c)     **Tax Reporting.**  All interest or other income earned under the Escrow Agreement shall be allocated to each Backstop Party in accordance with its respective Aggregate Amount Commitment Percentage and reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from the Escrow Account by the Backstop Parties whether or not said income has been distributed during such year.  Any other tax returns required to be filed will be prepared and filed by the Backstop Parties with the IRS and any other taxing authority as required by law.  The Backstop Parties acknowledge and agree that the Escrow Agent shall have no responsibility for the preparation and/or filing of any income, franchise or any other tax return with respect to the Fund or any income earned by the Escrow Deposit.  The Backstop Parties further acknowledge and agree that any taxes payable from the income earned on the investment of any sums held in the Escrow Deposit shall be paid by the Backstop Parties in accordance with their respective Aggregate Amount Commitment Percentage. In the absence of written direction from the Backstop Parties, all proceeds of the Fund shall be retained in the Fund and reinvested from time to time by the Escrow Agent as provided in this Agreement.  The Escrow Agent shall withhold any taxes it deems appropriate, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.

8.     **Notices.**  All communications hereunder shall be in writing and shall be deemed to be duly given and received:

(a)     upon delivery, if delivered personally, or upon confirmed transmittal, if by facsimile; or

(b)     on the next Business Day (as hereinafter defined) if sent by overnight courier;

to the appropriate notice address set forth below or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

If to the Backstop Parties Representative:

Pentwater Capital Management LP
227 W. Monroe St., Suite 4000
Chicago, IL 60606
Attention: Dan Murphy

With copy to:

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Attention: Thomas E. Lauria
        John K. Cunningham

If to the Escrow Agent:    Wilmington Trust
                           Corporate Client Services
                           50 South Sixth Street, Suite 1290
                           Minneapolis, MN 55402
                           Attention: Peter Finkel

Notwithstanding the above, in the case of communications delivered to the Escrow Agent pursuant to (a) and (b) of this Section 8, such communications shall be deemed to have been given to the Escrow Agent on the date received by an officer of the Escrow Agent or any employee of the Escrow Agent who reports directly to any such officer at the above-referenced office. In the event that the Escrow Agent, in its sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate. "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent located at the notice address set forth above is authorized or required by law or executive order to remain closed.

9.    **Security Procedures.** In the event funds transfer instructions are given (other than in writing at the time of execution of this Escrow Agreement), whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on Schedule II, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated. The persons and telephone numbers for call-backs may be changed only in a writing actually received and acknowledged by the Escrow Agent. If the Escrow Agent is unable to contact any of the authorized representatives identified in Schedule II, the Escrow Agent is hereby authorized to seek confirmation of such instructions by telephone call-back to any one or more of the Backstop Parties Representative's executive officers, ("Executive Officers"), as the case may be, which shall include the title of Chief Financial Officer, as the Escrow Agent may select. Such "Executive Officer" shall deliver to the Escrow Agent a fully executed

incumbency certificate, and the Escrow Agent may rely upon the confirmation of anyone purporting to be any such officer. The Escrow Agent and the beneficiary's bank in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by the Backstop Parties to identify (a) the beneficiary, (b) the beneficiary's bank, or (c) an intermediary bank. The Escrow Agent may apply any of the escrowed funds for any payment order it executes using any such identifying number, even when its use may result in a person other than the beneficiary being paid, or the transfer of funds to a bank other than the beneficiary's bank or an intermediary bank designated. The Backstop Parties acknowledge that these security procedures are commercially reasonable.

10.    **Compliance with Court Orders.**  In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Escrow Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction; provided that the Escrow Agent shall notify the Backstop Parties Representative of any such event and provided further that the Backstop Parties Representative shall be given the opportunity to object to such proceedings with the help of a legal counsel of its choosing, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, entity, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

11.    **Miscellaneous.**  The provisions of this Escrow Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by the Escrow Agent and the Backstop Parties.  Neither this Escrow Agreement nor any right or interest hereunder may be assigned in whole or in part by the Escrow Agent or any party, without the prior consent of the Escrow Agent and the other parties.  This Escrow Agreement shall be governed by and construed under the laws of the State of New York without regard to its conflicts of laws principles. Each party to this Escrow Agreement irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of New York. The parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Escrow Agreement. No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.  This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the parties to this Escrow Agreement may be transmitted by facsimile, and such facsimile will, for all purposes, be deemed to be the original signature of such party

whose signature it reproduces, and will be binding upon such party. If any provision of this Escrow Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction. A person who is not a party to this Agreement shall have no right to enforce any term of this Escrow Agreement. The Backstop Parties represent, warrant and covenant that each document, notice, instruction or request provided by such party to Escrow Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Escrow Agreement shall be enforced as written. Nothing in this Escrow Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent and the Backstop Parties any legal or equitable right, remedy, interest or claim under or in respect of this Escrow Agreement or any funds escrowed hereunder.

**IN WITNESS WHEREOF,** the parties hereto have executed this Escrow Agreement as of the date set forth above.

Stark Master Fund Ltd.

By: Stark Offshore Management LLC, its Investment Manager

By_____
Name: Robert J. Barnard
Title: Authorized Signatory

Stark Criterion Master Fund Ltd.

By: Stark Criterion Management LLC, its Investment Manager

By_____
Name: Robert J. Barnard
Title: Authorized Signatory

Escrow Agreement Re: the Backstop Parties
and Wilmington Trust FSB

**Kivu Investment Fund Limited**

By_____

Name:   Martin Lancaster
Title:   Director

**CQS Convertible and Quantitative Strategies Master Fund Limited**

By_____

Name:
Title:

**CQS Directional Opportunities Master Fund Limited**

By_____

Name:
Title:

**Kivu Investment Fund Limited**

By_____
  Name:
  Title:


**CQS Convertible and Quantitative Strategies
Master Fund Limited**

By_____
  Name:   Tara Glaser
  Title:   Authorised Signatory

  18|03|2010

**CQS Directional Opportunities Master Fund
Limited**

By_____
  Name:
  Title:   Tara Glaser
           Authorised Signatory

  18|03|2010

Credit Suisse Securities (USA) LLC

By Robert J MacNaughton

Name: Robert MacNaughton

Title: Managing Director

Credit Suisse Candlewood Special Situations
Master Fund Ltd

By_____
   Name:
   Title:
             Michael Lau
          Authorized Signatory

Capital Ventures International

By: Susquehanna Advisors Group, Inc., its
authorized agent

By_____
Name: Joel Greenberg
Title: Vice President

**Mariner Tricadia Credit Strategies Master Fund Ltd.**

By: Tricadia Capital Management, LLC
    as Investment Manager

By_____
    Name:
    Title:          By: Barry Monday
                        Chief Administrative Officer


**Tricadia Distressed and Special Situations Master Fund Ltd.**

By: Tricadia Capital Management, LLC
    as Investment Manager

By_____
    Name:
    Title:
                    By: Barry Monday
                        Chief Administrative Officer


**Structured Credit Opportunities Fund II, LP**

                    By: Tricadia Capital Management, LLC
                        as Investment Manager
By_____
    Name:
    Title:

                    By: Barry Monday
                        Chief Administrative Officer

**1798 Relative Value Master Fund, Ltd.**

By: _Craig Lehman_
Name: _____
Title: PM

**Altai Capital Master Fund, Ltd.**

**By: Altai Capital Management, L.P., its investment advisor**

By _____

Name: Steven V. Tesoriere

Title: Managing Principal

**H Partners Management LLC**

By _____
    Name:   Lloyd Blumberg
    Title:   Authorized Signatory

**BHR Master Fund, Ltd.**

By _____
    Name: Michael Thompson
    Title: MD

**BHCO Master, Ltd.**

By _____
    Name: Michael Thompson
    Title: MD

Pentwater Growth Fund Ltd.

By: Pentwater Capital Management LP, its
investment manager

By _____

Name:
Title:
       **Neal Nenadovic**
       **Chief Financial Officer**
     **Pentwater Capital Management LP**

Pentwater Equity Opportunities Master Fund
Ltd.

By: Pentwater Capital Management LP, its
investment manager

By _____

Name:
Title:
       **Neal Nenadovic**
       **Chief Financial Officer**
     **Pentwater Capital Management LP**

Oceana Master Fund Ltd.

By: Pentwater Capital Management LP, its
investment manager

By _____

Name:
Title:
       **Neal Nenadovic**
       **Chief Financial Officer**
   **Pentwater Capital Management LP**

LMA SPC on behalf of MAP 98 Segregated
Portfolio

By: Pentwater Capital Management LP, its
investment manager

By _____

Name:
Title:
       **Neal Nenadovic**
       **Chief Financial Officer**
   **Pentwater Capital Management LP**

**Fortelus Special Situations Master Fund Ltd**

By _Tury Palen_

Name:

Title: